**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
Tracy L. Klestadt
Brendan Scott
Andrew Brown
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Fax: (212) 972-2245

*Proposed Counsel to the Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| HBL SNF, LLC, d/b/a EPIC REHABILITATION AND NURSING AT WHITE PLAINS | : | Case No. 21-22623 (SHL) |
| | : | |
| | : | |
| Debtor. | : | |

-------------------------------------------------------------------x

### DEBTOR'S APPLICATION PURSUANT TO 28 U.S.C. § 156(c), 11 U.S.C. § 503(b)(1)(A), AND LOCAL RULE 5075-1 FOR AUTHORITY TO RETAIN AND EMPLOY OMNI AGENT SOLUTIONS AS CLAIMS AND NOTICING AGENT EFFECTIVE AS OF NOVEMBER 1, 2021

HBL SNF, LLC, d/b/a Epic Rehabilitation and Nursing at White Plains, the debtor and debtor-in-possession (the "Debtor"), hereby submits this application (the "Application") for entry of an order, in substantially the same form as that attached hereto as Exhibit "A" (the "Proposed Order"), pursuant to section 156(c) of Title 28 of the United States Code, section 503(b)(1)(A) of Title 11 of the United States Code ("Bankruptcy Code"), and Rule 5075-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"), authorizing the employment and retention of Omni Agent Solutions ("Omni") as claims and noticing agent ("Claims and Noticing Agent") in the above-captioned Chapter 11 case (the "Chapter 11 Case"). In support of the Application, the Debtor submits the declaration of Paul H. Deutch, Omni's

Executive Vice President, attached hereto as <u>Exhibit "B"</u> (the "<u>Deutch Declaration</u>"), incorporated herein by reference, and respectfully states as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are section 156(c) of Title 28 of the United States Code, sections 503(b)(1)(A) and 105(a) of the Bankruptcy Code, and Rule 5075-1 of the Local Bankruptcy Rules.

## BACKGROUND

4.      On the date hereof (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief pursuant to Subchapter V of Chapter 11 of the Bankruptcy Code commencing the above-captioned Chapter 11 case (the "<u>Chapter 11 Case</u>") in the United States Bankruptcy Court for the Southern District of New York (the "<u>Court</u>").

5.      The Debtor remains in possession of its assets and continues to manage its business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6.      No trustee or committee, with the exception of a Subchapter V trustee, has been appointed in this case.

7.      A detailed account of the Debtor's business and the events precipitating the bankruptcy filing are included in the *Declaration of Lizer Jozefovic Pursuant to Local Bankruptcy Rule 1007-2 and in Support of Chapter 11 Subchapter V Petition and First Day Motions* (the "<u>First Day Declaration</u>"). Those facts are incorporated herein by reference.

2

### RELIEF REQUESTED

8.      By this Application, the Debtor requests entry of the Proposed Order authorizing the employment and retention of Omni as Claims and Noticing Agent in the Chapter 11 Case, in accordance with the terms and conditions of that certain Standard Services Agreement, dated October 28, 2021 by and between the Debtor and Omni (the "Engagement Agreement"), a copy of which is attached hereto as Exhibit "C".

9.      The Debtor's selection of Omni to act as the Claims and Noticing Agent has satisfied the Court's Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c) (the "Claims Agent Protocol").  The Debtor has obtained and reviewed engagement proposals from at least two (2) other court-approved claims and noticing agents to ensure selection through a competitive process. Moreover, the Debtor submits, based on all engagement proposals obtained and reviewed, that Omni's rates are competitive and reasonable given Omni's quality of services and expertise. The terms of Omni's retention are set forth in the Engagement Agreement, provided that Omni is seeking approval solely of the terms and provisions as set forth in this Application and the Proposed Order.

10.     The Debtor anticipates that there will be approximately 250-270 entities to be noticed in the Chapter 11 Case. Rule 5075-1(b)(1) of the Local Bankruptcy Rules provides that "[i]n a case in which the number of creditors and equity security holders, in the aggregate, is 250 or more, the estate shall retain, subject to approval of the Court, a claims and noticing agent in accordance with the [Claims Agent Protocol]." In view of the number of anticipated claimants in the Chapter 11 Case, the Debtor submits that the appointment of a claims and noticing agent is required by Rule 5075-1(b)(1) of the Local Bankruptcy Rules and is otherwise in the best interest of both the Debtor's estate and its creditors.

## OMNI'S QUALIFICATIONS

11.    Omni has substantial experience in matters of this size and complexity and has acted as the claims and noticing agent in many bankruptcy cases of a comparable size and greater size in this District and other districts nationwide. *See, e.g.*, In re S&A Retail, Inc., No. 21-22174 (RDD) (Bankr. S.D.N.Y. May 26, 2021);; *In re K.G. IM, LLC,* No. 20-11723 (MG) (Bankr. S.D.N.Y. July 28, 2020); *In re Occasion Brands LLC*, No. 20-11684 (SMB) (Bankr. S.D.N.Y. July 22, 2020); *In re OneWeb Global Limited, et al.*, No. 20-22437 (RDD) (Bankr. S.D.N.Y. May 21, 2020); *In re The Northwest Company,* LLC, Case No. 20-10990 (MEW) (Bankr. S.D.N.Y. April 18, 2020); *In re Empire Generating Co.,* LLC, Case No. 19-23007 (RDD) (Bankr. S.D.N.Y. 2019); *In re Answers Holdings, Inc.,* Case No. 17-10496 (SMB) (Bankr. S.D.N.Y. 2017); *In re Joyce Leslie, Inc.,* Case No. 16-22035 (RDD) (Bankr. S.D.N.Y. 2016); *In re Bruin E&P Partners, LLC*, No. 20-33605 (MI) (Bankr. S.D. Tex. July 17, 2020; *In re SLT Holdco, Inc.*, No. 20-18368 (MBK) (Bankr. D.N.J. Jul. 13, 2020); *In re TriVascular Sales LLC, et al.*, No. 20-31840 (SGCJ) (Bankr. N.D. Tex. Jul. 7, 2020); *In re Chisholm Oil and Gas Operating, LLC*, No. 20-11593 (BLS) (Bankr. D. Del. Jun. 19, 2020); *In re Cinemex USA Real Estate Holdings, Inc.*, No. 20-14695 (LMI) (Bankr. S.D. Fla. Jun. 16, 2020); *In re John Varvatos Enterprises, Inc.*, No. 20-11043 (MFW) (Bankr. D. Del. Jun. 11, 2020); *In re Sustainable Restaurant Holdings, Inc.*, No. 20-11087 (JTD) (Bankr. D. Del. May 13, 2020); *In re Chinos Holdings, Inc.*, No. 20-32181 (KLP) (Bankr. E.D. Va. May 5, 2020);; *In re Cinemex USA Real Estate Holdings, Inc.*, Case No. 20-14695 (LMI) (Bankr. S.D. Fla. April 25, 2020); In *re Cosi, Inc.*, Case No. 20-10417 (BLS) (Bankr. D. Del. February 24, 2020); *In re Boy Scouts of America*, Case No. 20-10343 (LSS) (Bankr. D. Del. February 18, 2020); *In re VIP Cinema Holdings, Inc.*, Case No. 20-10345 (MFW) (Bankr. D. Del. February 18, 2020); *In re SFP Franchise Corp.*, Case No. 20-10134 (JTD) (Bankr. D. Del. January

30, 2020); *In re Lucky's Market Parent Company, LLC,* Case No. 20-10166 (JTD) (Bankr. D. Del. January 27, 2020); *In re NeuroproteXeon, Inc.*, Case No. 19-12676 (MFW) (Bankr. D. Del. December 16, 2019); *In re Juno USA LP*, Case No. 19-12484 (MFW) (Bankr. D. Del. Nov. 19, 2019); *In re PES Holdings, LLC*, Case No. 19-11626 (KG) (Bankr. D. Del. July 21, 2019); *In re Center City Healthcare, LLC*, Case No. 19-11466 (KG) (Bankr. D. Del. June 30, 2019); In re FTD Companies, Inc., Case No. 19-11240 (LSS) (Bankr. D. Del. June 3, 2019); *In re Southeastern Metal Products*, LLC, Case No. 19-10989 (BLS) (Bankr. D. Del. May 6, 2019); *In re Hexion Topco, LLC*, Case No. 19-10684 (KG) (Bankr. D. Del. Apr. 1, 2019); *In re 1515-GEEnergy Holding Co. LLC*, Case No. 19-10303 (LSS) (Bankr. D. Del. Feb. 14, 2019); *In re Consolidated Infrastructure Grp., Inc.*, Case No. 19-10165 (BLS) (Bankr. D. Del. Jan. 30, 2019); *In re Brookstone Holdings Corp.*, Case No. 18-11780 (BLS) (Bankr. D. Del. Aug. 2, 2018)*; In re 4 West Holdings, Inc., et al*., Case No. 18-30777 (HH) (Bankr. N.D. Tex. 2018); *In re Lockwood International*, Case No. 18-30197 (DJ) (Bankr. S.D. Tex. 2018).

12.     The Debtor submits that appointing Omni as Claims and Noticing Agent in the Chapter 11 Case will provide the most cost-effective and efficient administrative service. The Debtor believes that based on Omni's experience, reputation, and the reasonableness of its fees, Omni is well qualified to serve as Claims and Noticing Agent and that such retention is in the best interests of both the Debtor's estates and its creditors.

## SCOPE OF SERVICES

13.     This Application pertains only to the work to be performed by Omni under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Rule 5075-1 of the Local Bankruptcy Rules, and any work to be performed by Omni outside of this scope is not covered by this Application or by any order granting approval hereof. Specifically, Omni will perform the

following tasks in its role as Claims and Noticing Agent (the "Claims and Noticing Services"), as

well as all quality control relating thereto:

    a.    Prepare and serve required notices and documents in the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtor and/or the Court, including, but not limited to (i) notice of the commencement of the Chapter 11 Case and the initial meeting of creditors under section 341(a) of the Bankruptcy Code, (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtor's plan of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan, and (vii) all other notices, orders, pleadings, publications and other documents as the Debtor or Court may deem necessary or appropriate for an orderly administration of the Chapter 11 Case;

    b.    Maintain an official copy of the Debtor's schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtor's known creditors and the amounts owed thereto;

    c.    Maintain (i) a list of all potential creditors, equity holders, and other parties-in-interest, and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j) and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update and make said lists available upon request by a party-in-interest or the Clerk;

    d.    Furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

    e.    Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

    f.    For all notices, motions, orders or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

g.      Process all proofs of claim received, including those received by the Clerk, check said processing for accuracy and maintain the original proofs of claim in a secure area;

h.      Provide an electronic interface for filing proofs of claim;

i.      Maintain the official claims register for the Debtor (the "Claims Register") on behalf of the Clerk on a case specific website; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Register; and specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.), (vi) the applicable Debtor, and (vii) any disposition of the claim;

j.      Provide public access to the Claims Register, including complete proofs of claim with attachments, if any, without charge, and provide an electronic interface and online filing system for filing proofs of claim;

k.      Implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original claims;

l.      Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

m.      Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Omni, not less than weekly;

n.      Assist in the dissemination of information to the public and respond to requests for administrative information regarding the Chapter 11 Case as directed by the Debtor or the Court, including through the use of a case website and/or call center;

o.      Upon completion of the docketing process for all claims received to date in the Chapter 11 Case, , turn over to the Clerk copies of the Claims Register for the Clerk's review (upon the Clerk's request);

p.      Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

q.      Identify and correct any incomplete or incorrect addresses in any mailing or service lists;

r. If the Chapter 11 Case is converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three (3) days of notice to Omni of entry of the order converting the cases;

s. Thirty (30) days prior to the close of the Chapter 11 Case, to the extent practicable, request that the Debtor submit to the Court a proposed order dismissing Omni as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of the Chapter 11 Case;

t. Within seven (7) days of notice to Omni of entry of an order closing the Chapter 11 Case, provide to the Court the final version of the Claims Register as of the date immediately before the close of the Chapter 11 Case; and

u. At the close of the Chapter 11 Case, box and transport all original documents, in proper format, as provided by the Clerk's office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064 or (ii) any other location requested by the Clerk's office.

## PROFESSIONAL COMPENSATION

14. The Debtor respectfully requests that the undisputed fees and expenses incurred by Omni in the performance of the Claims and Noticing Services be treated as administrative expenses of the Debtor's Chapter 11 estate pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court.

15. Omni agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and to serve monthly invoices on the Debtor, the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), counsel for the Debtor, the Subchapter V trustee, counsel for any official committee monitoring the expenses of the Debtor's estate, and any party-in-interest who specifically requests the service of the monthly invoices. If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

16.     Prior to the Petition Date, the Debtor provided Omni with a retainer in the amount of $10,000.00 for actual and/or estimated prepetition fees and expenses. Except as stated in this paragraph, Omni has not received any payments from the Debtor in the ninety (90) days prior to the Petition Date. Omni seeks to first apply the retainer to all prepetition invoices, and thereafter, to hold the balance of the retainer during the Chapter 11 Case as security for the payment of fees and expenses incurred under the Engagement Agreement.

17.     Additionally, under the terms of the Engagement Agreement, the Debtor has agreed to indemnify, defend and hold harmless Omni and its members, officers, employees, representatives and agents under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Omni's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement or order of this Court. The Debtor believes that such indemnification obligations and limitations of liability are customary, reasonable and necessary to retain the services of a Claims and Noticing Agent in the Chapter 11 Case.

## NO DUPLICATION OF SERVICES

18.     The Debtor intends that the services provided by Omni will complement, and not duplicate, the services being rendered by other professionals retained in the Chapter 11 Case. Omni understands that the Debtor has retained professionals and may retain additional professionals during the term of the engagement, in both instances subject to this Court's approval, and will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtor and the Debtor's estate.

## OMNI'S DISINTERESTEDNESS

19.     Although the Debtor does not propose to employ Omni under section 327 of the Bankruptcy Code pursuant to this Application, Omni has nevertheless reviewed its electronic

database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtor, and, to the best of the Debtor's knowledge, information, and belief, and except as disclosed in the Deutch Declaration, Omni has represented that it neither holds nor represents any interest materially adverse to the Debtor or the Debtor's estate in connection with any matter on which it would be employed.

20.    Moreover, in connection with its retention as Claims and Noticing Agent, Omni represents in the Deutch Declaration, among other things, that:

  a. Omni is not a creditor of the Debtor;

  b. Omni will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in the Chapter 11 Case;

  c. By accepting employment in the Chapter 11 Case, Omni waives any rights to receive compensation from the United States government in connection with the Chapter 11 Case;

  d. In its capacity as the Claims and Noticing Agent in the Chapter 11 Case, Omni will not be an agent of the United States and will not act on behalf of the United States;

  e. Omni will not employ any past or present employees of the Debtor in connection with its work as the Claims and Noticing Agent in the Chapter 11 Case;

  f. Omni is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

  g. In its capacity as Claims and Noticing Agent in the Chapter 11 Case, Omni will not intentionally misrepresent any fact to any person;

  h. Omni shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

    i.       Omni will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c);

    j.       None of the services provided by Omni as Claims and Noticing Agent in the Chapter 11 Case shall be at the expense of the Clerk's office; and

    k.      Omni will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## **THE REQUESTED RELIEF SHOULD BE GRANTED**

21.    Title 28 U.S.C. § 156(c), which governs the staffing and expenses of the Bankruptcy Court, authorizes the Court to use facilities other than those of the Clerk for the administration of chapter 11 cases, and provides as follows:

Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States.

28 U.S.C. § 156(c).

22.    In addition, Local Rule 5075-1 provides, in pertinent part, as follows:

The Court may direct, subject to the supervision of the Clerk, the use of agents to file Court records, either by paper or electronic means, to issue notices, to maintain case dockets, to maintain Judges' calendars, and to maintain and disseminate other administrative information where the costs of such facilities or services are paid for by the estate.

S.D.N.Y. LBR 5075-1.

23.    This Application complies with the Claims Agent Protocol and conforms to the standard section 156(c) application in use in this District. The Debtor has solicited and reviewed engagement proposals from at least two (2) other Court-approved claims and noticing agents to

ensure selection through a competitive process. The Debtor submits that Omni's rates are competitive and reasonable given Omni's quality of services and expertise. Further, the Debtor has provided copes of this Application to the Clerk and to the U.S. Trustee.

24.     As discussed above, the Debtor anticipates that there will be approximately 250-270 entities to be noticed in the Chapter 11 Case. Without the assistance of a claims and noticing agent, the Debtor is not equipped to efficiently and effectively distribute all notices that are likely to be required in the Chapter 11 Case. In view of the number of anticipated claimants and the complexity of the Chapter 11 Case, the Debtor submits that the appointment of a claims and noticing agent is required under Rule 5075-1(b)(1) of the Local Bankruptcy Rules and otherwise is in the best interests of both the Debtor's estate and its creditors.

25.     The Debtor believes that the Debtor's estates and its creditors will benefit from Omni's retention and that Omni is fully equipped to handle the volume of mailing involved in properly sending the required notices to, and processing the claims of, creditors and other parties in interest in the Chapter 11 Case.

26.     The Court may also rely on its general equitable powers to grant the relief requested in this Application. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

27.     To the extent that there is any inconsistency between this Application, the Proposed Order, and the Engagement Agreement, the terms of the Proposed Order shall govern. To the extent the administration of the Chapter 11 Case will require Omni to perform duties outside the scope of 28 U.S.C. § 156(c), the Debtor will file a separate application, pursuant to section 327(a) of the

Bankruptcy Code, seeking authorization to retain and employ Omni to perform such duties in the Chapter 11 Case.

## **NOTICE**

28.     Notice of this Application will be provided to: (i) the Office of the United States Trustee for the Southern District of New York, Attn: Andrea Schwartz, Esq.; (ii) the New York State Department of Health; (iii) counsel to CNH Finance Fund I, L.P.; (iv) New York State Office of the State Long Term Care Ombudsman, county of Westchester; (v) the duly appointed patient care ombudsman in this Case; (vi) the United States Attorney's Office for the Southern District of New York; (vii) the Internal Revenue Service; (viii) the parties included on the Debtor's consolidated list of twenty (20) largest unsecured creditors; (ix) counsel to WPHCP; (x) counsel to Security Benefit; (xi) the Subchapter V trustee, and (xii) any party that has requested notice pursuant to Bankruptcy Rule 2002.

## **NO PRIOR REQUEST**

29.     No prior request for the relief sought in the Application has been made to this or any other court.

## **CONCLUSION**

**WHEREFORE**, the Trustee respectfully requests that the Court enter the Proposed Order

granting the relief requested herein and such other and further relief as it deems just and proper.


Dated:    New York, New York
          November 1, 2021

                                        KLESTADT WINTERS JURELLER
                                        SOUTHARD & STEVENS, LLP


                                 By:    */s/ Tracy L. Klestadt*
                                        Tracy L. Klestadt
                                        Brendan Scott
                                        Andrew Brown
                                        200 West 41st Street, 17th Floor
                                        New York, New York 10036
                                        Tel: (212) 972-3000
                                        Fax: (212) 972-2245
                                        Email: tklestadt@klestadt.com
                                               bscott@klestadt.com
                                               abrown@klestadt.com

                                        *Proposed Attorneys for the Debtor and*
                                        *Debtor-in-Possession*

14

# <u>Exhibit A</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

In re                                                      :      Chapter 11
                                                           :
HBL SNF, LLC, d/b/a EPIC REHABILITATION      :      Case No. 21-22623 (SHL)
AND NURSING AT WHITE PLAINS                   :
                                                           :
                                        Debtor.            :

------------------------------------------------------------------x

### ORDER PURSUANT TO 28 U.S.C. § 156(c), 11 U.S.C. § 503(b)(1)(A), AND LOCAL RULE 5075-1 AUTHORIZING THE RETENTION AND EMPLOYMENT OF OMNI AGENT SOLUTIONS AS CLAIMS AND NOTICING AGENT <u>EFFECTIVE AS OF NOVEMBER 1, 2021</u>

Upon the application (the "Application")[1] of HBL SNF, LLC, d/b/a Epic Rehabilitation and Nursing at White Plains, the debtor (the "Debtor") in the above-captioned Chapter 11 case (the "Chapter 11 Case"), for retention and appointment of Omni Agent Solutions ("Omni") as claims and noticing agent ("Claims and Noticing Agent"), pursuant to 28 U.S.C. §156(c), section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code"), and Rule 5075-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), to, among other things, (i) distribute required notices to parties in interest, (ii) receive, maintain, docket, and otherwise administer the proofs of claim filed in the Chapter 11 Case, and (iii) provide such other administrative services – as required by the Debtor – that would fall within the purview of services to be provided by the Clerk's office; and upon the Declaration of Paul H. Deutch, Executive Vice President of Omni (the "Deutch Declaration"), attached to the Application as Exhibit "B"; and it appearing that the receiving, docketing and maintaining of proofs of claim would be unduly time consuming and burdensome for the Clerk; and the Court being authorized under 28 U.S.C. §156(c)

---

[1] Capitalized terms used but not immediately defined shall have the meanings assigned elsewhere in this Order and/or the Application, as applicable.

to utilize, at expense of the Debtor's estate, outside agents and facilities to provide notices to parties

in the Chapter 11 Case and to receive, docket, maintain, photocopy and transmit proofs of claim;

and the Court being satisfied that Omni has the capability and experience to provide such services

and that Omni does not hold an interest adverse to the Debtor and its estate respecting the matters

upon which it is to be engaged; and the Court having jurisdiction to consider the Application and

the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended

Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of

the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. §

157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

notice of the Application having been given as provided in the Application, and such notice having

been adequate and appropriate under the circumstances; and it appearing that no other or further

notice need be provided; and a hearing having been held to consider the relief requested in the

Application (the "Hearing"); and upon the record of the Hearing and all of the proceedings had

before the Court; and the retention of Omni being in the best interests of the Debtor, its estate,

creditors, and all other parties in interest, and that the legal and factual bases set forth in the

Application establishes just cause for the relief granted herein; and after due deliberation and

sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Application is granted to the extent set forth herein.

2.      The Debtor is authorized to retain Omni as Claims and Noticing Agent effective as

of November 1, 2021, under the terms of the Engagement Agreement, and Omni is authorized and

directed to perform noticing services and to receive, maintain, record, and otherwise administer

the proofs of claim filed in the Chapter 11 Case, and all related tasks, as described in the Application and as provided by the Local Bankruptcy Rules or other orders of this Court.

3.      Omni shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in the Chapter 11 Case and is authorized and directed to maintain official claims registers for the Debtor, to provide public access to every proof of claim unless otherwise ordered by the Court and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

4.      Omni is authorized and directed to obtain a post office box or address for the receipt of proofs of claim, if needed.

5.      Omni is authorized to take such other action to comply with all duties set forth in the Application.

6.      The Debtor is authorized to compensate Omni in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Omni and the rates charged for each, and to reimburse Omni for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Omni to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

7.      Omni shall maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and shall serve monthly invoices on the Debtor, the office of the United States Trustee, counsel for the Debtor, the Subchapter V trustee, counsel for any official committee monitoring the expenses of the Debtor's estate (if any), and any party-in-interest who specifically requests service of the monthly invoices.

8.      The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Engagement Agreement or monthly invoices; provided that the parties may seek resolution of the matter from the Court if resolution is not achieved.

9.      Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Omni under this Order are an administrative expense of the Debtor's estates.

10.     Omni may apply its retainer to all prepetition invoices, and thereafter, Omni may hold the balance of its retainer during the Chapter 11 Case as security for the payment of fees and expenses incurred under the Engagement Agreement.

11.     The Debtor shall indemnify Omni in accordance with the terms of the Engagement Agreement.

12.     All requests by Omni for the payment of indemnification as set forth in the Engagement Agreement shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Agreement and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought, provided that in no event shall Omni be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

13.     In the event that Omni seeks reimbursement from the Debtor for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Omni's own applications, both interim and final, but determined by this Court after notice and a hearing.

14.     In the event Omni is unable to provide the services set out in this order, Omni will immediately notify the Clerk of the Court and the Debtor's attorneys and, upon approval of the Court, cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtor's attorneys.

15.     To the extent necessary, the Debtor may submit a separate retention application, pursuant to 11 U.S.C. § 327 and/or any applicable law, for work that is to be performed by Omni but is not specifically authorized by this Order.

16.     The Debtor and Omni are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

17.     Notwithstanding any term in the Engagement Agreement to the contrary, the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

18.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be immediately effective and enforceable upon its entry.

19.     Omni shall not cease providing claims processing services during the Chapter 11 Case for any reason, including nonpayment, without an order of the Court.

20.     In the event of any inconsistency between the Engagement Agreement, the Application, and the Order, the terms of this Order shall govern.

White Plains, New York
Dated: _____, 2021

_____
HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

# <u>Exhibit B</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| HBL SNF, LLC, d/b/a EPIC REHABILITATION | : | Case No. 21-22623 (SHL) |
| AND NURSING AT WHITE PLAINS | : | |
| | : | |
| Debtor. | : | |

-----------------------------------------------------------------x

### DECLARATION OF PAUL H. DEUTCH IN SUPPORT OF THE DEBTOR'S APPLICATION PURSUANT TO 28 U.S.C. § 156(c), 11 U.S.C. § 503(b)(1)(A), AND LOCAL RULE 5075-1 FOR AUTHORITY TO RETAIN AND EMPLOY OMNI AGENT SOLUTIONS AS CLAIMS AND NOTICING AGENT EFFECTIVE AS OF NOVEMBER 1, 2021

I, Paul H. Deutch, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.       I am the Executive Vice President of Omni Agent Solutions ("Omni"), a chapter 11 administrative services firm whose offices are located in Los Angeles, CA, and New York, NY. Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.       This declaration (the "Declaration") is made in support of the *Debtor's Application Pursuant to 28 U.S.C. § 156(c), 11 U.S.C. § 503(b)(1)(A), and Local Rule 5075-1 For Authority to Retain and Employ Omni Agent Solutions As Claims and Noticing Agent Effective As of November 1, 2021* (the "Application")[1] pursuant to section 156(c) of Title 28 of the United States Code, section 503(b)(1)(A) of Title 11 of the United States Code (the "Bankruptcy Code"), and Rule 5075-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"), authorizing the employment and retention of Omni as claims and noticing agent ("Claims and Noticing Agent"), effective as of November 1, 2021, in accordance with the

---

[1] Capitalized terms used but not immediately defined shall have the meanings assigned to them elsewhere in the Declaration and/or the Application, as applicable.

terms and conditions set forth in that certain Services Agreement dated as of October 28, 2021, by and between the Debtor and Omni (the "Engagement Agreement").

3.      As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), Omni will perform, at the request of the Office of the Clerk of the Bankruptcy Court (the "Clerk"), the services specified in the Application and the Engagement Agreement, and, at the Debtor's request, any related administrative, technical and support services as specified in the Application and the Engagement Agreement. In performing such services, Omni will charge the Debtor's estate the rates set forth in the Engagement Agreement, which is attached as Exhibit "C" to the Application.

4.      Omni has substantial experience in matters of this size and complexity and has acted as the claims and noticing agent in many bankruptcy cases of a comparable and greater size in this District and other districts nationwide. *See, e.g.*, In re S&A Retail, Inc., No. 21-22174 (RDD) (Bankr. S.D.N.Y. May 26, 2021);; *In re K.G. IM, LLC*, No. 20-11723 (MG) (Bankr. S.D.N.Y. July 28, 2020); *In re Occasion Brands LLC*, No. 20-11684 (SMB) (Bankr. S.D.N.Y. July 22, 2020); *In re OneWeb Global Limited, et al.*, No. 20-22437 (RDD) (Bankr. S.D.N.Y. May 21, 2020); *In re The Northwest Company,* LLC, Case No. 20-10990 (MEW) (Bankr. S.D.N.Y. April 18, 2020); *In re Empire Generating Co.,* LLC, Case No. 19-23007 (RDD) (Bankr. S.D.N.Y. 2019); *In re Answers Holdings, Inc.,* Case No. 17-10496 (SMB) (Bankr. S.D.N.Y. 2017); *In re Joyce Leslie, Inc.,* Case No. 16-22035 (RDD) (Bankr. S.D.N.Y. 2016); *In re Bruin E&P Partners, LLC*, No. 20-33605 (MI) (Bankr. S.D. Tex. July 17, 2020); *In re SLT Holdco, Inc.*, No. 20-18368 (MBK) (Bankr. D.N.J. Jul. 13, 2020); *In re TriVascular Sales LLC, et al.*, No. 20-31840 (SGCJ) (Bankr. N.D. Tex. Jul. 7, 2020); *In re Chisholm Oil and Gas Operating, LLC*, No. 20-11593 (BLS) (Bankr. D. Del. Jun. 19, 2020); *In re Cinemex USA Real Estate Holdings, Inc.*, No. 20-14695 (LMI) (Bankr. S.D. Fla. Jun. 16, 2020); *In re John Varvatos Enterprises, Inc.*, No. 20-11043 (MFW) (Bankr. D. Del. Jun. 11, 2020); *In re Sustainable Restaurant Holdings, Inc.*, No. 20-11087 (JTD) (Bankr. D. Del. May

13, 2020); *In re Chinos Holdings, Inc.*, No. 20-32181 (KLP) (Bankr. E.D. Va. May 5, 2020);; *In re Cinemex USA Real Estate Holdings, Inc.*, Case No. 20-14695 (LMI) (Bankr. S.D. Fla. April 25, 2020); In *re Cosi, Inc.*, Case No. 20-10417 (BLS) (Bankr. D. Del. February 24, 2020); *In re Boy Scouts of America*, Case No. 20-10343 (LSS) (Bankr. D. Del. February 18, 2020); *In re VIP Cinema Holdings, Inc.*, Case No. 20-10345 (MFW) (Bankr. D. Del. February 18, 2020); *In re SFP Franchise Corp.*, Case No. 20-10134 (JTD) (Bankr. D. Del. January 30, 2020); *In re Lucky's Market Parent Company, LLC,* Case No. 20-10166 (JTD) (Bankr. D. Del. January 27, 2020); *In re NeuroproteXeon, Inc.*, Case No. 19-12676 (MFW) (Bankr. D. Del. December 16, 2019); *In re Juno USA LP*, Case No. 19-12484 (MFW) (Bankr. D. Del. Nov. 19, 2019); *In re PES Holdings, LLC*, Case No. 19-11626 (KG) (Bankr. D. Del. July 21, 2019); *In re Center City Healthcare, LLC*, Case No. 19-11466 (KG) (Bankr. D. Del. June 30, 2019); In re FTD Companies, Inc., Case No. 19-11240 (LSS) (Bankr. D. Del. June 3, 2019); *In re Southeastern Metal Products*, LLC, Case No. 19-10989 (BLS) (Bankr. D. Del. May 6, 2019); *In re Hexion Topco, LLC*, Case No. 19-10684 (KG) (Bankr. D. Del. Apr. 1, 2019); *In re 1515-GEEnergy Holding Co. LLC*, Case No. 19-10303 (LSS) (Bankr. D. Del. Feb. 14, 2019); *In re Consolidated Infrastructure Grp., Inc.*, Case No. 19-10165 (BLS) (Bankr. D. Del. Jan. 30, 2019); *In re Brookstone Holdings Corp.*, Case No. 18-11780 (BLS) (Bankr. D. Del. Aug. 2, 2018*); In re 4 West Holdings, Inc., et al*., Case No. 18-30777 (HH) (Bankr. N.D. Tex. 2018); *In re Lockwood International*, Case No. 18-30197 (DJ) (Bankr. S.D. Tex. 2018).

5.      Prior to the Petition Date, the Debtors provided Omni with a retainer in the amount of $10,000.00 for actual and/or estimated prepetition fees and expenses. Except as stated in this paragraph, Omni has not received any payments from the Debtor in the ninety (90) days prior to the Petition Date. Omni seeks to first apply the retainer to all prepetition invoices, and thereafter,

to hold the balance of the retainer during the Chapter 11 Case as security for the payment of fees and expenses incurred under the Engagement Agreement.

6.      Omni represents, among other things, the following:

  a.      Omni is not a creditor of the Debtor;

  b.      Omni will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in the Chapter 11 Case;

  c.      By accepting employment in the Chapter 11 Case, Omni waives any rights to receive compensation from the United States government in connection with the Chapter 11 Case;

  d.      In its capacity as the Claims and Noticing Agent in the Chapter 11 Case, Omni will not be an agent of the United States and will not act on behalf of the United States;

  e.      Omni will not employ any past or present employees of the Debtor in connection with its work as the Claims and Noticing Agent in the Chapter 11 Case;

  f.      Omni is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

  g.      In its capacity as Claims and Noticing Agent in the Chapter 11 Case, Omni will not intentionally misrepresent any fact to any person;

  h.      Omni shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

  i.      Omni will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c);

  j.      None of the services provided by Omni as Claims and Noticing Agent in the Chapter 11 Case shall be at the expense of the Clerk's office; and

k.    Omni will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

7.    To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Omni, nor any of its professionals, has any materially adverse connection to the Debtor, its creditors or other relevant parties. Omni may have relationships with certain of the Debtor's creditors as vendors or in connection with cases in which Omni serves or has served in a neutral capacity as claims and noticing agent and/or administrative agent for another Chapter 11 debtor.

8.    Omni has reviewed its electronic database to determine whether it has any relationships with the list of entities provided by the Debtors. Based on the results of such search, at this time, Omni is not aware of any relationship that would present a disqualifying conflict of interest. Should Omni discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Omni will use reasonable efforts to promptly file a supplemental declaration.

9.    Omni has and will continue to represent clients in matters unrelated to the Chapter 11 Case. In addition, Omni and its personnel have and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals and other parties in interest that may be involved in the Chapter 11 Case in matters unrelated to the Chapter 11 Case. Omni may also provide professional services to entities or persons that may be creditors or parties in interest in the Chapter 11 Case, which services do not directly relate to, or have any direct connection with, the Chapter 11 Case, or the Debtor.

10.    Omni and its personnel in their individual capacities regularly utilize the services of law firms, accounting firms, and financial advisors. Such firms engaged by Omni or its

personnel may appear in the Chapter 11 Case representing the Debtor or other parties in interest. All engagements where such firms represent Omni or its personnel in their individual capacities are unrelated to the Chapter 11 Case.

11.     To the best of my knowledge, neither Omni nor any of its partners or employees hold or represent any interest materially adverse to the Debtor's estate with respect to any matter upon which Omni is to be engaged. Based on the foregoing, I believe that Omni is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the forgoing is true and correct to the best of my information, knowledge, and belief.

Executed on November 1, 2021

_/s/ Paul H. Deutch_____
Paul H. Deutch
Executive Vice President
Omni Agent Solutions

# <u>Exhibit C</u>

## STANDARD SERVICES AGREEMENT

This Agreement is entered into as of June 15, 2021, between Omni Agent Solutions ("**Omni**") and HBL SNF, LLC (the "**Company**"), in preparation of, and in connection with, the Company's potential chapter 11 case. The parties hereto agree as follows:

### Terms and Conditions

I.   SERVICES

(a)   Omni will make itself available to the Company, as requested, for the purposes of assisting the Company with pre- and post-petition case administration matters including data entry, preparation and management of the creditor matrix, preparation of schedules of assets and liabilities and statements of financial affairs, claims management, noticing, plan solicitation and tabulation, distribution, the development and maintenance of a virtual data room, the development and maintenance of an informational website, and any other services as may be requested by the Company or otherwise required by applicable law, governmental regulations or court rules or orders (collectively, the "**Services**").

(b)   The Company acknowledges and agrees that Omni will often take direction from the Company's representatives, employees, agents and/or professionals (individually, a "**Company Party**") with respect to providing Services hereunder. The parties agree that Omni may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by a Company Party to the same extent as if such requests, advice or information were provided by the Company.

(c)   In no event shall Omni's Services constitute or contain legal advice or opinion, and neither Omni nor its personnel shall be deemed to practice law hereunder.

II.   RATES

(a)   Except as otherwise set forth herein, the services to be rendered by Omni will be billed at rates ranging from $35.00 to $205.00 per hour as per the rate structure attached hereto and incorporated herein by reference as **Exhibit "A"** (the "**Rate Structure**"). *For the purposes of this retention, Omni has agreed to provide the Company with a ten (10%) percent discount on its standard hourly rates.* The Company agrees to pay all of Omni's fees, charges and out-of-pocket costs relating to the Services it provides on behalf of the Company pursuant to this Agreement.

(b)   Rates may be adjusted annually on January 2nd of each year and are subject to increases not to exceed ten (10%) percent per annum. Omni shall provide sixty (60) days prior written notice of any such proposed increases.

(c)   Omni shall be compensated on a monthly basis for services it performs on behalf of the Company during the preceding calendar month. Invoices are due and payable upon receipt. If any amount is unpaid as of thirty (30) days after delivery of an invoice, the Company agrees to pay a late charge equal to one and a half (1.5%) percent of the total amount unpaid every 30 days. Notwithstanding anything herein to the contrary, in the event of a chapter 11 filing, all payments to Omni will be in accordance with applicable bankruptcy law and

any orders of the bankruptcy court.

(d)     Omni may require an advance or direct payment from the Company of an individual expense, or a group of related expenses, that are expected to exceed $7,500.

(e)     Upon execution of this Agreement, the Company shall pay Omni a retainer of $10,000 (the "**Retainer**"). Omni may use the Retainer against all prepetition fees and expenses, which Retainer shall then be replenished as promptly as practicable by the Company to its original amount. At Omni's discretion, the Retainer may then be applied to the payment of the final invoice from Omni under and pursuant to this Agreement (the "**Final Invoice**"), or to any other invoice. Except with respect to the Final Invoice, upon notice from Omni to the Company of the application of some or all of the Retainer, the Company shall replenish the Retainer as promptly as practicable to its original amount. Omni shall, as promptly as practicable, return to the Company any amount of the Retainer that remains following application of the Retainer to the payments of unpaid fees and expenses hereunder.

(f)     The Company shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of the Company, notwithstanding how such taxes may be designated, levied, or based. This provision is intended to include sales, use, and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Omni.

(g)     The Company shall pay to Omni any actual charges (including fees, costs and expenses as set forth in the Rate Structure) related to, arising out of, or resulting from, any error or omission of the Company. Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Rate Structure.

(h)     Payments to Omni for services rendered under the terms of this Agreement may be remitted by the Company using either or both of the following methods:

        (i)     **Wire Transmission**
            (Omni's wire information will be included on each monthly invoice)

        (ii)     **Check**
            Omni Agent Solutions
            c/o Accounts Receivable
            5955 De Soto Avenue
            Suite 100
            Woodland Hills, CA 91367

III.    RETENTION IN BANKRUPTCY CASE

(a)    If the Company commences a case pursuant to the U. S. Bankruptcy Code (the "**Code**"), the Company shall timely file applications with the bankruptcy court to retain Omni as claims and noticing agent pursuant to 28 U.S.C. § 156(c), and, where applicable, as administrative agent pursuant to section 327(a) of the Code for all Services that fall outside the scope of 28 U.S.C. § 156(c). The form and substance of such applications and any order approving them shall be reasonably acceptable to Omni.

(b)    If the Company's chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Omni will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

IV.    CONFIDENTIALITY

(a)    Each of Omni and the Company, on behalf of themselves and their respective employees, agents, professionals and representatives, agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided under this Agreement; provided, however, that if any such information was (i) publicly available without a breach by the receiving party, (ii) already in the receiving party's possession or known to it and was received from a third party that, to the knowledge of the receiving party, does not have a duty of confidentiality to the disclosing party, (iii) independently developed, (iv) lawfully obtained from a third party who, to the knowledge of the receiving party, does not have a duty of confidentiality to the disclosing party or (v) required to be disclosed by law, then, subject to clause (b) below, a party shall bear no responsibility for publicly disclosing such information.

(b)    If either party reasonably believes that it is required to produce any confidential information pursuant to an order of any court, governmental agency or other regulatory body, it may, upon not less than five (5) business days written notice to the other party, release the required information.

V.    PROPERTY RIGHTS

(a)    The parties understand that the software programs and other materials furnished by Omni pursuant to this Agreement and/or developed during the course of this Agreement by Omni are the sole property of Omni. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines and documentation. The Company agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement. The Company further agrees that any ideas, concepts, know-how or techniques relating to data processing or Omni's performance of its services developed during the course of its Agreement by Omni shall be the exclusive property of Omni. Fees and expenses paid by the Company do not vest in  the Company any rights in Omni's property. Such property is only being made available for the Company's use during and in connection with the Services provided by Omni hereunder.

(b)      Upon the Company's request at any time while this Agreement is in effect, Omni shall immediately deliver to the Company and/or the Company's retained professionals, at the Company's expense, any or all of the non-proprietary data and records held by Omni pursuant to this Agreement, in the form requested by the Company.

## VI.    BANK ACCOUNTS

At the request of the Company and its officers or authorized representatives, Omni is authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction.

## VII.    COMPANY DATA

(a)      The Company is responsible for, and Omni does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Omni and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, the "**SOFAs and Schedules**"). Omni bears no responsibility for the accuracy and content of the SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all of the SOFAs and Schedules filed on its behalf.

(b)      The Company agrees, represents and warrants to Omni that before delivery of any information to Omni: (i) the Company has full authority to deliver such information to Omni; and (ii) Omni is authorized to use such information to perform Services hereunder.

(c)      Any data, storage media, programs or other materials furnished to Omni by the Company may be retained by Omni until the Services provided hereunder are paid in full. The Company shall remain liable for all fees and expenses incurred by Omni under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Omni. Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the Company have not utilized Omni's Services for a period of ninety (90) days or more, Omni may dispose of any such materials, and be reimbursed by the Company for the expense of such disposition, after giving the Company thirty (30) days written notice. The Company agrees to use commercially reasonable efforts to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Omni.

(d)      If Omni is retained pursuant to bankruptcy court order, disposal of any the Company's data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

## VIII.    TERM AND TERMINATION

(a)      This Agreement shall remain in effect until terminated by either party: (i) on thirty (30) days prior written notice to the other party; or (ii) immediately upon written notice for Cause (as defined herein). "**Cause**" means (i) bad faith, gross negligence, or willful

misconduct of Omni that causes material harm to the Company' restructuring under chapter 11 of the Code, (ii) the failure of the Company to pay Omni's invoices for more than sixty (60) days from the date of invoice, or (iii) the accrual of invoices or unpaid Services in excess of the retainer held by Omni where Omni reasonably believes in its sole discretion, following consultation with the Company and/or the Company' professionals, it will not be paid.

(b)     If this Agreement is terminated after Omni is retained pursuant to bankruptcy court order, the Company shall promptly seek entry of a bankruptcy court order discharging Omni of its duties under such retention, which order shall be in form and substance reasonably acceptable to Omni.

(c)     If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Omni hereunder and, following payment of such amounts, Omni shall promptly provide the Company with to all materials and deliverables that are in its then-current state of completion.

(d)     If this Agreement is terminated, Omni shall coordinate with the Company and, to the extent applicable, the clerk of the bankruptcy court, to maintain an orderly transfer of record keeping functions, and Omni shall provide the necessary staff, services and assistance required for such an orderly transfer. The Company agrees to pay for such Services pursuant to the Rate Structure.

IX.     NO REPRESENTATIONS OR WARRANTIES

Omni makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity. Notwithstanding the foregoing, if the above disclaimer is not enforceable under applicable law, such disclaimer will be construed by limiting it so as to be enforceable to the extent compatible with applicable law.

X.     INDEMNIFICATION

(a)     To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Omni and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (each, an "**Indemnified Party**," and collectively, the "**Indemnified Parties**") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "**Losses**") resulting from, arising out of or related to Omni's performance hereunder. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b)     Omni and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the services provided under and pursuant to the Agreement.

(c)     The Company's indemnification of Omni hereunder shall exclude Losses resulting from Omni's gross negligence or willful misconduct.

(d)     The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

## XI.    LIMITATIONS OF LIABILITY

Except as expressly provided herein, Omni's liability to the Company for any Losses, unless due to Omni's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss. In no event shall Omni's liability to the Company for any  Losses arising out of this Agreement exceed the total amount actually paid to Omni for services provided under and pursuant to this Agreement. Moreover, in no event shall Omni be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the services provided under and pursuant to this Agreement.

## XII.    SYSTEM IMPROVEMENTS

Omni reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time of accessibility, types of terminals and other equipment, and the Omni database serving the Company, so long as any such changes do not materially interfere with ongoing Services provided to the Company in connection with the Company' pending bankruptcy case.

## XIII.    CHOICE OF LAW

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

## XIV.    ARBITRATION

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. There shall be one arbitrator named in accordance with such rules. The arbitration shall be conducted in the English language in New York in accordance with the United States Arbitration Act. Notwithstanding the foregoing, during the pendency of any applicable chapter 11 case(s) of the Company, any disputes related to this Agreement shall be decided by the bankruptcy court with jurisdiction over the chapter 11 case(s).

## XV.    GENERAL

(a)     Complete agreement. Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms, and further agrees that it is the complete and exclusive statement of the agreement between the parties, which

supersedes and merges all prior proposals, understandings, agreements and communications between the parties relating to the subject matter hereof.

(b)    <u>Severability</u>. If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c)    <u>Modification</u>. This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Omni.

(d)    <u>Assignment</u>. This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that either party may assign this Agreement to a wholly-owned subsidiary or affiliate or to an entity which has succeeded to all or substantially all of the business or assets of a party without the other party's consent, provided that the assigning party provides adequate assurance of performance by the proposed assignee.

(e)    <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

(f)    <u>Force Majeure</u>. Whenever performance by Omni of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Omni's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

(g)    <u>Location services</u>. The Company will use their best efforts to cooperate with Omni at the Company's facilities if any portion of the Services require Omni's physical presence.

(h)    <u>Non-solicitation</u>. Each party agrees that neither it nor any of its subsidiaries shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of the other party during the term of this Agreement and for a period of six (6) months after termination thereof unless the other party provides prior written consent to such solicitation or retention; provided, however, that the foregoing provisions will not prevent either party from hiring or seeking to hire any such person who responds to general advertising or a general solicitation not targeted to the employees of the other party.

(i)    <u>Independent contractors</u>. The Company and Omni are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

(j)      Attorney's fees. In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorney's fees, court costs, and all other related expenses, which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.

XVI.   NOTICING

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Omni:      Omni Agent Solutions
5955 De Soto Avenue
Suite 100
Woodland Hills, CA 91367
Tel: (818) 906-8300
Attn: Brian K. Osborne, Pres. & CEO
Email: bosborne@omniagnt.com

If to the Company: HBL SNF, LLC

_____

_____
Attn: Lizer Jozefovic
Email: lizerj@epicmgt.com

With copies to:      Klestadt Winters, *et al.*
200 West 41st Street
New York, NY 10036-7203
Attn:   Tracy Klestadt, Esq.
        tklestadt@klestadt.com
        Christopher Reilly, Esq.
        creilly@klestadt.com

*[The rest of this page intentionally left blank]*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**OMNI AGENT SOLUTIONS**

By: _____
Name: Paul Deutch
Title:  Executive Vice President

Agreed and Accepted this 2Y day of October 2021.

**HBL SNF, LLC**

By: _____
Name: Lizer Jozefovic
Title:  Owner

# EXHIBIT

## "A"

# 2021 Rate Sheet



| Hourly Rates for Standard and Custom Services* | RATE / COST |
|---|---|
| Analyst | $35.00 - $50.00 per hour |
| Consultants | $65.00 - $160.00 per hour |
| Senior Consultants | $165.00 - $200.00 per hour |
| Solicitation and Securities Services | $205.00 per hour |
| Technology/Programming | $85.00 - $135.00 per hour |

| Printing and Noticing Services | RATE / COST |
|---|---|
| Copy | $.10 per image |
| Document folding and insertion | No charge |
| Labels/Envelope printing | $.035 each |
| E-mail noticing | No charge |
| Certified email | Quote upon request |
| Facsimile noticing | $.10 per image |
| Postage | At cost (Advance payment required for postage charges over $10,000) |
| Envelopes | Varies by size |

| Newspaper and Legal Notice Publishing | RATE / COST |
|---|---|
| Coordinate and publish legal notice | Quote prior to publishing |

| Claims Management | RATE / COST |
|---|---|
| Inputting proofs of claim | Hourly rates (No per claim charges) |
| Scanning | $.10 per image |
| Remote Internet access for claims management | |
| Setup | No charge |
| Access | No charge |

| Creditor Database | RATE / COST |
|---|---|
| Data storage | Under 10,000 records - No charge. Over 10,000 records - .08 per Record |
| Per image storage | No charge |

| Call Centers / Dedicated Line | RATE / COST |
|---|---|
| Creation, configuration and initial setup | No charge |
| Hosting fee | $20.00 per Month |
| Usage | $.0825 per Minute |
| Call center personnel | Standard Hourly Rates |

*Additional professional services not covered by this rate structure will be charged at hourly rates, including any outsourced services performed under our supervision and control.

# 2021 Rate Sheet



| Informational Website | RATE / COST |
|---|---|
| Creation, Configuration and Initial Setup | No charge |
| Data Entry / Information Updates | $65.00  per hour |
| Programming and Customization | $85 - $135 per hour |
| Debtor Website Hosting | No charge |
| Committee Website Hosting | No charge |
| Shareholder Website Hosting | No charge |
| Scanning | $0.10 per image |

| Case Docket / Claims Register | No charge |
|---|---|

| Virtual Data Rooms | Quote upon request |
|---|---|

| Solicitation and Tabulation | RATE / COST |
|---|---|
| Plan and disclosure statement mailings | Quoted prior to printing |
| Ballot tabulation | Standard hourly rates apply |

| Public Debt and Equities Securities and/Rights Offerings Services | RATE / COST |
|---|---|
| Noticing Services | Standard hourly rates apply |
| Solicitation, Balloting and Tabulation | Standard hourly rates apply |
| Rights Offerings | Standard hourly rates apply |
| Security Position Identification Reports | Standard hourly rates apply |

| Schedules / SoFA | RATE / COST |
|---|---|
| Preparation and updating of schedules and SoFAs | $65.00 - $200.00 per hour |

| UST Reporting Compliance | RATE / COST |
|---|---|
| Assist debtors to satisfy jurisdictional requirements, preparation of monthly operating and post-confirmation reports | Standard hourly rates apply |

| Liquidating / Disbursing Agent | RATE / COST |
|---|---|
| Comply with Plan requirements, preparation of disbursement reports, payout calculations, check generation, bank reconciliations | Standard hourly rates apply |

| Real-Time Reports | RATE / COST |
|---|---|
| Claims dashboard | No charge |
| Claim reports | No charge |
| Solicitation dashboard | No charge |
| Tabulation dashboard | No charge |
| Solicitation reports | No charge |

| Miscellaneous | RATE / COST |
|---|---|
| Telephone charges | At cost |
| Delivery | At cost |
| Archival DVD/CD-Rom | $40.00 per copy |