**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
Tracy L. Klestadt
Stephanie Sweeney
Christopher Reilly
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Fax: (212) 972-2245

*Proposed Counsel to the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| HBL SNF, LLC, d/b/a EPIC REHABILITATION AND NURSING AT WHITE PLAINS, | : | Case No. 21-22623 (SHL) |
| | : | |
| Debtor. | : | |
---------------------------------------------------------------x

**DEBTOR'S MOTION FOR INTERIM & FINAL ORDERS AUTHORIZING DEBTOR TO (I) CONTINUE HONORING PREPETITION INSURANCE AGREEMENTS AND PREMIUM FINANCE AGREEMENTS; (II) TO CONTINUE PRE-PETITION INSURANCE POLICIES AND PROGRAMS; AND (III) TO PERFORM ALL PRE-PETITION OBLIGATIONS WITH RESPECT THERETO**

**TO THE HONORABLE SEAN H. LANE,**
**UNITED STATES BANKRUPTCY JUDGE:**

HBL SNF, LLC, d/b/a Epic Rehabilitation and Nursing at White Plains (the "Debtor") hereby files this motion (this "Motion") seeking entry of an order (the "Order"), pursuant to section 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), authorizing the Debtor, in its discretion, (i) to continue honoring certain obligations pursuant to a prepetition insurance agreement and premium finance agreements; (ii) to continue pre-petition insurance policies and programs; and (iii) to perform all pre-petition obligations with respect thereto. In support of this Motion, the Debtor, respectfully represents as follows:

**JURISDICTION**

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue of this proceeding within this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are 105(a), 363(b), 1107(a), and 1108 of the Bankruptcy Code.

**BACKGROUND**

4. On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to Subchapter V of Chapter 11 of the Bankruptcy Code commencing the above-captioned Chapter 11 case (the "Chapter 11 Case") in the United States Bankruptcy Court for the Southern District of New York (the "Court").

5. The Debtor remains in possession of its assets and continues to manage its business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. No trustee or committee, with the exception of a Subchapter V trustee, has been appointed in this case.

7. A detailed account of the Debtor's business and the events precipitating the bankruptcy filing are included in the *Declaration of Lizer Jozefovic Pursuant to Local Bankruptcy Rule 1007-2 and in Support of Chapter 11 Subchapter V Petition and First Day Motions* (the "First Day Declaration"). Those facts are incorporated herein by reference.

**THE INSURANCE POLICIES AND PAYMENT OBLIGATIONS**

8. In connection with the day-to-day operations of its business, the Debtor maintains various business insurance programs (the "Insurance Programs") and related insurance policies,

2

including those as set forth in Exhibit A (the "Insurance Policies") , through several different insurance providers (the "Insurance Providers" and individually the "Insurance Provider"). As is reflected in Exhibit A, the Debtor has various Insurance Policies covering a variety of matters, such as property, commercial property, criminal, cyber, employment practice, general liability insurance, workers' compensation and automobile insurance.

9.      Pursuant to the Insurance Policies, the Debtor is required to pay premiums based on a fixed rate, billed by each Insurance Provider (the "Insurance Premiums"). The Debtor pays approximately $548,728.11 in Insurance Premiums each year. The Debtor finances most of its Insurance Premiums pursuant to a Premium Finance Agreement with First Insurance Funding Corp. ("First Funding"), dated November 19, 2020 (the "Premium Financing Agreement").

10.     With the exception of the Insurance Premiums arising under the workers' compensation and commercial property policies, all of the Debtor's financed Insurance Premiums are financed pursuant to the Premium Financing Agreement. Pursuant to the Premium Financing Agreement, Triumph agreed to finance applicable Insurance Premiums in an amount of approximately $305,789.90. In exchange, the Debtor agreed to pay First Funding a down payment in the amount of $48,125.37, followed by ten equal monthly installments in the amount of approximately $26,729.53. The amount financed under the Premium Financing Agreement accrues interest at a rate of 5.00% per annum. Pursuant to the Premium Financing Agreement, the Debtor grants First Funding a security interest in all sums payable under the Premium Financing Agreement, all unearned Insurance Premiums and dividends which may be payable under the Insurance Policies and all loss payments which reduce the unearned Insurance Premiums, subject to any mortgagee or loss payee interests.

11. As of the Petition Date, the Debtor has made the down payment and nine (9) monthly installment payments. The Insurance Policies financed under the Premium Financing Agreement will expire pursuant to their terms on or around November and December of 2021, at which time the Debtor will have to renew the Insurance Policies or find appropriate alternatives.

12. In addition to Insurance Premiums paid pursuant to the Premium Financing Agreements, the Debtor maintains two additional insurance policies: a workers' compensation policy with the MEMIC Indemnity Company ("MEMIC") and a commercial property policy with Cincinnati Insurance Companies ("Cincinnati"). The Debtor receives workers' compensation coverage as an additional insured under the policy between MEMIC and a non-Debtor management company. The Debtor is responsible for paying a portion of the premiums owed under the MEMIC policy totaling approximately $180,000.00 with 12 monthly installments of approximately $15,000.00. The MEMIC policy will expire pursuant to its terms on July 18, 2022. With regard to the Cincinnati policy, the Debtor pays approximately $47,973.75 in premiums with twelve monthly installments in the amount of approximately $3,987.00. That policy is set to expire pursuant to its terms on December 1, 2021. The Debtor believes it does not owe any payments on the Cincinnati policy as of the Petition Date.

13. While the Debtor believes that it is current on all of its Insurance Obligations as of the Petition Date, the Debtor has filed this Insurance Motion in an abundance of caution in order to obtain authority to (i) make a $26,729.53 payment it believes it may owe in connection with its Premium Financing Agreement; (ii) make any other payments required in connection with its pre-petition insurance policies and programs; and (iii) to pay and perform, as may be necessary, all pre-petition obligations in respect thereof in the ordinary course of business.

4

**RELIEF REQUESTED**

14.     By this Insurance Motion, the Debtor seeks authority to (i) pay pre-petition insurance premiums due and owing as of the Petition Date, if any, (ii) continue its pre-petition Insurance Policies and Insurance Programs, (iii) perform all pre-petition obligations in respect thereof in the ordinary course of business and consistent with its prepetition practices (collectively, the "Insurance Obligations"), and (iv) to enter into/or renew Insurance Policies and premium financing agreements should the need arise.

**BASIS FOR RELIEF REQUESTED**

15.     In view of the importance of maintaining uninterrupted insurance coverage with respect to its business activities and assets, the Debtor respectfully submits that it is in the best interests of its estate and creditors for the Court to authorize the Debtor to honor any outstanding prepetition Insurance Obligations. Any other alternative may result in the termination of necessary insurance, could require a considerably higher cash expenditure by the Debtor to obtain similar insurance coverage or could result in the Debtor obtaining insurance coverage on less desirable terms than its current coverage, any of which would be detrimental to the Debtor's estate and creditors. In addition, the Debtor's efforts to maximize the value of its assets for the benefit of its estate and creditors could be thwarted by the occurrence of a loss event that the Debtor is not insured against due to a potential lapse of coverage.

16.     The Court may authorize the Debtor to continue its Insurance Programs and honor its Insurance Obligations under sections 105(a) and 363(b) of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession "after notice and a hearing" to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). This provision grants a court broad flexibility to authorize a debtor to pay prepetition

claims where a sound business purpose exists. See In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

17. Although section 363(b) does not set forth a standard for determining when it is appropriate to authorize transactions outside of the ordinary course, courts generally grant such relief if the debtor articulates a sound business purpose. See Fulton State Bank v. Schipper (In re Schipper), 933 F.2d 513, 515 (7th Cir. 1991). In addition, "[a] debtor's business decision should be approved by the court unless it is shown to be so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith or whim or caprice." In re Aerovox, Inc., 269 B.R. 74, 80 (Bankr. D. Mass. 2001) (internal citation omitted). In addition, under section 105(a) of the Bankruptcy Code, "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

18. Further, section 105(a) provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). This provision codifies the inherent equitable powers of the bankruptcy court, including the power to authorize payment of prepetition claims under what is known as the "doctrine of necessity" when such payment is critical to a debtor's reorganization or necessary for the preservation of the value of the debtor's estate. See, e.g., In re C.A.F. Bindery, Inc., 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996); In re Fin. News Network, Inc., 134 B.R. 732, 735-36 (Bankr. S.D.N.Y. 1991) ("The "doctrine of necessity" stands for the principle that a bankruptcy court may allow pre-plan payments of prepetition obligations where such payments are critical to the debtor's reorganization.").

19. The payment of prepetition claims under the doctrine of necessity is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code: preserving going concern value and maximizing property available to satisfy creditors. See Bank of Am. Nat'l Trust & Sav. Assoc. v. 203 N. LaSalle P'Ship, 526 U.S. 434, 453 (1999).

20. The relief requested by this Motion represents a sound exercise of the Debtor's business judgment, is necessary to avoid immediate and irreparable harm to the Debtor's estate and is justified under sections 105(a) and 363(b) of the Bankruptcy Code. The Debtor has compelling business reasons for seeking to maintain its Insurance Policies and to ensure payment of necessary premiums thereunder. Insurance coverage provided under the Debtor's Insurance Policies is essential for preserving the value of the Debtor's business, properties, and assets, and, in many cases, such coverage may be required by various regulations, laws, and contracts that govern the Debtor's business. Such coverage is also required by the U.S. Trustee Guidelines. If the Debtor does not continue to perform its Insurance Obligations, its coverage under the Insurance Policies could be impaired. Any disruption in insurance coverage would expose the Debtor to serious risks, including: (i) the possible incurrence of direct liability for the payment of claims that otherwise would have been payable by the Insurance Providers under the Insurance Policies; (ii) the possible incurrence of material costs and other losses that otherwise would have been reimbursed by the Insurance Providers under the Insurance Policies; (iii) the possible inability to obtain similar types of insurance coverage; and (iv) the possible incurrence of higher costs for re-establishing lapsed policies or obtaining new insurance coverage. Any or all of these consequences would cause serious and irreparable harm to the Debtor's business and restructuring efforts, as they would expose the Debtor to higher costs and increased risks of loss, at a minimum. To avoid those consequences, the relief requested herein should be granted.

7

## NOTICE

21.   Notice of this Motion will be given to: (i) the Office of the United States Trustee for the Southern District of New York, Attn: Andrea Schwartz, Esq.; (ii) the New York State Department of Health; (iii) counsel to the DIP Lender; (iv) New York State Office of the State Long Term Care Ombudsman, county of Westchester; (v) the duly appointed patient care ombudsman in this Case; (vi) the United States Attorney's Office for the Southern District of New York; (vii) the Internal Revenue Service; (viii) the parties included on the Debtor's consolidated list of twenty (20) largest unsecured creditors; (ix) counsel to WPHCP; (x) counsel to Security Benefit; (xi) the Subchapter V trustee, and (xii) any party that has requested notice pursuant to Bankruptcy Rule 2002.

## NO PRIOR RELIEF

22.   No previous motion for the relief sought herein has been made to this or any other Court.

**CONCLUSION**

**WHEREFORE**, the Debtors respectfully request entry of an Order, substantially in the form annexed hereto as Exhibit B, granting the relief requested in the Motion and such other and further relief as may be just or proper.

Dated: New York, New York
November 1, 2021

                KLESTADT WINTERS JURELLER
                SOUTHARD & STEVENS, LLP

By: */s/ Tracy L. Klestadt*
     Tracy L. Klestadt
     Stephanie Sweeney
     Christopher Reilly
     200 West 41st Street, 17th Floor
     New York, New York 10036
     Tel: (212) 972-3000
     Fax: (212) 972-2245
     Email: tklestadt@klestadt.com
            ssweeney@klestadt.com
            creilly@klestadt.com

*Proposed Attorneys for the Debtor and Debtor-in-Possession*

**EXHIBIT A**

| Type of Coverage[1] | Carrier | Agent | Policy No. | Period | Premium |
|---|---|---|---|---|---|
| General Liability | National Fire & Marine Ins. Co. | Assured Partners of Florida, LLC<br>300 Colonial Center Pkwy Suite 270<br>Lake Mary, FL 32746 | NSC100812 | 11/15/2020-11/15/2021 | $258,480.17 |
| Cyber Liability | Beazley Insurance Co. | Assured Partners of Florida, LLC<br>300 Colonial Center Pkwy Suite 270<br>Lake Mary, FL 32746 | V299C1200201 | 12/11/2020-12/11/2021 | $6,050.00 |
| Criminal Liability | Travelers Casualty & Surety of America | Assured Partners of Florida, LLC<br>300 Colonial Center Pkwy Suite 270<br>Lake Mary, FL 32746 | 107193713 | 12/11/2020-12/11/2021 | $1,686.00 |
| Employee Practice | Scottsdale Insurance Company | Assured Partners of Florida, LLC<br>300 Colonial Center Pkwy Suite 270<br>Lake Mary, FL 32746 | EKS3358764 | 12/11/2020-12/11/2021 | $39,573.73 |
| Workers' Compensation | MEMIC Indemnity Company | | 3102805596 | 7/18/2021-7/18/2022 | $180,000.00 |
| Commercial Property | Cincinnati Insurance Companies | | HEN0009557 | 12/1/2020-12/1/2021 | $47,973.75 |

---

[1] The General Liability, Cyber Liability, Criminal Liability and Employee Practice policies are financed by First Insurance Funding Corp. pursuant to the Premium Finance Agreement.

# **Exhibit B**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
In re                                                      :    Chapter 11
                                                           :
HBL SNF, LLC, d/b/a EPIC REHABILITATION    :    Case No. 21-22623 (SHL)
AND NURSING AT WHITE PLAINS,               :
                                                           :
                                  Debtor.          :
------------------------------------------------------------------x

### INTERIM ORDER AUTHORIZING DEBTOR TO (I) CONTINUE HONORING PREPETITION INSURANCE AGREEMENTS AND PREMIUM FINANCE AGREEMENTS; (II) TO CONTINUE PRE-PETITION INSURANCE POLICIES AND PROGRAMS; AND (III) TO PERFORM ALL PRE-PETITION OBLIGATIONS WITH RESPECT THERETO

Upon the motion (the "Motion") [1] of HBL SNF, LLC, d/b/a Epic Rehabilitation and Nursing at White Plains (the "Debtor") for entry of an order, pursuant to section 363(b) of the Bankruptcy Code, authorizing the Debtor to continue honoring its obligations pursuant to the Insurance Policies and Premium Financing Agreement with First Insurance Funding ("First Funding"); and due and sufficient notice of the Motion having been given and no other and further notice need be given; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested by this Motion is in the best interests of the Debtor and its estate; and after due deliberation and sufficient cause appearing therefor, it is hereby:

**ORDERED**, that the Motion is granted to the extent set forth herein; and it is further

**ORDERED**, that the Debtor is authorized, but not directed, to honor the terms of its Insurance Policies and the Premium Financing Agreements; and it is further

---

[1] Capitalized terms used, but not herein defined shall have the meanings ascribed to them in the Motion.

**ORDERED**, that nothing in this Motion or this Order, or the Debtor's payment of premium installment payments pursuant to this Order, shall be deemed or construed as: (a) an admission to the validity of any claims against the Debtor; (b) a waiver of the Debtor's rights to dispute any claim; or (c) an approval or assumption of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code; and it is further

**ORDERED** that the Final Hearing on the Motion shall be held on [DATE] at 2:00 p.m. (Eastern Time) before the Honorable Sean H. Lane at the United States Bankruptcy Court for the Southern District of New York located at 300 Quarropas Street, White Plains, New York 10601;

**ORDERED** that Objections or responses, if any, to the Motion shall be in writing, filed with the Court, with a copy to chambers, so as to be received by (i) counsel to the Debtor, Attn: Tracy L. Klestadt, Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10036-7203; (ii) counsel to any secured lender; and (iii); the Office of the United States Trustee for the Southern District of New York, Attn: Andrea Schwartz, Esq., U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, New York 10014., on or before _____, 2021 at 5:00 p.m. In the event no objections are timely filed, this Order shall continue in full force and effect and shall be deemed a Final Order without the need for further notice or hearing in accordance with Federal Rules of Bankruptcy Procedure, including without the need for the Final Hearing; and it is further

**ORDERED** that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

New York, New York
Dated: _____, 2021

                                                HONORABLE SEAN H. LANE
                                                UNITED STATES BANKRUPTCY JUDGE