UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re:

HBL SNF, LLC, d/b/a EPIC REHABILITATION
AND NURSING AT WHITE PLAINS,

Debtor.
---------------------------------------------------------------x

Chapter 11

Case No. 21-22623 (SHL)

**OBJECTION OF WHITE PLAINS HEALTHCARE PROPERTIES I, LLC TO ENTRY OF THE PROPOSED FINAL ORDER AUTHORIZING THE DEBTOR TO BORROW PURSUANT TO A POST-PETITION SENIOR SECURED FINANCING FACILITY**

White Plains Healthcare Properties I, LLC ("WPH Properties" or the "Landlord"), by and through its undersigned counsel, respectfully submits this objection (the "Objection") to the proposed final DIP financing order (the "Proposed Final DIP Order"), filed by HBL SNF, LLC (the "Debtor" or "HBL") on the docket on December 6, 2021 (Bankr. Dkt. 57), seeking authorization to obtain a post-petition senior secured revolving credit facility in an aggregate amount of up to $4,000,000 (the "DIP Facility") from CNH Finance Fund I, L.P. (the "DIP Lender") on the terms set forth in the Proposed Final DIP Order.

**PRELIMINARY STATEMENT**

According to the Debtor, HBL is operating a "financially and operationally sound" business at a skilled nursing facility built and owned by WPH Properties. HBL is operating its business under a lease that was terminated by WPH Properties almost two years ago because, among other things, HBL failed to post the required $5.3 million security deposit, including a $3.7 million letter of credit, from the very outset of the lease term. And now, even though HBL's business is based on its use of WPH Properties' facility, HBL proposes to altogether stop

making lease payments to WPH Properties, and instead to pay those amounts to Security Benefit Life Insurance Company ("Security Benefit"), as supposed "adequate protection."

As HBL's landlord, WPH Properties has suffered, and continues to suffer, substantial economic harm, having been placed in financial distress due to HBL's conduct before and during this bankruptcy proceeding. Accordingly, in addition to the monthly lease payments, WPH Properties is entitled to adequate protection equivalent to the value of the $5.3 million security deposit that should have been posted by HBL at the outset of the lease term. At the very least, WPH Properties is entitled to continue to receive the required lease payments.

In contrast to WPH Properties, Security Benefit is not a creditor of HBL, the Debtor does not owe any amounts to Security Benefit, and there has been no showing that HBL's use of Security Benefit's collateral will cause any diminution in its value. To the contrary, as explained below, Security Benefit's construction loan to WPH Properties is over-secured, and, according to HBL's uncontested valuation, Security Benefit is protected by a 35%-78% equity cushion based on the value of WPH Properties' facility alone. Moreover, WPH Properties, and not HBL, is the borrower under Security Benefit's construction loan. And WPH Properties, not Security Benefit, is the owner of the facility. Accordingly, to the extent that Security Benefit has claims related to repayment of its loan, those are state law contract claims against WPH Properties, not claims against the Debtor.

The only conceivable basis for adequate protection payments to Security Benefit is if such payments can be tied to a demonstrable diminution in the value of liens that Security Benefit has in property of the Debtor. There has not been any such showing, and thus there is no basis for adequate protection payments to Security Benefit, and certainly no basis for the Debtor

to make its lease payments to Security Benefit, and not to WPH Properties, the Debtor's landlord.

## BACKGROUND

**A.     The Relationship Between WPH Properties, Security Benefit, and the Debtor**

1. WPH Properties is the owner of the real property at 116-120 Church Street, White Plains, New York, on which WPH Properties built a brand new, state-of-the-art, 160-bed skilled nursing facility (the "Facility").

2. To fund construction of the Facility, WPH Properties entered into the Construction Loan Agreement (the "Loan Agreement"), dated as of August 18, 2017, by and among WPH Properties, as borrower, and Security Benefit Life Insurance Company, as lender ("Security Benefit"), and Security Benefit Corporation, as agent. A copy of the Loan Agreement was attached to the Debtor's Notice of Filing of Exhibits, Bankr. Dkt. 58, as Exhibit A. The Loan Agreement reflects a total principal amount of $38,500,000 (the "Loan Amount").

3. As acknowledged by the Debtor, "the Debtor is not a party to the Loan Agreement and does not owe any amounts thereunder to Security Benefit." Bankr. Dkt. 11 (DIP Motion ¶ 14).

4. As collateral security for repayment of the Loan Amount, WPH Properties executed a Mortgage (the "Mortgage"), which was duly recorded in the County Clerk's Office on August 31, 2017, and granted Security Benefit a security interest in (i) the real property, (ii) the improvements, fixtures, equipment, and personal property; and (iii) leases and rents. A copy of the Mortgage was attached to the Debtor's Notice of Filing of Exhibits, Bankr. Dkt. 58, as Exhibit B.

5. On August 18, 2017, WPH Properties also executed and delivered to Security Benefit an Assignment of Leases and Rents (the "Assignment of Leases and Rents"), as further

3

collateral securing repayment of the Loan. A copy of the Assignment of Leases and Rents was attached to the Debtor's Notice of Filing of Exhibits, Bankr. Dkt. 58, as Exhibit C. The Assignment of Leases and Rents was recorded in the County Clerk's Office on August 31, 2017.

6.  On August 18, 2017, WPH Properties, Security Benefit and the Debtor entered into the Security Agreement, Assignment of Leases and Rents and Fixture Filing (the "Security Agreement"), which encumbered Debtor's interest, as operator of the Facility, in "Collateral Property" as further security for the payment of the Loan.[1] A copy of the Security Agreement was attached to the Debtor's Notice of Filing of Exhibits, Bankr. Dkt. 58, as Exhibit D. "Collateral Property" generally includes the Debtor's accounts receivable, and fixtures and improvements to the Facility ("Debtor's Accounts Receivable and Fixtures").[2] The "Collateral Property" does *not* include lease payments owed by the Debtor to WPH Properties.

7.  A UCC-1 Financing Statement (the "Financing Statement") was filed by Security Benefit on April 15, 2020 relating to its interest in the Debtor's Accounts Receivable and Fixtures. A copy of the Financing Statement was attached to the Debtor's Notice of Filing of Exhibits, Bankr. Dkt. 58, as Exhibit E.

8.  In 2017, WPH Properties, as Landlord, and Debtor, as tenant, entered into the amended and restated Lease of the Real Property, dated as of November 19, 2015 (the "Lease"). A copy of the Lease was attached to the Debtor's Notice of Filing of Exhibits, Bankr. Dkt. 58, as Exhibit F.

---

[1] Importantly, and contrary to the impression created by the Debtor, the Debtor is not a party to the Assignment of Leases and Rents referenced in paragraph 5 above.

[2] "Rent(s)" is defined in the Security Agreement to mean "all rents (whether from residential or non-residential space), revenues and other income of the Land or the Improvements, parking fees, laundry and vending machine income and fees and charges for food, health care and other services provided at the Mortgaged Property." Bankr. Dkt. 58 Ex. D (Security Agreement at 8). "Rent" does *not* refer to the monthly payments due to WPH Properties under the Lease.

4

9. On September 30, 2019, HBL took possession of the Facility and the Lease term commenced. HBL has remained in possession of the Facility ever since and continues to operate its business on the premises.

### B. The Lease Termination and Alleged Default Under the Loan Agreement

10. Immediately upon commencement of the Lease term, Debtor defaulted under the Lease and failed to cure numerous outstanding breaches, prompting the Landlord's termination of the Lease.

11. The Debtor's Lease defaults include, among other things, the failure to provide security deposits to WPH Properties in the total amount of $5,300,000 consisting of: (i) an unconditional letter of credit or cash in the amount of $3,700,000; and (ii) an additional $1,600,000 that was being held in Debtor's account during construction of the Facility and should have been delivered to WPH Properties prior to commencement of the Lease.

12. On January 7, 2020, due to numerous Lease defaults, WPH Properties sent Debtor a notice of default and election to terminate the Lease upon five days' notice and accelerate all rents due for the balance of the lease term (the "Notice of Termination").

13. On September 18, 2020, WPH Properties commenced an action in New York state court against the Debtor regarding the Lease defaults and resulting termination. On November 3, 2021, the action was removed by the Debtor and is now pending before this Court, Case No. 21-07096 (the "Adversary Proceeding").

14. During the pendency of the Lease, Security Benefit has sent notices of default to WPH Properties in connection with the Loan Agreement.[3]

---

[3] WPH Properties' current financial difficulties stem from its inability to refinance the Facility due to the Debtor's default under the Lease from the very start of the Lease term. Because the Debtor was in default from the outset, WPH Properties could not obtain the estoppel certificate required for any refinancing

5

15. Following issuance of the notices of default under the Loan Agreement, Security Benefit commenced litigation against WPH Properties, attempting to foreclose on the Facility. Security Benefit's actions were discontinued because of New York State's moratorium on foreclosures due to the COVID-19 global pandemic. Debtor was not a party to those proceedings between Security Benefit and WPH Properties (among others).

**C.    Procedural History**

16. On November 1, 2021, HBL filed a voluntary petition for relief under Subchapter V of Chapter 11 of the United States Bankruptcy Code (the "HBL Bankruptcy") in the United States Bankruptcy Court for the Southern District of New York.

17. On that same date, HBL filed a Motion for Entry of an Interim and Final DIP Order (Bankr. Dkt. 11) (the "DIP Motion").

18. The DIP Motion stated that the Debtor is "financially and operationally sound" but has been forced to file for bankruptcy because of the lawsuit with WPH Properties and the risk that the Lease was terminated, thereby precluding Debtor from continuing to operate its business at the Facility.

19. The Debtor filed an appraisal with the Court in connection with the DIP Motion, valuing the Facility and related assets at between $56,800,000 and $74,900,000. Bankr. Dkt. 3 (Jozefovic Decl. Ex. 6); *id.* ¶ 34.

20. The DIP Motion asserted, based on the appraised value of the Facility, that "WPHPC and Security Benefit are more than adequately protected by equity in the property

---

transaction and thus it could not refinance and repay the Security Benefit loan in full. The Debtor has always been well aware of the cascading effects of its defaults under the Lease. Throughout its commercial relationship with WPH Properties, and now in this bankruptcy proceeding, the Debtor is conducting itself in a manner intended to cause maximum financial harm to WPH Properties.

6

securing their interests." Bankr. Dkt. 11 (DIP Motion at 4); *see also id.* ¶ 34; Bankr. Dkt. 3 (Jozefovic Decl. ¶ 34).

21. On November 3, 2021, the Court held a first day hearing regarding, inter alia, the DIP Motion and approved interim DIP Financing in the amount of $750,000 (the "Initial Interim DIP Financing"). In connection with the Initial Interim DIP Financing, the Debtor represented that it would use the financing to, among other things, make the monthly rental payments due to WPH Properties under the Lease.

22. The Court subsequently entered an order memorializing the terms of the Initial Interim DIP Financing. Bankr. Dkt. 34. The Court scheduled the hearing on the final DIP Motion for December 7, 2021, and set November 30, 2021 as the objection deadline.

23. WPH Properties filed the only objection to the DIP Motion. Bankr. Dkt. 54. Security Benefit did not object. WPH Properties' objection was, in essence, a reservation of rights to ensure that entry of the DIP Order would not prejudice its arguments in the pending Adversary Proceeding before this Court regarding Debtor's Lease defaults and WPH Properties' termination of the Lease.

24. On the evening of December 6, 2021—the day before the scheduled hearing on the DIP Motion—Debtor filed on the docket a Notice of Filing of the Proposed Final DIP Order, Bankr. Dkt. 57.

25. Unlike the initial proposed order attached to the DIP Motion, the Proposed Final DIP Order sought authority to provide "adequate protection" to Security Benefit by paying the monthly amount of $506,097.00 due to WPH Properties under the Lease directly to Security Benefit and depriving WPH Properties of any monthly payment at all in connection with Debtor's continued use of the Facility.

26.    At the December 7, 2021 hearing on the DIP Motion, WPH Properties objected to the eleventh-hour changes to the proposed DIP Order that had a significant detrimental impact on WPH Properties.

27.    In response, the Court postponed adjudication of the DIP Motion, directed the interested parties to brief any objections to the Proposed Final DIP Order (including the issues relating to adequate protection), set a hearing for December 21, 2021 to decide the DIP Motion, and orally approved a second interim DIP financing in the amount of $1,500,000.

## OBJECTIONS

### I.   EVEN IF SECURITY BENEFIT WERE ENTITLED TO SEEK ADEQUATE PROTECTION, IT IS ADEQUATELY PROTECTED BY A SUBSTANTIAL EQUITY CUSHION

28.    If Security Benefit wanted to object to the DIP Motion on the ground that Security Benefit was not adequately protected, it could have. It did not.

29.    Security Benefit is a secured creditor of *WPH Properties* pursuant to the Loan Agreement and is not a creditor of the Debtor. Bankr. Dkt. 3 (Jozefovic Decl. ¶ 34) ("[a]lthough the Debtor granted security interests to . . . Security Benefit pursuant to the . . . Security Agreement . . . the Debtor is not a party to [WPH Properties'] loan agreement with, and has no obligations thereunder to, Security Benefit).

30.    Accordingly, the only conceivable basis for Security Benefit's purported demand for adequate protection—a demand that was never asserted—would be based on Section 364(d)(1)(B) of the Bankruptcy Code to the extent that Security Benefit has a perfected lien in collateral covered by the DIP Lender's first-priority lien.

31.    As set forth above, Security Benefit's only lien in the Debtor's assets is the lien in Debtor's Accounts Receivable and Fixtures under the Security Agreement. To be clear, and as defined in the Security Agreement, the term "Rents," as used in that agreement, refers to revenue

8

and income that the Debtor earns from its operation of the Facility (*see* fn. 2 above).  In other words, it refers to amounts paid to the Debtor on account of its operation of the Facility.  The term does *not* refer to monthly rent payments owing to WPH Properties under the Lease.

32. Further, as clearly stated in the DIP Motion, "[a]lthough the Debtor's assets are *technically encumbered* by Security Benefit's security interest under the Security Agreement . . . the Debtor does not have any secured debt owing to Security Benefit, as the Debtor is not a party to the Loan Agreement or guarantor of WPHCP's obligations thereunder." Bankr. Dkt. 11 (DIP Motion ¶ 29) (emphasis added).

33. Further, the Debtor argues in the DIP Motion that since Security Benefit does not have "control of the Debtor's bank accounts under a deposit control agreement or otherwise," they do not "have an enforceable lien on the Debtor's cash."  Bankr. Dkt. 11 (DIP Motion ¶ 29). Without an enforceable lien on property of the Debtor, Security Benefit is not eligible to claim entitlement to adequate protection payments.

34. Now in an unwarranted reversal of its prior position, the Debtor, in the Proposed Final DIP Order, seeks authorization, with no basis in the record, to provide Security Benefit with "adequate protection" in the form of redirecting monthly payments owed to WPH Properties under the Lease.

35. The Proposed Final DIP Order vaguely asserts that such adequate protection is premised on a so-called "diminution in value" of the Security Benefit Collateral resulting from the use, sale or lease of such collateral by the Debtor.  Bankr. Dkt. 57 (Proposed Final DIP Order ¶ 14).[4]  This assertion makes no sense and fails to quantify or explain the "diminution in value"

---

[4] Further, as the Debtor points out in the DIP Motion, the Security Agreement "contemplate[s] carve outs from such security interests in favor of an accounts receivable lender to the Debtor."  Bankr Dkt. 11 (DIP

9

in Debtor's Accounts Receivable and Fixtures—the only collateral granted by the Security Agreement. *See In re Mosello*, 195 B.R. 277, 292 (Bankr. S.D.N.Y. 1996) ("A finding of adequate protection should be premised on facts, or on projections grounded on a firm evidentiary basis.") (internal citation omitted). It similarly fails to explain what the Debtor has the right to "sell or lease" that may adversely impact the Security Benefit Collateral. And it overlooks the proverbial elephant in the room: that Debtor's entire business is premised on its continued operation of the Landlord's Facility, which is not property of Security Benefit.

36. The Debtor has consistently represented to this Court that it is "financially and operationally sound," but for its pending litigation with WPH Properties about the Lease. Bankr. Dkt. 3 (Jozefovic Decl. ¶ 26). Thus, there is no evidence that the Security Benefit Collateral is at risk of decreasing in value at all, and certainly not in an amount sufficient to justify adequate protection payments to Security Benefit.

37. Even if Security Benefit were entitled to seek adequate protection on account of the Security Agreement, the approximately $42 million putatively owed by WPH Properties to Security Benefit under the Loan Agreement, Bankr. Dkt. 11 (DIP Motion ¶ 34), is over-secured based on the Debtor's uncontested valuation of the Facility alone.

38. According to the Debtor's unrefuted appraisal, the property is worth between $56,800,000 and $74,900,000. Bankr. Dkt. 3, Ex. 6; *id.* ¶ 34. The Debtor's appraised value means that Security Benefit's collateral interest in the Facility alone is worth 135% to 178% of the amount putatively due by WPH Properties under the Loan Agreement. This is a substantial

---

Motion ¶ 29). Thus, Security Benefit's pre-bankruptcy bargain contemplated a working capital loan such as the DIP Loan.

equity cushion. Moreover, the DIP Lender has not been granted an interest in the Facility, because the property belongs to WPH Properties, not the Debtor.

39. In any event, even if Security Benefit had a basis to seek adequate protection, a substantial equity cushion of 35% to 78% eliminates the need to provide adequate protection to Security Benefit, an entity that is not a creditor in this bankruptcy proceeding. *See, e.g., Wilmington Tr. Co. v. AMR Corp. (In re AMR Corp.)*, 490 B.R. 470, 478 (S.D.N.Y. 2013) ("Debtors asserted the existence of an equity cushion that was, by all accounts, "north of twenty percent" of the Collateral—to establish that the Trustees' interest in the Collateral was adequately protected.") (internal citations and quotations omitted); *In re Tucker*, 5 B.R. 180, 182 (Bankr. S.D.N.Y. 1980) ("An adequate 'cushion' can itself constitute adequate protection with nothing more.") (citing 2 Collier on Bankruptcy, s 361.02(3) at p. 361-9 (15th ed. 1979)).

40. In addition to this equity cushion, WPH Properties pays Security Benefit approximately $240,000 per month pursuant to the Loan Agreement, which equates to approximately $2.9 million per year. These continued payments further enhance Security Benefits' equity cushion.

41. Thus, Security Benefit's Loan to WPH Properties is significantly over-secured, and there is no justifiable basis for the Debtor to provide adequate protection payments to Security Benefit.

## II. WPH PROPERTIES, AS LANDLORD OF THE FACILITY, IS ENTITLED TO ADEQUATE PROTECTION

42. In the Proposed Final DIP Order, the Debtor seeks the Court's permission to cease paying rent to WPH Properties under the Lease, notwithstanding that it still uses the Facility to operate its business, and to instead make the monthly Lease payment to Security Benefit purportedly as "adequate protection." This position is unsupportable for a number of reasons.

11

43.     *First*, under Section 365(d)(3) of the Bankruptcy Code, the Debtor must comply with its obligations under the Lease pending assumption or rejection of the lease—including the timely payment of post-petition Lease payments.  Debtor failed to pay the December Lease payment to WPH Properties and, pursuant to the Proposed Final DIP Order, has indicated its intention to indefinitely cease making the Lease payments to WPH Properties.  This non-payment of post-petition rent calls into question the Debtor's right to attempt to assume the Lease (in the event that the Lease is found not to have been terminated).  Without the continued, timely payment of post-petition rent to the Landlord, the Debtor's asserted plan for reorganization is untenable.

44.     Under the Bankruptcy Code, WPH Properties' right to timely payment of post-petition rent "constitutes an interest in property entitled to adequate protection." *In re P.J. Clarke's Rest. Corp.*, 265 B.R. 392, 404 (Bankr. S.D.N.Y. 2001); *see also In re Ernst Home Ctr., Inc.*, 209 B.R. 955, 965–66 (Bankr. W.D. Wash. 1997) (holding that real property lessors may request adequate protection because "[t]he right to receive timely payments under Section 365(d)(3) would certainly be a hollow right if the debtor had no possibility of ever making those payments and the landlord was required to wait until the debtor's default before it could enforce that right.").

45.     *Second*, but for the Debtor's breaches of the Lease, WPH Properties would have had security for the Debtor's monthly lease obligations.  In violation of the Lease, the Debtor failed to provide WPH Properties with a security deposit in the amount of $5.3 million.  This fundamental breach of the Lease by the Debtor is a critical issue in the Adversary Proceeding and is currently being litigated before the Court.  Had the Debtor complied with its basic obligation under the Lease, any claim by WPH Properties against the Debtor would have been

secured by the amount of the security deposit, and WPH Properties' right to draw on the required $3.7 million letter of credit would have been unaffected by the bankruptcy proceeding. Instead, WPH Properties' claims against the Debtor were never secured by the security deposit required under the Lease and now the Debtor proposes to altogether cease paying rent to WPH Properties.

46. *Third*, it is WPH Properties, a creditor of the Debtor and the Landlord entitled to adequate protection, that has been put in financial jeopardy by the Debtor's actions. Once Security Benefit's outstanding Loan Amount is deducted from the appraised value of the Facility, there is between $14.8 million and $32.9 million remaining to satisfy the Debtor's obligations to WPH Properties under the Lease. But the Debtor's annual Lease payment obligation alone is more than $6 million; and based on its pre-bankruptcy defaults under the Lease, the Debtor owes WPH Properties more than $110 million. All the while, the Debtor has thrown up meritless roadblocks to interfere with WPH Properties' termination of the Lease almost two years ago and its plan to have a new operator installed under the supervision of, and with the approval of, the New York State Department of Health.

47. If any interested party is entitled to adequate protection payments from the Debtor in connection with its plan to incur additional debt from the DIP Lender, it is WPH Properties, as Landlord—not Security Benefit, which is over-secured vis-à-vis its loan to WPH Properties and has no creditor relationship with the Debtor.

### III. THE DEBTOR IS NOT A PARTY TO THE AGREEMENTS BETWEEN SECURITY BENEFIT AND WPH PROPERTIES, AND DISPUTES ARISING UNDER THOSE NON-DEBTOR AGREEMENTS SHOULD NOT BE ADJUDICATED BY THIS COURT

48. If Security Benefit genuinely believed that it was entitled, pursuant to the Assignment of Leases and Rents, to make a demand of the Debtor that all payments due to WPH Properties under the Lease be paid directly to Security Benefit, it could have made such a

demand prior to the HBL Bankruptcy. However, the first time that Security Benefit ever sent such a notice to WPH Properties was the evening before the DIP Hearing, *after* the lease payment due from the Debtor to WPH Properties already was five days late.[5] This belated demand made of the Debtor, without seeking relief from the automatic stay, was a ploy by Security Benefit to manufacture an unwarranted claim of entitlement to adequate protection.

49. But the Debtor is not a party to the Assignment of Leases and Rents, and the extent of Security Benefit's rights under the Assignment of Leases and Rents—particularly following lease termination—is a contract issue under state law between two non-debtor parties, not a matter of bankruptcy law. *See, e.g., In re Gaslight Vill., Inc.*, 6 B.R. 871, 874 (Bankr. D. Conn. 1980) ("Whether or not an assignment of rents to a mortgagee is an actual assignment, or merely a security device in the event of default, is not a matter of bankruptcy law; it involves a determination of what rights the mortgagee would have under state law."); *see also 641 Ave. of Ams. Ltd. P'ship v. 641 Assocs., Ltd.*, 189 B.R. 583, 590–91 (S.D.N.Y. 1995) ("the existence of a separate assignment of rents does not create an automatic conveyance of the rents if the assignment is made as further security for the mortgage debt. Thus, an assignment of rents becomes enforceable when the assignee takes affirmative steps to assert his rights, such as appointing a receiver to collect the rents, taking possession of the property, commencing foreclosure proceedings, or seeking an order for sequestration of rents.")

50. Security Benefit is attempting to conflate "adequate protection" under the Bankruptcy Code with its rights under a bilateral contract with WPH Properties. In doing so,

---

[5] While Security Benefit has asserted that WPH Properties is in breach of the Loan Agreement based on the failure to establish a cash management account, this dispute is distinct from any demand under the Assignment of Leases and Rent; and, in any event, it is a contract dispute between two non-debtors that does not involve the Debtor.

Security Benefit is improperly using the Debtor's bankruptcy as a back-door to try to enforce its purported contractual rights against WPH Properties under the Assignment of Leases and Rents. *See Onewoo Corp. v. Hampshire Brands, Inc.*, 566 B.R. 136, 139 (Bankr. S.D.N.Y. 2017) (breach of contract claims are state law claims, not created by the Bankruptcy Code). That is an egregious overreach.

51.    Finally, sending notice to the Debtor during the pendency of the HBL Bankruptcy to redirect its Lease payments to Security Benefit violated the automatic stay. *See, e.g.*, *In re Vienna Park Props.*, 136 B.R. 43, 54 (S.D.N.Y.), *aff'd*, 976 F.2d 106 (2d Cir. 1992) (holding that "properly recorded assignment of rents provision conferred a security interest in after-acquired rents which survives the bankruptcy even though it cannot be enforced because of the automatic stay.").

52.    Security Benefit has not sought such relief from this court and there would be no basis to lift the automatic stay because, as set forth above in Section I, Security Benefit's Loan to WPH Properties is adequately protected. *See In re AMR Corp.*, 490 B.R. at 478.

53.    Because Security Benefit's demand to the Debtor violated the automatic stay, the Debtor was not genuinely under conflicting obligations for payment of the monthly Lease payment. Thus, the Debtor was not justified in unilaterally relieving itself of its clear obligation under the Lease to pay monthly rent for the Facility to the Landlord.

**CONCLUSION**

54. For the foregoing reasons, WPH Properties files this objection to the Proposed Final DIP Order to (i) request that the Court deny adequate protection payments to Security Benefit; (ii) direct that all monthly Lease payments continue to be timely paid to WPH Properties under the terms of the Lease; and (iii) grant such other and further relief as the Court deems just and proper.

Dated: December 13, 2021
New York, New York

Respectfully submitted,

BINDER & SCHWARTZ LLP

/s/ Eric B. Fisher
Eric B. Fisher
Lindsay A. Bush
366 Madison Avenue, 6th Floor
New York, NY 10017
Tel.: (212) 510-7272
Email: efisher@binderschwartz.com
Email: lbush@binderschwartz.com

-and-

DELBELLO DONNELLAN WEINGARTEN WISE & WIEDERKEHR, LLP
Alfred E. Donnellan
One North Lexington Avenue, 11th Floor
White Plains, New York 10601
Tel.: (914) 681-0200
Email: aed@ddw-law.com

ABRAMS, FENSTERMAN, FENSTERMAN, EISMAN, FORMATO, FERRARA, WOLF & CARONE, LLP
Robert A. Spolzino
81 Main Street, Suite 306
White Plains, New York 10601
Tel.: (914) 607-7010
Email: RSpolzino@Abramslaw.com

*Counsel for White Plains Healthcare Properties I, LLC*