UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

In re:

HBL SNF, LLC, d/b/a EPIC REHABILITATION
AND NURSING AT WHITE PLAINS,

Debtor.

------------------------------------------------------------------------x

Chapter 11

Case No. 21-22623 (SHL)

### REPLY IN FURTHER SUPPORT OF OBJECTION OF WHITE PLAINS HEALTHCARE PROPERTIES I, LLC TO ENTRY OF THE PROPOSED FINAL ORDER AUTHORIZING THE DEBTOR TO BORROW PURSUANT TO A POST-PETITION SENIOR SECURED FINANCING FACILITY

White Plains Healthcare Properties I, LLC, by and through its undersigned counsel, respectfully submits this reply (the "Reply") in further support of its Objection to the Proposed Final DIP Order filed by the Debtor and in reply to the Response of Security Benefit to the Objection, Bankr. Dkt. 72 ("Security Benefit's Response").[1]

### PRELIMINARY STATEMENT

WPH Properties built and owns the Facility, which is a state-of-the-art skilled nursing facility and the first such facility to be built from the ground up in New York State in the past decade. As landlord and owner, WPH Properties is entitled to adequate protection payments from the Debtor in connection with the Debtor's continued use of the Facility during this bankruptcy proceeding, particularly given that WPH Properties terminated the lease approximately one year ago due, among other things, to the Debtor's failure to deliver the required security deposits. At the very least, WPH Properties is entitled to be paid the monthly

---

[1] All capitalized terms that are not otherwise defined herein shall have the meanings ascribed to them in WPH Properties' Objection filed with the Court on December 13, 2021, Bankr. Dkt. 61.

payments due under the Lease. Without those monthly payments, WPH Properties will be in financial distress.

In contrast, Security Benefit, WPH Properties' secured lender, has no legitimate claim to adequate protection payments from the Debtor.[2] Security Benefit does not, and cannot, dispute that landlords, like WPH Properties, are entitled to adequate protection under the Bankruptcy Code. It also is undisputed that WPH Properties owns the Facility currently being used by the Debtor for its business.

Security Benefit's arguments for adequate protection fail for the following reasons:

First, Security Benefit has not established that it has an enforceable perfected lien in collateral being used by the Debtor. At best, Security Benefit's lien is in Accounts Receivable and Fixtures of the Debtor, but Security Benefit does not even attempt to address the Debtor's argument that this lien is not perfected due to the lack of a deposit control agreement or other mechanism for Security Benefit to exercise control over the Debtor's bank accounts. Without an enforceable lien, Security Benefit is not entitled to adequate protection.

Further, even if Security Benefit had a perfected lien in the Debtor's Accounts Receivable and Fixtures, it has not identified or quantified any anticipated diminution in the value of that collateral. Without such a showing, Security Benefit is not entitled to any adequate protection payments. And it certainly is not entitled to adequate protection payments in the amount of $506,000 per month.

---

[2] As a threshold matter, Security Benefit has waived any right to object to the DIP Motion. Security Benefit altogether failed to object to the DIP Motion at any time prior to the Court's first scheduled hearing on approval of the DIP Loan; and Security Benefit's Response in connection with the current controversy about adequate protection was filed hours after the 5:00 p.m. deadline established in the Court's Second Interim Order, entered on December 13, 2021, Bankr. Dkt. 67.

2

Third, Security Benefit's loan to WPH Properties is oversecured with a substantial equity cushion based on the only appraisal of the Facility in the record before the Court. Security Benefit makes no serious effort to contest the appraisal and has not introduced any contrary indication of value. Security Benefit claims without any support that it fears a potential diminution in the value of the Facility because of the risk of an "abrupt termination" of the Lease. However, as shown in the Declaration of Benjamin Landa submitted herewith and explained below, Security Benefit does not face such a risk. Moreover, WPH Properties has made, and will continue to make, monthly interest payments to Security Benefit, only further enhancing Security Benefit's already substantial equity cushion.

Finally, Security Benefit claims that it is entitled to the monthly lease payments from the Debtor because Security Benefit supposedly took affirmative steps to redirect the monthly payments before the Debtor's bankruptcy petition was filed. This contention is incorrect and far wide of the mark. Before the bankruptcy petition, Security Benefit did not take any steps against the Debtor at all. All the supposed "affirmative steps" detailed by Security Benefit in its response were steps it took against WPH Properties – not the Debtor. The first and only time that Security Benefit made any written demand of the Debtor for payment of the monthly lease amounts was by letter, weeks after the Debtor's bankruptcy petition was filed, on the evening before the DIP Motion was scheduled to be heard by the Court. Based on the above, the authority relied on by Security Benefit is easily distinguished.

Under the guise of characterizing its dispute with WPH Properties as a dispute about "adequate protection," Security Benefit, in reality, is improperly attempting to enlist this Court in resolving state law contract disputes between Security Benefit and WPH Properties, two non-debtor parties. There is only one issue currently before the Court: whether Security Benefit has

3

established that it is entitled to adequate protection payments from the Debtor. Because Security Benefit has not made any legal or factual showing that it is entitled to adequate protection, there is no basis in the record to require the Debtor to make adequate protection payments to Security Benefit.

For all the reasons set forth herein, Security Benefit's claim for adequate protection should be rejected.

## ARGUMENT

I. **WITHOUT AN ENFORCEABLE LIEN, SECURITY BENEFIT IS NOT ENTITLED TO CLAIM ADEQUATE PROTECTION AND, IN ANY EVENT, SECURITY BENEFIT HAS FAILED TO IDENTIFY OR QUANTIFY ANY DIMINUTION IN THE VALUE OF ITS PURPORTED COLLATERAL**

1.  Security Benefit contends that it is entitled to adequate protection in connection with the DIP Loan because the loan involves a pledge of Security Benefit's putative security interest in Debtor's Accounts Receivable and Fixtures. However, Security Benefit has failed to meet the requisite showing that it has an enforceable lien against the Debtor's Accounts Receivable and Fixtures and, in any event, has failed to identify or quantify any purported diminution in the value of its collateral.

2.  *First*, the Debtor contests whether Security Benefit has an enforceable lien that warrants adequate protection. As the Debtor argued in the DIP Motion, because Security Benefit does not have "control of the Debtor's bank accounts under a deposit control agreement or otherwise," it does not "have an enforceable lien on the Debtor's cash." Bankr. Dkt. 11 (DIP Motion ¶ 29). *See In re Liddle*, 608 B.R. 356, 360–61 (Bankr. S.D.N.Y. 2019), *aff'd*, 613 B.R. 186 (S.D.N.Y. 2020) ("Under the N.Y. U.C.C., a party may perfect a security interest in money by taking possession of it"); *see also Citigroup Glob. Mkts., Inc. v. KLCC Invs., LLC*, No. 06 CIV. 5466 (LAP), 2015 WL 5853916, at *13 (S.D.N.Y. Sept. 28, 2015), *aff'd,* 706 F. App'x

4

38 (2d Cir. 2017) (citing N.Y. U.C.C. §§ 9–312(a), 9–314(a) and holding that "[b]ecause [the creditor] neither took control of the securities nor filed a UCC statement listing the specific assets in the Smith Barney account or the account that in fact contained those assets, there is no genuine dispute that [the creditor] never perfected a security interest in the Smith Barney account"); *Goldberg & Connolly v. N.Y. Cmty. Bancorp, Inc.*, 565 F.3d 66, 71 (2d Cir. 2009) ("Pursuant to New York's Uniform Commercial Code § 9–312(b)(3), a security interest in money can only be perfected by taking possession, or 'control,' of the money."). Security Benefit offers no response to this argument; and accordingly, has failed to establish the priority or extent of its lien against the Debtor's Accounts Receivable and Fixtures.

3.  *Second*, as the Debtor argued in the DIP Motion, even if Security Benefit has an enforceable lien on the Debtor's Accounts Receivable and Fixtures, the Security Agreement specifically "contemplate[s] carve outs from such security interests in favor of an accounts receivable lender to the Debtor." Bankr. Dkt. 11 (DIP Motion ¶ 29); *see also* Bankr. Dkt. 58 Ex. D (Security Agreement § 10.25) ("Operator may, with the prior written approval of Agent, obtain a working capital loan…"). The purpose of adequate protection is to "provide the pre-petition secured creditor with the same level of protection it would have had if there had not been post-petition superpriority financing." *In re Mosello*, 195 B.R. 277, 288 (Bankr. S.D.N.Y. 1996) (citing *In re Swedeland Dev. Grp., Inc.,* 16 F.3d 552, 564 (3d Cir.1994) (en banc)); *see also* Bankr. Dkt. 72 (Security Benefit's Response ¶ 43). Thus, the carve out in the Security Agreement contemplated the possibility of a working capital loan that would impact Security Benefit's collateral under the Security Agreement. Accordingly, the DIP Loan is consistent with Security Benefit's pre-petition bargain and does not warrant the provision of adequate protection.

5

4. *Third*, Security Benefit fails to make any showing at all as to the alleged value of its collateral interest in the Debtor's property under the Security Agreement and whether the value of that collateral is likely to decrease during the pendency of the bankruptcy proceeding. The evidence in the record about the Debtor's business is that the Debtor is "financially and operationally sound," with annual gross revenue of over $10 million. Bankr. Dkt. 3 (Jozefovic Decl. ¶¶ 7, 26).

5. *Fourth*, Security Benefit's assertion that the monthly amount of rent owed to the Landlord under the Lease—$506,096.50—is somehow the appropriate amount of adequate protection on account of its purported loss in collateral value under the Security Agreement is arbitrary and not supported by anything in the record. Security Benefit does not even attempt to justify this amount on adequate protection grounds. According to the Proposed Final DIP Order, the adequate protection lien is supposed to be "[t]o the extent of, and in an amount equal to, the aggregate diminution in value of Security Benefit's interests in the [Debtor's Accounts Receivable and Fixtures]" on account of "the use, sale or lease by the Debtor of the Collateral Property, the granting of the DIP Liens, and the subordination of Security Benefit's liens to the DIP Liens and to the Carve-Out." Bankr. Dkt. 57 (Proposed Final DIP Order ¶ 14). But the Lease payment amount is untethered to any purported diminution in Security Benefit's collateral interest in the Debtor's property.

6. *Finally*, on its face, a monthly cash payment to Security Benefit in excess of $500,000 to compensate it for the purported diminution in value of collateral that the Debtor pledged as security for a $4 million DIP Loan is unjustifiable and excessive. Glaringly absent from Security Benefit's Response is any effort to measure any loss in value to its collateral on

6

account of the DIP Loan; nor is there any argument as to why a monthly payment of $500,000 from the Debtor is justified.

## II. WPH PROPERTIES, AS THE DEBTOR'S LANDLORD, IS ENTITLED TO ADEQUATE PROTECTION

7. Security Benefit does not contest that WPH Properties, as Landlord and owner of the Facility, is entitled to adequate protection as a matter of bankruptcy law.

8. As set forth in WPH Properties' Objection, the Landlord's right under Section 365(d)(3) of the Bankruptcy Code to timely payment of post-petition rent under the Lease is "an interest in property entitled to adequate protection." *In re P.J. Clarke's Rest. Corp.*, 265 B.R. 392, 404 (Bankr. S.D.N.Y. 2001).

9. Notwithstanding the Landlord's unrefuted right to adequate protection, pursuant to the Proposed Final DIP Order, the Debtor would cease paying any rent at all to the Landlord immediately and for the indefinite future. And yet, during the pendency of this bankruptcy, the Debtor seeks to continue operating its business at the Landlord's Facility having paid no security deposit to the Landlord, and with no intention of compensating the Landlord for its continued use of the Facility. Indeed, the Debtor's entire business and proposed plan to emerge from bankruptcy rests on its continued ability to operate its business at the Facility.

10. The Debtor argued in its DIP Motion that adequate protection to WPH Properties was not required because of "its intent and commitment . . . to continue to remain current in its obligations under its Lease." Bankr. Dkt. 11 (DIP Motion ¶ 34). Accordingly, consistent with the Debtor's representation in the DIP Motion and WPH Properties' entitlement to adequate protection under the Bankruptcy Code, the Debtor should be required to satisfy its monthly payment obligations to WPH Properties under the Lease.

### III.    IT IS THE LANDLORD—NOT SECURITY BENEFIT—THAT WILL SUFFER HARM ABSENT ADEQUATE PROTECTION

11.    In its Response, Security Benefit does not provide any genuine basis to contest the valuation of the Facility submitted by the Debtor, Bankr. Dkt. 3 (Jozefovic Decl. Ex. 6), which provides clear evidence that Security Benefit's loan to WPH Properties is substantially oversecured.

12.    Security Benefit mentions that the appraisal was conducted in April 2020, but states nothing about whether (or how) the real estate market for similar facilities has changed since April 2020.  Bankr. Dkt. 72 (Security Benefit's Response ¶ 47).  Security Benefit offers no competing valuation of the Facility or any indication as to whether, due to the passage of time, the valuation should be increased or decreased.

13.    Security Benefit also proclaims that its 35%-78% equity cushion "may be illusory" because the appraisal is based on continuous operation of the Facility as a nursing home and that if the Debtor loses the ability to operate the Facility, it "threatens to cause significant operational, financial and regulatory issues."  Bankr. Dkt. 72 (Security Benefit's Response ¶ 47) (emphasis added).   But, in reality, Security Benefit does not face such a risk.  The Facility will remain in continuous use as a skilled nursing facility, regardless of whether or not the Debtor is the operator of the Facility.

14.    Because the Debtor is currently the only operator licensed by the New York State Department of Health (the "DOH") to operate the Facility, the Debtor will continue to operate the Facility until the transition to a new operator is approved by the DOH, even if this Court were ultimately to determine in the pending adversary proceeding that the Lease was properly terminated in January 2020.  The DOH supervises the transition process to ensure that there is continuity of patient care and a seamless transition to a new operator.  *See generally* NY Public

8

Health Law § 2801-a (4)(a) ("Any change in the person who is the operator of a hospital [defined in the statute to include nursing homes] shall be approved by the public health and health planning council in accordance with [the public health statute].").

15.    Further, WPH Properties is ready, willing, and able to install a new operator at the Facility and has the financial commitment necessary to execute on its plan, including payment in full to Security Benefit. *See* Landa Decl. ¶¶ 3-7. WPH Properties had begun to prepare an application to the DOH to transition operation of the Facility to a new operator, but that process was stalled due to the filing of the Debtor's bankruptcy petition. *Id.* ¶ 4.

16.    In addition, the United States Trustee has appointed a patient care ombudsman who, in accordance with Section 333(b) of the Bankruptcy Code, is required to "monitor the quality of patient care provided to patients of the debtor" and file a motion or written report with the court if "the quality of patient care provided to patients of the debtor is declining significantly." Bankr. Dkt. 46.

17.    Accordingly, in all conceivable scenarios, the Facility will remain in uninterrupted use as a skilled nursing facility under the supervision of the DOH and the patient care ombudsman. There is thus no basis for Security Benefit's unsupported claim that its substantial equity cushion could be "illusory." Moreover, throughout this bankruptcy proceeding, assuming that WPH Properties continues to receive the monthly lease payment, Security Benefit will continue to receive $240,000 per month from WPH Properties under the Loan Agreement. This monthly payment further enhances Security Benefit's already substantial equity cushion. In short, unlike WPH Properties, Security Benefit does not face any genuine risk of not being made whole.

9

18.     In contrast to Security Benefit's oversecured Loan to WPH Properties, it is WPH Properties that has been, and continues to be, financially harmed by the Debtor's actions. The Debtor failed to provide the Landlord with a $5.3 million security deposit that would have provided protection to WPH Properties in the event of a Lease default. The Debtor has also refused to accept the Landlord's termination of the Lease, resulting in costly litigation between the parties that is now pending before this Court.

19.     The Debtor owes WPH Properties more than $110 million due to its numerous Lease defaults, and the only protection to WPH Properties is its residual equity interest in the Facility after the Loan to Security Benefit is paid in full. Based on the appraisal submitted by the Debtor, WPH Properties' residual equity in the Facility is valued at between $14.8 million and $32.9 million. This is inadequate to protect WPH Properties, even assuming that the Debtor continues to pay rent under the Lease during the pendency of this bankruptcy proceeding.

### IV.    THE AGREEMENTS BETWEEN NON-DEBTORS SECURITY BENEFIT AND WPH PROPERTIES ARE IRRELEVANT TO THE ISSUE OF ADEQUATE PROTECTION

20.     Security Benefit spends most of its Response arguing about its contractual rights vis-à-vis WPH Properties and does not even turn to the issue of adequate protection until page 17. Bankr. Dkt. 72 (Security Benefit's Response ¶¶ 21-39). But contract disputes between two non-debtors are irrelevant to the question of whether Security Benefit is entitled to adequate protection payments from the Debtor on account of the Debtor's proposed DIP Loan. One issue simply has nothing to do with the other.

21.     Security Benefit is improperly attempting to use the Debtor's bankruptcy proceeding to short-circuit required steps to enforcement of contract rights against WPH Properties under the Assignment of Leases and Rents—a contract to which the Debtor is not a party.

22.     Whether or not Security Benefit's interest in rents under the Lease is "self-executing" or requires Security Benefit to take affirmative steps against WPH Properties, and whether Security Benefit has taken sufficient affirmative steps in furtherance of its interest are not issues that should be determined by this Court in connection with the Debtor's application for DIP Financing.  *See* Bankr. Dkt. 72 (Security Benefit's Response ¶¶ 29-39).  Those issues are all as between Security Benefit and WPH Properties – not the Debtor.

23.     Moreover, contrary to Security Benefit's assertion, the majority view under New York law is that Security Benefit must have taken affirmative steps to enforce its rights under the Assignment of Leases and Rents.  *See* Bankr. Dkt. 72 (Security Benefit's Response ¶¶ 29-32). As Security Benefit's own cited authority makes clear, "the majority of New York state cases are of the view that an absolute assignment [of rents] is not permitted, regardless of the language in the agreement."  *SOHO 25 Retail, LLC v. Bank of America, N.A. (In re SOHO 25 Retail, LLC)*, Adv. No. 11-1286 (SHL), 2011 WL 1333084, at *6 (Bankr. S.D.N.Y. Mar. 31, 2011).

24.     Ultimately, this Court, in *In re SOHO 25 Retail, LLC*, did not have to resolve the "murky legal question" of whether the assignment was self-executing because of the extensive affirmative steps that the lender had taken in that action *against the debtor* and *before* the debtor filed for bankruptcy.  *Id.* at *7.  The lender's affirmative steps included (but were not limited to) commencing a foreclosure complaint against the debtor that included a request for the appointment of a receiver and writing a joint letter with the debtor prior to the commencement of the bankruptcy requesting that tenants pay rent directly to the lender.  Here, Security Benefit did not take any steps at all against the Debtor before the bankruptcy petition was filed.

25.     Security Benefit's reliance on *In re SOHO 25 Retail, LLC*, is entirely misplaced. As an initial matter, *In re SOHO 25 Retail, LLC,* involved real property *owned by the debtor* and

the issue before the court was whether rents generated by the *debtor-owned real property* were property of the estate because of an assignment of rents executed between the *debtor* and its lender. In *In re SOHO 25 Retail, LLC*, *prior to the commencement of the bankruptcy*, the lender and the debtor had jointly instructed tenants of the real property to pay rent directly to the lender pursuant to the assignment of rents, and the lender filed a foreclosure action, which included a demand for the appointment of a rent receiver, in which the debtor failed to answer or appear.

26. Here, Security Benefit concedes that it did not make a pre-bankruptcy demand of any kind to the Debtor that the Debtor pay the rents due under the Lease directly to Security Benefit. Instead, Security Benefit made its first and only demand of the Debtor in a letter sent by email on the evening before the scheduled DIP Hearing. Security Benefit has never sought appointment of a rent receiver or taken any similar step.

27. Accordingly, the questions arising under the Assignment of Leases and Rents are matters to be resolved as between WPH Properties and Security Benefit. The Assignment of Leases and Rents certainly does not support an argument for adequate protection payments to be made from the Debtor to Security Benefit. Security Benefit concedes that it took no affirmative steps prior to the bankruptcy against the Debtor in furtherance of its claim to the rents payable under the Lease, and Security Benefit's eleventh-hour post-petition effort to demand that the Debtor pay the rent directly to Security Benefit was ineffective and violated the automatic stay.

28. Thus, Security Benefit's contractual dispute regarding the "murky legal question" of whether Security Benefit has a right to collect rents directly from the Debtor is irrelevant to the DIP Motion and is not properly before this Court.

## CONCLUSION

29.  For the foregoing reasons, WPH Properties requests that the Court (i) deny adequate protection payments to Security Benefit; (ii) direct that all monthly Lease payments continue to be timely paid to WPH Properties under the terms of the Lease; and (iii) grant such other and further relief as the Court deems just and proper.

Dated: December 20, 2021
New York, New York

Respectfully submitted,

BINDER & SCHWARTZ LLP

/s/ Eric B. Fisher
Eric B. Fisher
Lindsay A. Bush
366 Madison Avenue, 6th Floor
New York, NY 10017
Tel.: (212) 510-7272
Email: efisher@binderschwartz.com
Email: lbush@binderschwartz.com

-and-

DELBELLO DONNELLAN WEINGARTEN WISE & WIEDERKEHR, LLP
Alfred E. Donnellan
One North Lexington Avenue, 11th Floor
White Plains, New York 10601
Tel.: (914) 681-0200
Email: aed@ddw-law.com

ABRAMS, FENSTERMAN, FENSTERMAN, EISMAN, FORMATO, FERRARA, WOLF & CARONE, LLP
Robert A. Spolzino
81 Main Street, Suite 306
White Plains, New York 10601
Tel.: (914) 607-7010
Email: RSpolzino@Abramslaw.com

*Counsel for White Plains Healthcare Properties I, LLC*