**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
In re                                                          :
                                                               :            Chapter 11
HBL SNF, LLC, d/b/a EPIC REHABILITATION      :
AND NURSING AT WHITE PLAINS,[1]                :
                                                               :            Case No. 21-22623 (SHL)
                          Debtor.                      :
-------------------------------------------------------------------x

### FINAL ORDER (I) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING AND GRANT SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS WITH RESPECT TO THE DIP COLLATERAL; (II) TO THE EXTENT NECESSARY, AUTHORIZING THE DEBTOR'S USE OF CASH COLLATERAL; (III) GRANTING ADEQUATE PROTECTION TO SECURITY BENEFIT CORPORATION; AND (IV) MODIFYING THE AUTOMATIC STAY

This matter having come before the Court upon the motion (the "DIP Motion")[2] of the above-captioned debtor (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), pursuant to sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014, and Local Rules 2002-1 and 4001-2, seeking entry of a final order (this "Final Order") granting *inter alia*:

   i.    authority, pursuant to sections 105, 363, 364(c) and 364(d)(1) of the Bankruptcy Code, for the Debtor to obtain senior secured post-petition financing in an aggregate principal amount of up to $4 million (the "DIP Facility"), pursuant to the Loan Documents (as defined below) and this Final Order;

   ii.   authority for the Debtor to enter into that certain Senior Secured Super-Priority Debtor-in-Possession Credit Agreement, among the Debtor, as Borrower, and CNH Finance Fund I, L.P. (the

---

[1] The Debtor's principal office is located at 120 Church Street, White Plains, New York 10601. The last four digits of its taxpayer identification number are 6045.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the DIP Motion or the DIP Term Sheet (as defined below), as applicable.

"DIP Lender"), in substantially the same form as attached to the First Interim Order (defined below) as Exhibit 1 (as amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof and pursuant to the Second Interim Order (defined below) and this Final Order, the "DIP Credit Agreement" and, together with the any ancillary, collateral or related documents and agreements, the "Loan Documents");

iii.     authority for the Debtor to use the DIP Facility and the proceeds thereof solely in accordance with the Budget attached hereto as Exhibit 1 (the "Budget") to (a) fund the working capital needs and certain administrative costs of the Debtor during the pendency of the Chapter 11 Case, (b) pay fees, costs and expenses of the DIP Facility on the terms and conditions described in the Loan Documents, and (c) pay other amounts as specified in the Budget;

iv.     authority for the Debtor to grant valid, enforceable, non-avoidable, automatically and fully perfected security interests, liens and superpriority claims, including allowed superpriority administrative expense claims pursuant to sections 364(c)(1) and 507(b) of the Bankruptcy Code and liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and, solely as set forth herein, priming liens pursuant to section 364(d)(1) of the Bankruptcy Code, to the DIP Lender, in the DIP Collateral (as defined below) (and all proceeds thereof), including, without limitation, all property constituting "Cash Collateral," as defined in section 363(a) of the Bankruptcy Code, to secure all DIP Obligations, as more fully set forth in this Final Order, subject only to the Carve-Out (as defined below);

v.    authority for the Debtor to provide adequate protection to Security Benefit on account of any Diminution of Value (as defined below) in Security Benefit's Collateral Property (as such term is defined in the Security Agreement[3]), as more fully set forth in this Final Order;

vi.    authority for the Debtor to waive all rights to surcharge against the collateral of the DIP Lender and Security Benefit pursuant to section 506(c) of the Bankruptcy Code;

vii.    authority for the Debtor to waive the equitable doctrine of marshaling or any other similar doctrine with respect to any collateral of the DIP Lender and Security Benefit;

viii.    authority of the Debtor to waive the "equities of the case" exception under section 552(b) of the Bankruptcy Code as to Security Benefit;

ix.    modification of the automatic stay to the extent hereinafter set forth and waiving the 14-day stay provisions of Bankruptcy Rules 4001(a)(3) and 6004(h); and

x.    related relief; and

The Court having considered the First Day Declaration, the DIP Motion and the exhibits attached thereto, the evidence submitted or adduced and the arguments of counsel made at the first interim hearing held and concluded on November 3, 2021 and at the second interim hearing held and concluded on December 7, 2021 (collectively, the "Interim Hearings") and at the final hearing held on December 21, 2021 and continued on December 23, 2021 (the "Final Hearing"); and the relief sought in the DIP Motion having been granted on a first interim basis pursuant to the first interim order entered on November 8, 2021 [Dkt. No. 34] (the "First Interim Order") and on a second interim basis pursuant to the second interim order entered on December 13, 2021 [Dkt. No. 67] (the "Second Interim Order" and, together with the First Interim Order, the "Interim Orders");

---

[3] The term "Security Agreement" refers to that certain Security Agreement, Assignment of Leases and Rents and Fixture Filing (Operating Lease), dated as of August 18, 2017, by and among the Debtor, Security Benefit and WPHCP.

4893-6742-1187.2

and the Court having found that due and proper notice (the "Notice") of the DIP Motion, the Interim Hearings, and the Final Hearing has been served by the Debtor in accordance with Bankruptcy Rules 4001 and 9006 and Local Rule 2002-1; and it appearing that no other or further notice need be provided; and all objections, if any, to the relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the relief requested is necessary to avoid immediate and irreparable harm to the Debtor and its estate, and otherwise is fair and reasonable and in the best interests of the Debtor, its estates, and its creditors and equity holders, and is essential for the continued operation of the Debtor's business; and the after due deliberation and consideration, and good and sufficient cause appearing therefor; ***and with the relief granted by this Order being subject to the Court's oral bench ruling at the Final Hearing on December 23, 2021 as to whom the Debtor should paid its post-petition Lease Obligations (as defined below)***;

**THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW BASED UPON THE DIP MOTION, THE REPRESENTATIONS OF COUNSEL, AND THE PROFFERS MADE AND EVIDENCE SUBMITTED DURING THE INTERIM AND FINAL HEARINGS**:[4]

A.      *Petition Date*.  On November 1, 2021 (the "Petition Date"), the Debtor filed a voluntary petition under Subchapter V of Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Court") commencing this Chapter 11 Case.

B.      *Debtor in Possession*.  The Debtor is continuing in the management and operation of its business and properties as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  On November 2, 2021, the United States Trustee, pursuant to section 1183(a)

---

[4] To the extent any findings of fact constitute conclusions of law, they are adopted as such, and vice versa, pursuant to Fed. R. Bankr. P. 7052.

4893-6742-1187.2

of the Bankruptcy Code, appointed Heidi J. Sorvino, Esq. as the Subchapter V trustee ("Subchapter V Trustee").

C.      *Notice*.  Notice of the Interim Hearings, the Final Hearing, the entry of the Interim Orders, and the relief requested in the DIP Motion has been provided by the Debtor in compliance with Bankruptcy Rule 4001(c), whether by facsimile, email, overnight courier, or hand delivery, to certain parties in interest, including:  (i) counsel to the United States Trustee for Region 2, Attn: Andrea B. Schwartz, Esq.; (ii) the New York State Department of Health; (iii) counsel to the DIP Lender; (iv) New York State Office of the State Long Term Care Ombudsman, county of Westchester; (v) the duly appointed patient care ombudsman in this Chapter 11 Case; (vi) the United States Attorney's Office for the Southern District of New York; (vii) the Internal Revenue Service; (viii) the parties included on the Debtor's consolidated list of twenty (20) largest unsecured creditors; (ix) counsel to WPHCP; (x) counsel to Security Benefit; (xi) the Subchapter V Trustee; and (xii) any party that has requested notice pursuant to Bankruptcy Rule 2002.

D.      *Jurisdiction and Venue*.  This Court has core jurisdiction over the persons and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Chapter 11 Case and proceedings on the DIP Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

E.      *No Credit Available on More Favorable Terms*.  The Debtor is unable to procure financing in the form of unsecured credit allowable as an administrative expense under §§ 364(a), 364(b), or 503(b)(1) of the Bankruptcy Code or in exchange for the grant of a superpriority administrative expense, junior liens on encumbered property of the Debtor's estate, or liens on property of the Debtor's estate not subject to a lien pursuant to § 364(c)(1), 364(c)(2) or 364(c)(3) of the Bankruptcy Code. The Debtor has been unable to procure the necessary financing on terms more

favorable, taken as a whole, than the financing offered by the DIP Lender pursuant to the Loan Documents.

F.     *Best Interests of Estate*.  It is in the best interest of the Debtor's estate and creditors that the Debtor be allowed to enter into the DIP Facility to obtain postpetition secured financing from the DIP Lender under the terms and conditions set forth herein and in the Loan Documents, as such financing is necessary to avoid immediate and irreparable harm to the Debtor's estate and for the continued operation of the Debtor's business.

G.     *Good Faith*.  The extension of credit and financial accommodations under the Loan Documents are fair, reasonable, in good faith, negotiated at arm's length, reflect the Debtor's exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration and the DIP Lender is entitled to the protections of section 364(e) of the Bankruptcy Code.

H.     *Good Cause*. The relief requested in the DIP Motion and granted pursuant to this Final Order is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtor, its creditors and its estate, as its implementation will, among other things, provide the Debtor with the necessary liquidity to (1) minimize disruption to the Debtor's business and ongoing operation, (2) preserve and maximize the value of the Debtor's estate for the benefit of the Debtor's patients and creditors, and (3) avoid immediate and irreparable harm to the Debtor, its creditors, its business, its patients, its employees, and its assets.

I.     *Necessity of DIP Facility Terms*.  The terms of the Loan Documents and the liens and the various claims, superpriority claims, and other protections granted in this Final Order are necessary in order to induce (i) the DIP Lender to provide postpetition financing to the Debtor and (ii) Security Benefit to consent to the terms and conditions of this Final Order.

6

J.      _Need for Post-Petition Financing_.  The Debtor does not have sufficient available sources of working capital, including cash collateral, to continue to operate its business in the ordinary course of business without the financing requested in the DIP Motion.  The Debtor's ability to maintain business relationships with its vendors, suppliers and customers, to pay its employees, and to otherwise fund its operation is essential to the Debtor's continued viability as the Debtor seeks to maximize the value of the assets of its estate for the benefit of all creditors of the Debtor through a reorganization process.  The ability of the Debtor to obtain sufficient working capital and liquidity through the proposed post-petition financing arrangement with the DIP Lender as set forth in this Final Order and the Loan Documents, is vital to the preservation and maintenance of the going concern value of the Debtor.  Accordingly, the Debtor has an immediate need to obtain the postpetition financing in order to, among other things, permit the orderly continuation of the operation of its business, minimize the disruption of its business operation, and preserve and maximize the value of the assets of the Debtor's bankruptcy estate in order to maximize the recovery to all creditors of the estate.

K.      _Cash Collateral_.  Certain of the Debtor's cash and cash equivalents, including cash in its deposit accounts, security deposits, wherever located and whenever acquired, whether in the form of cash, profits, accounts receivable, now in the possession, custody or control of the Debtor or persons in privity with the Debtor, or on which the Debtor will obtain an interest during the pendency of this Chapter 11 Case, constitute cash collateral in which Security Benefit has asserted a first priority security interest in and lien on to the extent set forth in, among other things, the Security Agreement, in each case for purposes of and within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").  Additionally, WPHCP may assert a security interest in such Cash Collateral pursuant to that certain Amended and Restated Operating Lease, dated

November 19, 2015 (as amended or modified from time to time, the "Lease") by and between the Debtor, as tenant, and WPHCP, as landlord.

L.      *Need to Use Cash Collateral*.  The Debtor requires the use of Cash Collateral in order to, among other things, preserve, maintain and maximize the value of its assets and business.  The ability of the Debtor to maintain liquidity through the use of the Cash Collateral is vital to the Debtor and its efforts to maximize the value of its assets.  Accordingly, the Debtor has demonstrated good and sufficient cause for the relief granted herein.

M.      *Exclusive Jurisdiction*.  This Court has exclusive jurisdiction over the DIP Motion, the relief requested therein, and this Final Order.

N.      *Immediate Entry*.  Sufficient cause exists for immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(c)(2).

Based upon the foregoing,

**IT IS HEREBY ORDERED** that:

1.      Recitals Incorporated.  The above recitals and findings of this Final Order are incorporated herein by referenced as if fully set forth herein.

2.      Disposition.  The DIP Motion is granted to the extent set forth herein, effective as of the date hereof.  Any objections to the relief requested in the DIP Motion that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.

3.      DIP Facility Approval.  Subject to the terms and conditions contained in this Final Order, the Debtor is hereby expressly authorized, pursuant to section 364 of the Bankruptcy Code, to enter into and borrow under the DIP Facility, execute and deliver to the Lender the Loan Documents, and such additional documents, instruments, and agreements as may be reasonably

4893-6742-1187.2

required by the Lender to implement the terms, and effectuate the purposes, of this Final Order. The terms and conditions of the Loan Documents, as modified by the Interim Orders and this Final Order, are hereby approved and ratified, and the Debtor is authorized and directed to comply with and perform all of the terms and conditions contained therein.  The failure to reference or discuss any particular provision of the Loan Documents in this Final Order shall not affect the validity or enforceability of any such provision.  In the event of a conflict between this Final Order, on the one hand, and the Loan Documents, DIP Motion or Interim Orders, on the other hand, the terms and conditions of this Final Order shall govern.

4.      <u>DIP Lender Consent to Extension of Time for Entry of Final Order</u>. As set forth in Section 8.1(u) of the DIP Credit Agreement (Events of Default), and upon the consent of the DIP Lender, pursuant to the Second Interim Order, the date upon which an Event of Default shall occur if the Final Financing Order (as defined in the DIP Credit Agreement) has not yet been entered was extended from forty-five (45) days after the Petition Date, or December 16, 2021, to sixty (60) days after the Petition Date, or December 31, 2021, subject to such further extensions as may be agreed to by the DIP Lender without further order of the Court.

5.      <u>Authorization to Borrow</u>.  The Debtor hereby is authorized, pursuant to sections 364(c) and (d) of the Bankruptcy Code, to obtain post-petition financing from the DIP Lender through the DIP Facility, in accordance with the terms of this Final Order, the Loan Documents and the Budget in an aggregate principal amount of up to $4.0 million ($4,000,000).

6.      <u>Conditions Precedent</u>.   The obligations of the DIP Lender under the Loan Documents, including but not limited to the obligation(s) of the DIP Lender to provide any advance of funds, shall not become effective until the date on which each condition to effectiveness set forth in the Loan Documents has been satisfied or waived by the DIP Lender.

7.      <u>DIP Facility Obligations</u>.  The Loan Documents shall constitute and evidence the valid and binding effect of the Debtor's obligations under the DIP Facility which shall be legal, valid, and binding obligations of the Debtor and enforceable against the Debtor, its estate, any successors thereto. The Debtor and its successors shall be jointly and severally liable for repayment of any funds advanced pursuant to the Loan Documents, together with interest thereon, at the times and in the amounts set forth in the Loan Documents and all Obligations as defined and provided for in the DIP Credit Agreement (collectively, the "<u>DIP Obligations</u>").

8.      <u>Use of Proceeds</u>.  Except as otherwise provided herein or further order of this Court or approved by the DIP Lender, from and after the entry of this Final Order, the Debtor shall use advances of credit under the DIP Facility (the "<u>DIP Loans</u>") for working capital and other permitted purposes only in compliance with the Budget, subject only to the Permitted Variance of 10% as set forth in the Loan Documents, including for payment of the Carve Out amounts, including for the costs and fees of the patient care ombudsman duly appointed in this Chapter 11 Case pursuant to section 333(a) of the Bankruptcy Code.  The proceeds of the DIP Loans shall not be used to initiate or prosecute any claims, causes of action, adversary proceedings, contested matters or other litigation against the DIP Lender or any of its respective officers, directors, equity holders, employees or affiliates, or object, contest or raise in any proceeding any defense to the validity, perfection, priority, extent or enforceability of the Loan Documents, the  DIP Liens, the Security Agreement, the Prepetition Liens, the Adequate Protection Liens, the Adequate Protection Superpriority Claims or taking any action that would be injurious to the DIP Lender's interests.

9.      <u>Payment of DIP Fees and Expenses</u>.  The fees set forth in the Loan Documents are each hereby approved as set forth on the record at the Interim Hearings and Final Hearing, and the

Debtor is hereby authorized and directed to pay such fees if and to the extent due under the terms

set forth in the Loan Documents upon entry of and in accordance with this Final Order.

10.    <u>Use of Cash Collateral</u>.    The Debtor is authorized to use Cash Collateral in

accordance with and pursuant to the Interim Orders and this Final Order.  The Debtor's request in

the DIP Motion, and the authorization granted herein, to use Cash Collateral of WPHCP and

Security Benefit is without prejudice to any and all rights and defenses of the Debtor to challenge

the validity, extent, priority or nature of any security interest or document relating thereto (a

"<u>Challenge</u>"), all of which rights and defenses are expressly preserved, so long as any such

Challenge as against Security Benefit is made by commencement of an adversary proceeding on

or before January 30, 2022 (the "<u>Challenge Deadline</u>"), after which time all such Challenges as

against Security Benefit shall be deemed finally and conclusively barred.  Nothing contained in

this Final Order is intended to or shall be deemed to expand or modify the nature, extent or priority

of any pre-petition liens or security interests as they existed as of the Petition Date.

11.    <u>DIP Superpriority Claims</u>.  In accordance with section 364(c)(1) and 507(b) of the

Bankruptcy Code, the DIP Obligations shall constitute superpriority administrative expense claims

against the Debtor and its estate (the "<u>DIP Superpriority Claims</u>") (and without the need for the

DIP Lender to file a proof of claim or take any further action) with priority in payment over any

and all other obligations, liabilities, and indebtedness against the Debtor and its bankruptcy estate,

now existing or hereafter arising, of any kind whatsoever, including any and all administrative

expenses at any time existing or arising, of any kind or nature whatsoever, including, without

limitation, the kinds specified or ordered pursuant to any provision of the Bankruptcy Code,

including, but not limited to, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b),

546(c), 552(b), 726, 1113 and 1114 of the Bankruptcy Code or otherwise, including those resulting

4893-6742-1187.2

from the conversion of the Chapter 11 Case pursuant to section 1112 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, whether now in existence or hereafter incurred by the Debtor, and shall at all times be senior to the rights of the Debtor, the Debtor's estate and any successor trustee, estate representative, or any creditor, in the Chapter 11 Case or any subsequent cases or proceedings under the Bankruptcy Code; provided, however, that the DIP Superpriority Claims shall be subject to and subordinate to only the Carve-Out.  The DIP Superpriority Claims shall have recourse to and be payable from all prepetition and post-petition assets of the Debtor and the bankruptcy estate, including, but not limited to, the DIP Collateral (as defined below and in the DIP Credit Agreement).

12.     DIP Liens.  Effective as of the entry of the First Interim Order, as security for the DIP Obligations, the DIP Lender is granted first priority, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected security interests in and liens pursuant to section 364(d)(1) of the Bankruptcy Code (collectively, the "DIP Liens") on all assets of the Debtor, whether now owned by or owing to, or hereafter acquired by, or arising in favor of, the Debtor, and regardless of where held, before or after the Petition Date, as collateral security for the prompt and complete performance and payment when due (whether at the Maturity Date, by acceleration, or otherwise) of the DIP Obligations (as such collateral is further set forth and defined as "Collateral" in the Credit Agreement, the "DIP Collateral").  For the avoidance of doubt, the DIP Collateral shall include, without limitation and as further described in the DIP Credit Agreement, all of the Debtor's cash and cash equivalents, all deposit accounts and all funds, cash and other property deposited therein or credited thereto from time to time, all accounts and other receivables including government accounts and receivables, all contracts and contract rights, all

real property and leasehold interests, and all general intangibles, including all payment intangibles, all of Debtor's books and records relating to the DIP Collateral, and all products, offspring, profits, and proceeds of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, and any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtor from time to time with respect to any of the foregoing.

13.   <u>Priority of DIP Liens</u>.

(a)   To secure the DIP Obligations, immediately upon and effective as of entry of the First Interim Order, the DIP Lender has continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected DIP Liens in the DIP Collateral as follows, in each case subject to the Carve-Out:

(i)   pursuant to section 364(d)(1) of the Bankruptcy Code, valid, enforceable, non-avoidable automatically and fully perfected first priority senior priming liens on and security interests in, all DIP Collateral wherever located, which senior priming liens and security interests in favor of the DIP Lender shall be senior to any and all prepetition liens and for the avoidance of doubt, the security interests granted to WPHCP and Security Benefit, whether under the Lease, the Security Agreement or otherwise, and any other judgment creditor claims; and

(ii)   pursuant to section 364(c)(2) of the Bankruptcy Code, valid, binding, continuing, enforceable, non-avoidable automatically and fully perfected first priority liens on and security interests in all DIP Collateral that is not otherwise subject to a valid, perfected and non-avoidable security interest or lien as of the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code).

(b)   Except as expressly set forth herein, the DIP Liens and the DIP Superpriority Claims: (i) shall not be made junior to or *pari passu* with any lien, security interest or claim heretofore or hereinafter granted in the Chapter 11 Case, and shall be valid and enforceable against the Debtor, its estate, any trustee or any other estate representative appointed or elected in the Chapter 11 Case or any successor case and/or upon the dismissal of the Chapter

13

11 Case or any successor case.

14.    <u>Carve-Out</u>. As used in the Interim Orders, the term "<u>Carve-Out</u>" means, to the extent allowed by the Court, and as set forth in the Budget: (i) all invoiced and payable attorneys' fees under sections 330 and 331 of the Bankruptcy Code, (ii) all fees payable by the Debtor to the Subchapter V Trustee, (iii) all fees payable by the Debtor to a patient ombudsman appointed under section 333(a) of the Bankruptcy Code, and (iv) in the event of conversion of this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, $10,000 for the Chapter 7 trustee's fees and expenses.

15.    <u>Adequate Protection Liens</u>.  To the extent of, and in an amount equal to, the aggregate diminution in value of Security Benefit's interests in the Collateral Property, from and after the Petition Date, for any reason provided under the Bankruptcy Code, including without limitation, any such decrease resulting from the use, sale or lease by the Debtor of the Collateral Property, the granting of the DIP Liens, and the subordination of Security Benefit's liens to the DIP Liens and to the Carve-Out (collectively, the "<u>Diminution in Value</u>"), Security Benefit is hereby granted (effective and perfected as of this Final Order and without the necessity of execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), pursuant to sections 361, 362, 363(e) and 364(d) of the Bankruptcy Code, valid, perfected, replacement security interests in and liens upon all of the DIP Collateral (collectively, the "<u>Adequate Protection Liens</u>").  Unless otherwise agreed to in writing by Security Benefit, the Adequate Protection Liens of Security Benefit shall be junior and subject only to the DIP Liens and the Carve-Out.

16.    <u>Adequate Protection Superpriority Claims</u>.  To the extent of the aggregate Diminution in Value, Security Benefit is hereby granted an allowed superpriority administrative

expense claim (the "<u>Adequate Protection Superpriority Claim</u>") as provided for in section 507(b) of the Bankruptcy Code. Unless otherwise agreed to in writing by Security Benefit, the Adequate Protection Superpriority Claim shall be immediately junior and subject only to the DIP Superpriority Claims and the Carve-Out, and payable from and having recourse to all of the DIP Collateral.

17.     <u>Fiduciary Out</u>. Nothing contained in the Interim Orders or this Final Order or the DIP Credit Agreement or the Loan Documents shall prevent the Debtor or its officers from entering into discussions or negotiations concerning or any definitive documentation with respect to alternate financing to the DIP Facility, which the Debtor or its officers believe in good faith provides significantly more favorable terms to the Debtor and shall include, without limitation, any refinancing or exit financing facility.  Security Benefit reserves all rights with respect to such alternate financing.

18.     <u>Automatic Effectiveness of Liens</u>.  The DIP Liens and Adequate Protection Liens shall not be subject to a challenge and attached and became valid, perfected, binding, enforceable, non-avoidable and effective by operation of law as of the date of the entry of the First Interim Order without any further action by the Debtor, the DIP Lender and/or Security Benefit and without the necessity of execution by the Debtor, the DIP Lender and/or Security Benefit, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, filings with a governmental unit (including, without limitation, the U.S. Patent and Trademark Office or the Library of Congress), or other documents or the taking of any other actions; <u>provided</u>; <u>however</u>, that at the request of the DIP Lender or Security Benefit, the Debtor shall execute any and all documents as may be reasonably requested to evidence, perfect, and provide public notice of such liens.  All DIP Collateral shall be free and clear of other liens, claims

4893-6742-1187.2

and encumbrances, except as provided in the Loan Documents, the Interim Orders, this Final Order

and the Security Agreement. The DIP Lender is authorized to file or record such financing

statements, security agreements, pledge agreements, control agreements, mortgages, collateral

assignments, instruments, and documents in its discretion without seeking modification of the

automatic stay under section 362 of the Bankruptcy Code, in which event all such documents shall

be deemed to have been filed or recorded at the time and on the date of the entry of the First Interim

Order; provided; however, no such filing or recordation shall be necessary or required in order to

create or perfect the DIP Liens and Adequate Protection Liens. The DIP Lender or Security

Benefit may file a photocopy of this Final Order as a financing statement with any filing or

recording office or with any registry of deeds or similar office, in addition to, or in lieu of, such

financing statements, notices of liens or similar statements.

19.     Rent. During the pendency of the Chapter 11 Case, the Debtor shall remain current

on its monthly rent obligations totaling $506,097.00 and other sums due to WPHCP under the

Lease (collectively, the "Lease Obligations") by payment of such Lease Obligations to WPHCP.

20.     Budget. Use of funds advanced under the DIP Facility shall be used solely for the

purposes expressly provided in the Loan Documents, and only as set forth in the Budget, subject

to the Permitted Variance of 10%. The Debtor shall provide the DIP Lender and Security Benefit

with new Budgets, Budget variance reports, and financial reporting as required by the Loan

Documents. Each Budget and all expenses proposed to be incurred and the payments proposed to

be made by and through any such Budget shall be subject to the express written approval of the

DIP Lender.

21.     ~~Rent and Security Deposits.  During the pendency of the Chapter 11 Case, the~~

~~Debtor shall remain current on its monthly rent obligations totaling $506,097.00 and other sums~~

~~due to WPHCP under the Lease (collectively, the "Lease Obligations").  The payment of all Lease~~

~~Obligations shall be to an account designated by Security Benefit in accordance with that certain~~

~~Assignment of Leases and Rents between WPHCP and Security Benefit, dated as of August 18,~~

~~2017 (the "Assignment of Leases and Rents"), which may include Debtor's counsel's escrow~~

~~account.  In addition, all funds held by the Debtor as security under the Lease, if any, shall be~~

~~immediately turned over to Security Benefit.~~

21.    <u>No Impairment</u>.  Nothing in this Final Order or the Loan Documents shall impair, alter, modify or be deemed a waiver of Security Benefit's rights, remedies, claims, interests, defenses and counterclaims under (i) the Construction Loan Agreement between Security Benefit and WPHCP, dated as of August 18, 2017, (ii) the Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing between WPHCP and Security Benefit, dated as of August 18, 2017, (iii) the Assignment of Leases and Rents; (iv) the Security Agreement; and (v) any and all agreements related to the foregoing.

22.    <u>Monitoring of Collateral</u>.  As additional adequate protection, Security Benefit and its advisors and representatives shall be given reasonable access to the Debtor's books, records, and facility for the purpose of monitoring the Debtor's business and its collateral.

23.    <u>Termination Event</u>. The occurrence of any of the following shall constitute a "Termination Event": (a) the occurrence of an Event of Default (as defined in section 8.1 of the DIP Credit Agreement, as modified by the Second Interim Order as set forth herein); or (b) the occurrence of the Maturity Date.

24.    <u>Remedies Upon Termination Event</u>.  Upon the occurrence of a Termination Event and following the giving of not less than five (5) calendar days' advance written notice (which may be by email) (the "<u>Notice Period</u>") by the DIP Lender to counsel to the Debtor, the U.S.

Trustee, Subchapter V Trustee and Security Benefit, the DIP Lender may exercise all default-related rights and remedies (as set forth in the DIP Credit Agreement and that exist in law or equity) against the DIP Collateral, without further order of the Court, and without restriction or restraint by any stay under sections 362 of the Bankruptcy Code or otherwise; provided; however, that during the Notice Period, the Debtor has the right to seek an order from this Court determining that the Termination Event has not occurred (the "Determination"); provided; however, that upon a Termination Event, the DIP Lender can ~~immediately~~ cease making Advances pending a Determination by the Court **_unless otherwise ordered by the Court_**.

25. <u>Limitation on Use of Proceeds</u>.  Neither the Advances (as defined in the DIP Credit Agreement) made to Debtor under the DIP Facility nor the Carve-Out shall be utilized (i) to attack the validity, priority or enforceability of any of the liens or security interests of the DIP Lender or Security Benefit (after the Challenge Deadline), (ii) to research, review, analyze or investigate with respect to or in connection with any litigation, claim, objection or cause of action of any kind or nature whatsoever against the DIP Lender or Security Benefit (after the Challenge Deadline), or (iii) to file, prosecute or otherwise pursue any litigation, claim, objection or cause of action of any kind or nature whatsoever against the DIP Lender or Security Benefit (after the Challenge Deadline).

26. <u>Modification of Stay</u>.  Subject to the terms set forth herein, the automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms, rights, benefits, privileges, remedies and provisions of this Final Order and the Loan Documents including without limitation, to permit the DIP Lender to exercise all rights and remedies provided for in the Loan Documents and take any and all actions provided therein, in each case, without further notice, application to, order of or hearing before this Court.

27.     <u>Protection Under Section 364(e) of the Bankruptcy Code</u>.   Based on the
representations of the Debtor and DIP Lender at the Interim Hearings and the Final Hearing, the
DIP Lender has acted in good faith in connection with this Final Order and its reliance on this
Final Order is in good faith.  The failure of this Final Order to become a Final order or the reversal
or modification on appeal of the authorizations under section 364 of the Bankruptcy Code
contained in this Final Order does not affect the validity of any DIP Obligation or DIP Liens, or
the validity and enforceability of the DIP Loan, whether or not the DIP Lender knew of the
pendency of the appeal, unless such authorization and incurrence of DIP Obligations and DIP Lien
and advance of the DIP Loan under 364 of the Bankruptcy Code in this Final Order, were stayed
pending appeal.

28.     <u>Government Account and Cash Management</u>. The Debtor and the DIP Lender are
authorized to establish or continue the segregated government account ("<u>Government Account</u>")
established in the name of the Debtor, subject to a deposit account instructions and service
agreement, or similar agreement, in favor of the DIP Lender and in form and substance satisfactory
to the DIP Lender, and if a new account, then at a depository that the U.S. Trustee has authorized
for cases filed in the Southern District of New York, for the deposit of all government accounts
receivable, including without limitation Medicare and Medicaid payments owing to the Debtor.
The Debtor and DIP Lender are authorized to establish or continue the segregated commercial and
private pay account ("<u>Non-Government Account</u>") established in the name of the Debtor, subject
to a blocked deposit account control agreement in favor of the DIP Lender and in form and
substance satisfactory to the DIP Lender, for the deposit of all commercial, private pay and other
non-governmental accounts receivables owing to the Debtor.  The Debtor and DIP Lender are
authorized to establish or continue the segregated operating accounting account established in the

19

name of the Debtor, subject to a springing deposit account control agreement in favor of the DIP

Lender and in form and substance satisfactory to the DIP Lender, which will be used to receive

advances under the DIP Facility and to pay the Debtor's accounts payable.

29.    <u>Fees and Expenses</u>.  The Debtor shall reimburse the DIP Lender for all costs and

expenses as set forth in section 13.7 of the DIP Credit Agreement without the need for any further

approval or order of the Court.   Each professional or party shall provide copies of applicable

invoices (the "<u>Invoiced Fees</u>") to counsel to the Debtor, Subchapter V Trustee and U.S. Trustee.[5]

Any objections raised by the Debtor, the U.S. Trustee or the Subchapter V Trustee challenging the

reasonableness of any portion of the Invoiced Fees (the "<u>Disputed Fees</u>") must be in writing and

state with particularity the grounds therefor and must be submitted to the applicable professional

or party within ten (10) days of receipt of the Invoiced Fees (the "<u>Review Period</u>").   If after the

Review Period an objection remains unresolved, such objection to the Disputed Fees will be

subject to resolution by the Court.   The Debtor shall promptly pay all undisputed portions of the

Invoiced Fees without the need for application to or further order of the Court.

30.    <u>Waivers of "Marshaling" and Bankruptcy Code Section 506(c)</u>.  In light of the DIP

Lender's agreement to subordinate its DIP Superiority Claims to the Carve-Out and to make

post-petition loan advances under the Loan Documents, without limiting the Carve-Out, the Debtor

---

[5] For the avoidance of doubt, the fees provided for herein must be reasonable. Although the U.S. Trustee fee guidelines do not specifically apply, the DIP Lender professionals shall submit time and expense detail entries to the U.S. Trustee, as well as any further information or back up documentation requested by the U.S. Trustee to determine the reasonableness of the invoiced amount. Invoices for such fees and expenses provided to any party other than the U.S. Trustee shall not be required to include any information subject to the attorney-client privilege, joint defense privilege, bank examiner privilege, or any information constituting attorney work product, and time and expense detail entries and other information provided solely to the U.S. Trustee shall be returned or destroyed after the U.S. Trustee has reviewed such material and any objections to the applicable fees and expenses have been resolved upon request of the applicable professional. Furthermore, the provision of invoices, time entries or other information pursuant to the terms hereof shall in no event constitute a waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine.

irrevocably waives and shall be prohibited from asserting (i) a surcharge on the DIP Collateral

under section 506(c) of the Bankruptcy Code, and/or (ii) the equitable doctrine of "marshaling" or

any other similar doctrine with respect to the DIP Collateral, and all proceeds thereof shall be

received and used in accordance with this Final Order.  Additionally, in light of Security Benefit's

consent to the terms and conditions of this Final Order, the Debtor irrevocably waives and shall be

prohibited from asserting (i) a surcharge on the Collateral Property under section 506(c) of the

Bankruptcy Code, and/or (ii) the equitable doctrine of "marshaling" or any other similar doctrine

with respect to the Collateral Property.

31.    <u>Equities of the Case</u>.  ***The Debtor agrees that in*** ~~In~~ no event shall ***it invoke*** the

"equities of the case" exception in section 552(b) of the Bankruptcy Code apply to Security Benefit

or the Collateral Property.

32.    <u>Preservation of Rights</u>.  If any or all of the provisions of this Final Order are, at any

time, modified, vacated or stayed, such stay, modification, or vacation shall not affect the validity,

extent, priority, and enforceability of any lien, priority, or other benefit conferred under this Final

Order prior to such stay, modification, or vacation.

33.    <u>Binding Effect</u>.  This Final Order shall be binding on all creditors and parties in

interest in the Chapter 11 Case, including, but not limited to, the Debtor and any successors thereto.

This Final Order shall be binding upon, and inure to the benefit of, any and all successors,

designees, transferees, endorsees and/or assignees of the DIP Lender and Security Benefit.  The

security interests and liens provided for in this Final Order shall be and remain valid and perfected,

and the claims of the DIP Lender and Security Benefit hereunder valid and enforceable in

accordance with the terms hereof, notwithstanding any discharge that the Debtor may receive

pursuant to section 1141 of the Bankruptcy Code, the conversion of the Chapter 11 Case to a case

21

under chapter 7 of the Bankruptcy Code, the dismissal of the Chapter 11 Case or any subsequent chapter 7 case or the release or transfer of any DIP Collateral from the bankruptcy estate.  No claim or cause of action of any kind or nature may be asserted against the DIP Lender in its capacity as lender under the DIP Facility, or related to the liens and claims hereunder granted to the DIP Lender under or in connection with the DIP Facility.  All waivers by the Debtor of any rights or notices that are expressly provided in the Loan Documents are hereby approved and are effective without further order of this Court.

34.    Modifications of Loan Documents.  The Debtor and the DIP Lender are hereby authorized, to implement, in accordance with the terms of the Loan Documents, any non-material modifications of the Loan Documents without further notice, motion or application to, order of or hearing before, this Court.  Any modifications to the Budget that are provided to the DIP Lender shall also be provided to the U.S. Trustee and Security Benefit.  In the event of any inconsistency between the Interim Orders, this Final Order and the DIP Credit Agreement, this Final Order shall control.

35.    Proofs of Claim.  Notwithstanding any order entered by the Court, neither the DIP Lender nor Security Benefit shall be required to file proofs of claim in the Chapter 11 Case for any claim allowed herein.

36.    No Competing Liens. Except as set forth herein, the Debtor shall not grant liens on, or security interests in, the DIP Collateral or Collateral Property to any other party, pursuant to section 364 of the Bankruptcy Code or otherwise, without the prior written consent of the DIP Lender and Security Benefit, as applicable.

37.    Right to Credit Bid.  In connection with the sale or other disposition of all or any portion of the Debtor's assets, whether under Bankruptcy Code section 363, 1129 or otherwise,

the DIP Lender shall be entitled to credit bid up to the full amount of DIP Obligations then due and owing to the DIP Lender by Debtor, consistent with applicable law including Bankruptcy Code section 363(k).

38.    <u>Further Relief</u>.  Nothing in this Final Order shall preclude the DIP Lender or Security Benefit from seeking any other relief that it may deem appropriate, including relief from the automatic stay.

39.    <u>No Control</u>. Nothing in this Final Order shall cause the DIP Lender to be deemed to be in control of the operations of the Debtor, or to be acting as a "responsible person," "managing agent," or "owner or operator" (as such terms or any similar terms are used in any Federal or state statute) with respect to the operation or management of the Debtor, notwithstanding its consent to this Final Order, its approval of the Budget or involvement in the Budget process, or its extension of financial accommodations of any type, kind, or nature under this Final Order and the Loan Documents.

40.    <u>No Third-Party Beneficiaries</u>. Unless expressly provided herein or in the Loan Documents, no rights are created hereunder or by the Loan Documents for the benefit of any third party, any creditor, or any direct, indirect or incidental beneficiary.

41.    <u>Immediate Effect of Order</u>.  The terms and conditions of this Final Order shall be effective and immediately enforceable upon its entry by the Clerk of the Court notwithstanding any potential application of Bankruptcy Rule 6004(h) or otherwise.  To the extent applicable, the notice requirements and/or stays imposed by Bankruptcy Rules 4001(a)(3), 6003(b), and 6004(a) are hereby waived for good and sufficient cause. The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the DIP Motion.

4893-6742-1187.2

42.    <u>Retention of Jurisdiction</u>.  This Court shall retain jurisdiction to decide all disputes arising under or related to this Final Order and the Loan Documents.


Dated:  January 4, 2022                    ***/s/ Sean H. Lane***_____
       New York, New York                    HONORABLE SEAN H. LANE
                                       UNITED STATES BANKRUPTCY JUDGE

4893-6742-1187.2