**Hearing Date**: January 27, 2022 at 2:00 p.m. (EST)
**Objection Deadline**: January 20, 2022 at 5:00 p.m. (EST)

Gregory M. Juell
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Email: gregory.juell@us.dlapiper.com

Rachel Nanes (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8500
Email: rachel.nanes@us.dlapiper.com

*Counsel to Security Benefit Corporation and
Garfield Park, LLC, as assignee and successor
to Security Benefit Life Insurance Company*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| HBL SNF, LLC, d/b/a EPIC REHABILITATION AND NURSING AT WHITE PLAINS, | Case No. 21-22623 (SHL) |
| Debtor. | |

**AGREED PROTECTIVE MOTION OF SECURITY BENEFIT CORPORATION
AND GARFIELD PARK, LLC FOR EITHER (I) A DETERMINATION
THAT THE AUTOMATIC STAY DOES NOT APPLY OR
(II) RELIEF FROM THE AUTOMATIC STAY**

Security Benefit Corporation, as agent under the Loan Documents (defined below), and

Garfield Park, LLC, as assignee and successor to Security Benefit Life Insurance Company under

the Loan Documents[1] (collectively, "Security Benefit"), by and through their undersigned counsel,

hereby submit this agreed protective motion (the "Motion") for either (i) a determination that the

exercise of their state law and contractual remedies against White Plains Healthcare Properties I,

LLC ("WPHP"), landlord to HBL SNF, LLC (the "Debtor"), including the commencement of a

foreclosure action, does not violate the automatic stay, or (ii) relief from the automatic stay, to the

---

[1]      On January 3, 2022, Security Benefit Life Insurance Company, as lender under the Loan Documents,
assigned its interests under the Loan Documents to Garfield Park, LLC, an affiliate of Security Benefit Life
Insurance Company.

extent necessary, to pursue such remedies against WPHP.  The Debtor has reviewed the Motion and consents to the relief sought herein. In support of the Motion, Security Benefit respectfully states as follows:

## PRELIMINARY STATEMENT[2]

As the Court is aware, WPHP defaulted on its obligations to Security Benefit under the Loan Documents by, among other things, failing to repay the Loan on August 1, 2020 (the "Maturity Date"),[3] nearly a year and a half ago.  As of January 1, 2022, the total amount due to Security Benefit under the Loan Documents, including unpaid interest and fees, totals in excess of $43 million.  As a result of such defaults, Security Benefit has the contractual right to, among other remedies, seek the appointment of a receiver and foreclose on the collateral pledged by WPHP as security for the Loan, including, but not limited to, the Property on which the Debtor operates it business.

Security Benefit recognizes that the Debtor's leasehold interest in the Property is subject to the protection of the automatic stay and the provisions of that certain prepetition Subordination, Non-Disturbance and Attornment Agreement ("SNDA"), dated as of August 1, 2017, among the Debtor, WPHP, and Security Benefit.  Accordingly, as discussed in greater detail herein, Security Benefit intends to pursue its remedies against non-debtor WPHP without impacting the Debtor or its leasehold interest in the Property.  Specifically, Security Benefit agrees that it will not name the Debtor as a party to nor will it seek to terminate the Operating Lease in its foreclosure action. Subject to these conditions, the Debtor has consented to the relief sought herein.

---

[2]    Capitalized terms not otherwise defined in the Preliminary Statement shall have the meanings ascribed to them in the Motion.

[3]    *See Response of Security Benefit Life Insurance Company and Security Benefit Corporation to Objection of White Plains Healthcare Properties I, LLC to Entry of the Proposed Final Order Authorizing the Debtor to Borrow Pursuant to a Post-Petition Senior Secured Financing Facility* [Docket No. 72] (the "DIP Response"), at ¶ 11.

Based upon the foregoing, Security Benefit seeks a determination by the Court that it is not barred from pursuing foreclosure and other remedies with respect to WPHP and the Property by the automatic stay provisions of section 362 of the Bankruptcy Code.  Alternatively, to the extent the Court determines that stay relief is necessary, Security Benefit respectfully submits that such relief is appropriate for the reasons discussed below.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.  This Motion is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief sought herein are 11 U.S.C. § 362(d)(1), rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 4001-1 of the Local Bankruptcy Rules for the Southern District of New York.

## BACKGROUND

**A.      Prepetition Agreements Among the Debtor, Security Benefit, and WPHP**

3.      In connection with the construction and operation of the skilled nursing facility (the "Facility") located at 120 Church Street in White Plains, New York (the "Property"), the Debtor, WPHP, and Security Benefit, respectively, entered into a series of agreements governing their rights and obligations.  A brief overview of those agreements follows.

**a.  The Development Agreement, Lease Agreement and SNDA**

4.      In or around November 2015, WPHP entered into certain agreements with the Debtor for the construction and financing of the Facility, including that certain Development

Agreement, dated as of November 19, 2015 between the Debtor, as operator/tenant, and WPHP, as developer.  *See* Lizer Decl.[4] at ¶ 9.

5.      Additionally, WPHP and the Debtor entered into that certain Operating Lease, dated as of November 19, 2015 (as amended, the "Operating Lease"), pursuant to which (i) WPHP agreed, in relevant part, to lease the Leased Premises (as defined in the Operating Lease) to the Debtor for a thirty (30) year term; and (ii) the Debtor agreed, in relevant part, to pay a monthly fixed rent in the amount of $506,096.50.  *See id.* ¶¶ 10-11.

6.      In connection with the Operating Lease, WPHP, the Debtor, and Security Benefit entered into the SNDA on August 1, 2017.  A copy of the SNDA is attached hereto as **Exhibit A**. The SNDA delineates the parties' rights and obligations with respect to the Lease and other Loan Documents.  *See* SNDA, at 2.

7.      In particular, under the SNDA, the parties agreed that in the event Security Benefit (or another purchaser) succeeds to WPHP's interest under the Operating Lease in a foreclosure sale, and the Debtor continues to comply with its obligations under the Operating Lease, the Debtor's leasehold interest would not be disturbed.  Specifically, the SNDA provides, in relevant part, as follows:

> Subject to the observance and performance by Lessee of all the terms, covenants and conditions of the Lease on the part of Lessee to be observed and performed, Agent or such other purchaser shall recognize the leasehold estate of Lessee under all of the terms, covenants, and conditions of the Lease for the remaining balance of the term (as the same may be extended in accordance with the provisions of the Lease) with the same force and effect as if Agent or such other purchaser were the lessor under the Lease, and the Lease shall remain in full force and effect and shall not be terminated, except in accordance with the terms of the Lease or this Agreement . . . .

SNDA, ¶ 3(b).

---

[4]      "Lizer Decl." refers to the *Declaration of Lizer Jozefovic Pursuant to Local Bankruptcy Rule 1007-2 in Support of the Chapter 11 Subchapter V Petition and First Day Motions* [Docket No. 3].

4

**b. The Loan Documents with Security Benefit**

8.      On August 18, 2017, Security Benefit and WPHP entered into that certain Construction Loan Agreement, dated as of August 18, 2017 (the "<u>Loan Agreement</u>"), pursuant to which Security Benefit agreed to loan up to $38,500,000 to WPHP (the "<u>Loan</u>") to fund the construction of the Facility on the Property.[5]   The Loan Agreement was duly recorded in the Westchester County Clerk's Office on August 25, 2017.   A true and correct copy of the Loan Agreement is annexed to the DIP Response as Exhibit A.

9.      To evidence its indebtedness to Security Benefit, WPHP executed a Promissory Note, dated August 18, 2017, in the sum of $38,500,000 (the "<u>Note</u>").

10.      To secure payment of the Loan and WPHP's performance of its obligations under Loan Agreement, WPHP entered into that certain *Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing*, dated as of August 18, 2017 (the "<u>Mortgage</u>"), pursuant to which WPHP mortgaged and pledged to Security Benefit all of its right, title and interest in, among other things, the Property and improvements, fixtures, and rents.   The Mortgage was duly recorded in the Westchester County Clerk's Office on August 31, 2017.   A true and correct copy of the Mortgage is annexed to the DIP Response as Exhibit B.

11.      To further secure WPHP's obligations under the Loan Agreement, WPHP entered into that certain *Assignment of Leases and Rents*, dated as of August 18, 2017, with Security Benefit (the "<u>ALR</u>"), as well as that certain *Security Agreement, Assignment of Leases and Rents, and Fixture Filing (Operating Lease)* (the "<u>Tenant Security Agreement</u>" and collectively with the Loan Agreement, Note, Mortgage, ALR and such other documents evidencing, securing or pertaining to the Loan, the "<u>Loan Documents</u>"), pursuant to which WPHP and the Debtor pledged

---

[5]      The Loan Agreement and other Loan Documents (defined below) cited herein are voluminous and were previously provided to the Court in connection with the DIP Response.  Security Benefit respectfully refers the Court to the DIP Response for complete copies of those documents and will provide additional copies upon request.

5

certain collateral to Security Benefit.  True and correct copies of the ALR and Tenant Security Agreement are annexed to the DIP Response as Exhibits C and D, respectively.

**B.      WPHP's Defaults under the Loan Documents**

12.      Under the Loan Documents, WPHP is required to, among other things: (i) make monthly payments of accrued and unpaid interest to Security Benefit on the first day of each calendar month; and (ii) pay the entire principal balance of the Loan and all accrued interest then unpaid on the Maturity Date, *i.e.*, August 1, 2020, to Security Benefit.  *See* Loan Agreement, § 2.12.

13.      To date, WPHP has repeatedly defaulted on its obligations to Security Benefit under the Loan Documents.  These defaults include, but are not limited to:[6]

   a.   Failing to pay the entire principal balance of the Loan and all accrued and unpaid interest on the Maturity Date;

   b.   Failing to timely pay accrued and unpaid interest on the first of the month, on numerous occasions;

   c.   Sending a notice of termination of the Operating Lease without the prior written consent of Security Benefit;

   d.   Failing to establish a Cash Management Account by no later than 60 days prior to the anticipated rent commencement date under the Operating Lease;

   e.   Failing to deposit, or cause to be deposited, all revenues generated by the Property into the Cash Management Account;

   f.   Failing to notify Security Benefit in writing of (i) any Defaults or potential Defaults under the Loan Agreement and other Documents and (ii) any occurrence or event that would reasonably be expected to result in a Material Adverse Effect; and

   g.   Failing to provide financial statements, compliance certificates and all other documents required to be provided to Security Benefit under the Loan Documents.

---

[6]      Capitalized terms that are not otherwise defined herein shall have the meanings ascribed to them in the Loan Documents.  The list of defaults is not intended to be exhaustive, nor should it be construed as s limitation, restriction or waiver, express or implied, of any of Security Benefit's rights, remedies, defenses, and counterclaims in connection with the Loan Documents, all of which are expressly reserved.

14.     Security Benefit sent default notices to WPHP on October 16, 2019, November 5, 2019, April 16, 2020, May 13, 2020, May 22, 2020, and December 3, 2021, and has consistently sent monthly invoices reflecting the total amount owed by WPHP to Security Benefit.

15.     On May 1, 2021, Security Benefit commenced a foreclosure action by filing a Verified Complaint (the "Foreclosure Complaint") against WPHP in New York State Supreme Court, Westchester County.  Security Benefit also filed a Notice of Pendency with the Westchester County Clerk.  Security Benefit's Foreclosure Complaint was voluntarily dismissed without prejudice due to the COVID-19-related moratorium on commercial foreclosures instituted in New York.  Security Benefit refiled the Foreclosure Complaint on September 1, 2021, when the moratorium lapsed, and again voluntarily dismissed the action without prejudice when the moratorium was reinstated.  The current moratorium is set to expire on January 15, 2022.

16.     As of January 1, 2022, the total amount due to Security Benefit under the Loan Documents, including unpaid interest and fees, totaled in excess of $43 million.

**C.      The Debtor's Chapter 11 Case**

17.     On November 1, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

18.     The Debtor remains in possession of its assets and continues to manage its business as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

19.     In various documents filed with the Court, WPHP has taken the position that the Debtor's Operating Lease was terminated prior to the Petition Date.[7]  The purported termination of the Operating Lease was the subject of extensive litigation between the Debtor and WPHP in

---

[7]     *See, e.g., Limited Objection and Reservation of Rights of White Plains Healthcare Properties I, LLC, to Debtor's Motion for Entry of a Final Order Authorizing the Debtor to Borrow Pursuant to a Post-Petition Senior Secured Financing Facility* [Docket No. 54], ¶ 22.

state court prior to the Petition Date and is now an issue before this Court.

## RELIEF REQUESTED

20.    By this Motion, Security Benefit respectfully seeks either: (i) a determination that the exercise of its state law and contractual remedies against WPHP, including the commencement of a foreclosure action, does not violate the automatic stay; or (ii) to the extent necessary, an order, substantially in the form annexed hereto as **Exhibit B**, granting Security Benefit relief from the automatic stay to exercise such remedies under the Loan Documents as to WPHP.

## BASIS FOR RELIEF

### I.    The Automatic Stay Does Not Apply to Actions Taken Against WPHP Because the Debtor's Leasehold Interest Will Not Be Affected.

21.    The automatic stay under section 362 of the Bankruptcy Code stays, among other things, "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the *debtor* that was or could have been commenced before the commencement of the case under this title . . ." 11 U.S.C. § 362(a)(1) (emphasis added).  The purpose of the stay is to provide the debtor with a breathing spell from creditors, and to prevent creditors from pursuing their own remedies against the debtor.  *In re Marine Pollution Services, Inc.*, 99 B.R. 210, 215 (Bankr. S.D.N.Y. 1989).

22.    Here, Security Benefit's foreclosure action would be commenced against WPHP, not the Debtor, so stay relief is not required.  *See In re Neuman*, 92 B.R. 598, 599 (Bankr. S.D.N.Y. 1988).  In *Neuman*, a mortgagee sought relief from the automatic stay prior to commencing a foreclosure action against the non-debtor landlord of health care facilities in which the debtor had a leasehold interest.  *Id.* at 598-99.  The court denied the motion because "no permission is required from this court in order for [the mortgagee] to be free to commence a foreclosure against [the landlord]."  *Id.* at 599.  The court further noted that a foreclosure action in which the bankruptcy trustee was not named as a party would not affect the estate and that no permission was required

in order to commence it. *Id.*; *see also In re Comcoach Corp.*, 698 F.2d 571, 574 (2d Cir. 1983) ("[T]he state foreclosure action, as presently constituted, is not stayed. Until the debtor is named as a party-defendant the action does not affect the bankruptcy estate.").

23.     Under New York law, a tenant is not required to be joined as a necessary party to a foreclosure action where the tenant is party to a subordination and non-disturbance agreement. *KVR Realties, Inc. v. Treasure Star, Inc.*, 445 N.E.2d 641, 641-42 (N.Y. 1983); *see also Polish Nat'l Alliance of Brooklyn*, 98 A.D.2d 400, 406 (2d Dep't 1983) ("The absence of a necessary party in a foreclosure action simply leaves the party's rights unaffected by the judgment of foreclosure and sale."); *QMB Holdings, LLC v. Escava Bros.*, 2006 WL 550521, at *4 (N.Y. Sup. Ct. Bronx Cnty. 2006) ("The only scenario . . . where a tenant is properly not joined as a necessary party in a mortgage foreclosure action is where a subordination and nondisturbance agreement between the mortgagor and the tenant effectively renders the tenant's right to possession under the lease superior to the mortgagor's rights under the mortgage.").

24.     As noted above, the Debtor, WPHP, and Security Benefit are parties to the SNDA. The SNDA provides that, as long as the Debtor performs all of its obligations under the Operating Lease, the Operating Lease shall remain in effect and shall not be terminated except in accordance with its terms or under the terms of the SNDA. *See* SNDA, ¶ 3(b). Additionally, under the SNDA, Security Benefit can only terminate the Debtor's interest upon the occurrence of certain events, including violations of the Operating Lease not cured within the applicable notice period, the advancement of funds due to the foregoing, or if the Debtor has an identity of interest with the lessor. *See* SNDA, ¶ 7(c). Accordingly, Security Benefit is not required to, and does not intend to, name the Debtor as a party or seek to terminate the Operating Lease in its foreclosure action.

25.     In sum, because the Debtor's leasehold interest would not be affected by the foreclosure, stay relief is not necessary.

## II.    To the Extent the Court Finds that the Automatic Stay Applies to Actions Taken by Security Benefit Against WPHP, Security Benefit Is Entitled to Relief from the Stay.

26.    Subject to not naming the Debtor as a party and not seeking to terminate the Operating Lease in its foreclosure action, Security Benefit submits that the automatic stay does not extend to the exercise of any of its remedies against WPHP, including the commencement of a foreclosure action.  However, even if the stay were to apply, relief from the stay should be granted to allow Security Benefit to exercise such remedies.

27.    Under section 362(d)(1) of the Bankruptcy Code, on request of a party in interest, a court can modify the automatic stay "for cause."  11 U.S.C. § 362(d)(1).  Section 362(d)(1) is applicable to the stay of a judicial proceeding against the debtor.  *In re Sonnax Industries, Inc*., 907 F.2d 1280, 1285 (2d Cir. 1990).  Although the decision as to whether to lift the stay is dependent on the facts of the particular case, "[a]ctions which are only remotely related to the case under title 11 or which involve the rights of third parties often will be permitted to proceed in another forum." *Id. (citing* 2 Collier in Bankruptcy ¶ 362.07(3) (15th ed. 1990)).  Once the movant makes a prima facie case of cause to lift the stay, the burden shifts to the debtor.  *In re Lindsay*, 2021 WL 278317, at *3 (Bankr. S.D.N.Y. Jan. 27, 2021).  Section 362(g) places the burden of proof on the party opposing relief from stay for all issues except the debtor's equity in the property. *Id.*  Ultimately, whether to lift the stay is left to the discretion of the Court.  *See Sonnax*, 907 F.2d at 1286.

28.    To determine whether to grant stay relief to allow litigation to proceed in another forum, courts in the Second Circuit consider the following factors:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties;

> (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*In re Mazzeo*, 167 F.3d at 143 (*citing Sonnax*, 907 F.2d at 1286).  Not every factor will be relevant in a given case, and courts need not assign equal weight to the relevant factors.  *Id.*

29.     Here, in addition to the Debtor consenting to the relief sought herein, all of the relevant factors weigh in favor of lifting the stay.

30.     With regard to the first factor, stay relief would result in a complete resolution of the issues with respect to Security Benefit's right to foreclose on the Property.  WPHP has repeatedly defaulted on its obligations to Security Benefit under the Loan Documents, and a foreclosure would allow Security Benefit to exercise its contractual rights and remedies as to WPHP under the Loan Documents.  *See Osuji v. Deutsche Bank, N.A.*, 589 B.R. 502, 511 (E.D.N.Y. 2018) (finding that lifting the stay to allow a foreclosure would allow a resolution of issues concerning the mortgaged property).

31.     As to the second factor, foreclosure proceedings against WPHP would not interfere with the Debtor's bankruptcy case.  Courts analyzing this factor often consider whether lifting the stay could invite similar actions from similarly situated creditors.  *In re Artisinal 2015, LLC*, 2017 WL 5125545, at *12 (Bankr. S.D.N.Y. 2017).  Here, there is no such concern because there are no similarly situated creditors that would or could seek similar relief.

32.     As to the fourth factor, the state court has the necessary expertise to handle the foreclosure action, as the action involves state law claims and the state court regularly hears such matters.  *See Osuji*, 589 B.R. at 511 (noting the state court's expertise to address foreclosure issues).

33.    As to the sixth factor, the action only involves third parties because the Debtor's leasehold interest would not be affected by the foreclosure in accordance with the SNDA. Additionally, the Property, which will be the subject of the foreclosure action, is not property of the Debtor's estate. *See In re Sonnax Industries*, 907 F.2d at 1286 (*citing* 2 Collier on Bankruptcy ¶ 362.07(3) (15th ed. 1990)) (noting that actions involving the rights of third parties will often be permitted to proceed in another forum).

34.    Regarding the seventh factor, litigation of the foreclosure in state court would not prejudice the Debtor's creditors.  As noted, due to the SNDA, there will be no impact on the Debtor's leasehold interest, and the Debtor will be able to continue to operate its business and pursue its reorganization efforts for the benefit of all of its creditors.

35.    Regarding the tenth factor, judicial economy and an economical resolution of the litigation also weigh in favor of lifting the stay.  The foreclosure action will involve only non-debtor parties and state law claims, so it is appropriately resolved in state court rather than this Court. *See In re Cicale*, 2007 WL 1893301, at *4 (Bankr. S.D.N.Y. June 29, 2007) (finding stay relief appropriate in part because resolution of the issues in state court could alleviate the need for further proceedings in bankruptcy court).

36.    As to the eleventh factor, the Debtor would not be involved in any trial preparation for the reasons stated above.  Further, foreclosure is a straightforward procedure that does not require significant trial preparation.  Accordingly, this factor weights in favor of lifting the stay. *See In re Cicale*, 2007 WL 1893301, at *4 (finding this factor weighing in favor of stay relief even though the proceeding had not commenced due to the straightforward nature of the foreclosure proceeding).

37.    The twelfth factor also weighs in favor of lifting the stay.  When considering the balance of harms, there is no harm to the Debtor in lifting the stay because it will not be named as

a defendant in the foreclosure action and its leasehold interest will not be impacted. By contrast, WPHP owes Security Benefit in excess of $43 million, with all sums having been due under the Loan Agreement for nearly a year and a half. The inability to exercise remedies against WPHP only causes further delay and harm to Security Benefit. *See Osuji*, 589 B.R. at 511 (finding the balance of harms weighing in favor of Deutsche Bank, as assignee of mortgage, in light of the debtor's failure to make mortgage payments and increasing costs to the bank).

38.    In sum, to the extent the Court finds that stay relief is necessary under these circumstances, the *Sonnax* factors weigh heavily in favor of granting such relief.

## NOTICE

39.    Notice of this Motion shall be provided to: (i) counsel to the Debtor; (ii) counsel to WPHP; (iii) the Office of the United States Trustee for Region 2; (iv) the subchapter V trustee; (v) the parties included on the Debtor's consolidated list of twenty (20) largest unsecured creditors; and (vi) any party that has requested notice under Bankruptcy Rule 2002.

## NO PRIOR REQUEST

40.    No previous application for the relief sought herein has been made to this or any other court.

## CONCLUSION

**WHEREFORE**, for the reasons stated above, Security Benefit respectfully requests that the Court (i) determine that the exercise of Security Benefit's remedies against WPHP, including the commencement of a foreclosure action, does not violate the automatic stay; or (ii) enter an order, substantially in the form annexed hereto as **Exhibit B**, granting Security Benefit relief from the automatic stay and such other and further relief as the Court may deem proper.

Dated:  January 12, 2022
        New York, New York

Respectfully submitted,

Gregory M. Juell
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4500
Email:  gregory.juell@dlapiper.com

- and -

*/s/ Rachel Nanes*
Rachel Nanes (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8566
Email:  rachel.nanes@us.dlapiper.com

*Counsel to Security Benefit Corporation and
Garfield Park, LLC, as assignee and successor
to Security Benefit Life Insurance Company*