**<u>EXHIBIT A</u>**

**SNDA**

RECORDING REQUESTED BY,
AND WHEN RECORDED RETURN TO:

Nyemaster Goode, P.C.
700 Walnut Street, Suite 1600
Des Moines, Iowa 50309
Attention:  James C. Wine

_____
(Space above this line for Recorder's Use)

**NOTICE:  THE SUBORDINATION PROVIDED FOR IN THIS AGREEMENT
RESULTS IN YOUR LEASEHOLD ESTATE BECOMING SUBJECT TO AND OF
LOWER PRIORITY THAN THE INTEREST CREATED BY SOME OTHER OR
LATER INSTRUMENT.**

## SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEEMENT

This AGREEMENT (this "**Agreement**"), is entered into as of this 1st day of August,
2017, by and between WHITE PLAINS HEALTHCARE PROPERTIES I, LLC, a limited
liability company organized and existing under the laws of Massachusetts ("**Lessor**"), as lessor
under the Lease hereinafter described, and HBL SNF, LLC, a limited liability company
organized and existing under the laws of New York ("**Lessee**"), lessee under the aforementioned
Lease, in favor of SECURITY BENEFIT CORPORATION, a corporation organized and
existing under the laws of Kansas (together with its successors and/or assigns, "**Agent**"), as agent
for the benefit of SECURITY BENEFIT LIFE INSURANCE COMPANY ("**Lender**"), the
owner and holder of the Security Instrument hereinafter described.

## WITNESSETH:

WHEREAS, Lessor has or will execute that certain Mortgage, Assignment of Leases and
Rents, Security Agreement and Fixture Filing, dated as of August 1, 2017 (the "**Security
Instrument**"), in favor of Agent and covering certain real property (the "**Land**") located in the
City of White Plains, County of Westchester, State of New York, with a legal description as set
forth in Exhibit A, attached hereto and, which the Security Instrument is being recorded
concurrently herewith; and

I

5976164

WHEREAS, Lessor and Lessee entered into that certain unrecorded lease dated November __19__, 2015, as it may thereafter be amended (the "Lease"), relating to the operation of a skilled nursing facility (the "Healthcare Facility") on the Land upon the terms and conditions set forth therein; and

WHEREAS, the parties hereto now desire to enter into this Agreement to establish certain rights and obligations with respect to their interests, and to provide for various contingencies as hereinafter set forth.

NOW, THEREFORE, in consideration for the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and of the mutual benefits to accrue to the parties hereto, it is hereby declared, understood and agreed that the Lease, all terms and conditions set forth in the Lease, the leasehold interests and estates created thereby, and the priorities, rights, privileges and powers of Lessee and Lessor thereunder shall be and the same are hereby, and with full knowledge and understanding of the effect thereof, unconditionally made subject and subordinate to the lien and charge of the Security Instrument, all terms and conditions contained therein, any renewals, extensions, modifications or replacements thereof, and the rights, privileges and powers of the trustee and Agent thereunder, and shall hereafter be junior and inferior to the lien and charge of the Security Instrument. The parties further agree as follows:

1.      It is expressly understood and agreed that this Agreement shall supersede, to the extent inconsistent herewith, the provisions of the Lease relating to the subordination of the Lease and the leasehold interests and estates created thereby to the lien or charge of the Security Instrument.

2.      Agent consents to the Lease.

3.      In the event Agent or any other purchaser at a foreclosure sale or sale under private power contained in the Security Instrument, or by acceptance of a deed in lieu of foreclosure, succeeds to the interest of Lessor under the Lease, or by any manner, it is agreed as follows:

(a)     Lessee shall be bound to Agent or such other purchaser under all of the terms, covenants and conditions of the Lease for the remaining balance of the term thereof, with the same force and effect as if Agent or such other purchaser were the lessor under the Lease, and Lessee does hereby agree to attorn to Agent or such other purchaser as its lessor, such attornment to be effective and self-operative without the execution of any further instruments on the part of any of the parties to this Agreement, immediately upon Agent or such other purchaser succeeding to the interest of Lessor under the Lease.

(b)     Subject to the observance and performance by Lessee of all the terms, covenants and conditions of the Lease on the part of Lessee to be observed and performed, Agent or such other purchaser shall recognize the leasehold estate of Lessee under all of the terms, covenants and conditions of the Lease for the remaining balance of the term (as the same may be extended in accordance with the provisions of the Lease) with the same force and effect as if Agent or

2

such other purchaser were the lessor under the Lease, and the Lease shall remain in full force and effect and shall not be terminated, except in accordance with the terms of the Lease or this Agreement; provided, however, that Agent or such other purchaser shall not be (i) liable for any act or omission of Lessor or any other prior lessor, (ii) obligated to cure any defaults of Lessor or any other prior lessor under the Lease which occurred prior to the time that Agent or such other purchaser succeeded to the interest of Lessor or any other prior lessor under the Lease, (iii) subject to any offsets or defenses which Lessee may be entitled to assert against Lessor or any other prior lessor, (iv) bound by any payment of rent or additional rent by Lessee to Lessor or any other prior lessor for more than one (1) month in advance, (v) bound by any amendment or modification of the Lease made without the written consent of Agent or such other purchaser, or (vi) liable or responsible for or with respect to the retention, application and/or return to Lessee of any security deposit paid to Lessor or any other prior landlord, whether or not still held by Lessor, unless and until Agent or such other purchaser has actually received for its own account as lessor the full amount of such security deposit. The non-disturbance provisions of this Section 3(b) are conditioned upon Lessor at all times having no identity of ownership interest with Lessee.

4.     Lessee hereby agrees that Agent shall have all rights of a "Mortgagee" under Section 13.2 of the Lease, and Lessee hereby agrees to give Agent copies of all notices as provided in Section 13.2 of the Lease.

5.     For the purposes of facilitating Agent's rights hereunder, Agent shall have, and for such purposes is hereby granted by Lessee and Lessor, the right to enter upon the Land for the purpose of effecting any such cure.

6.     If so directed by Lender, Lessee agrees, pursuant to and in accordance with the terms of Section 3.1 of the Lease, to pay Rent at such place as Lessor may designate in writing, including a cash management account designated by Agent or Lender.

7.     **Subordination of the Lease to the Security Instrument.**

(a)     The Lease and all estates, rights, options, liens and charges therein contained or created under the Lease are and shall be subject and subordinate to the lien or interest of the Security Instrument on Lessor's interest in the Land in favor of Agent, its successors and assigns insofar as it affects the real and personal property comprising the Property (as such term is defined in the Security Instrument and not otherwise owned or licensed by Lessee) or located thereon or therein, and to all renewals, modifications, consolidations, replacements and extensions of the Security Instrument, and to all advances made or to be made thereunder, to the full extent of amounts secured thereby and interests thereon.

(b)     The parties to the Lease agree to execute and deliver to Agent such other instrument or instruments as Agent, or its successors or assigns, shall reasonably request to effect and/or confirm the subordination of the Lease to the lien of the Security Instrument.

(c)     In the event Agent succeeds to the interest of Lessor under the Lease by reason of any foreclosure of the Security Instrument or by Agent's acceptance of a deed in lieu of

3

5976164

foreclosure, or by any other manner, it is agreed that Agent can terminate the Lease (A) for any violation of the Lease that is not cured within any applicable notice and cure period given in the Lease, (B) if Agent, as a result of the occurrence of the event described in the foregoing item (A) is required to advance funds for the operation of the improvements located on the Land, or (C) if the Lessor has an identity of interest with the Lessee, for any reason.

(d)     To the extent there is any inconsistency between the terms of this Agreement, and the Lease, the terms of this Agreement shall be controlling.

8.     Notices to be given to Agent hereunder shall be sent by U.S. certified mail, return receipt requested, postage prepaid, to Agent at the following address:

> Security Benefit Life Insurance Company
> 1 SW Security Benefit Pl
> Topeka, Kansas 66636
> Attention: Douglas Schneider
> Telephone: (785) 438-1642
> Fax: (785) 438-3080

With a copy to:

> Nyemaster Goode, P.C.
> 700 Walnut Street, Suite 1600
> Des Moines, Iowa 50309
> Attention:  James C. Wine
> Telephone: 515-283-3188
> Fax: 515-283-8045

or to such other address as Agent may provide Lessee in writing by notice sent to Lessee.

9.     The agreements contained herein shall run with the land and shall be binding upon and inure to the benefit of the respective heirs, administrators, executors, legal representatives, successors and assigns of the parties hereto.

10.     This Agreement may be executed in one or more counterparts, all of which when taken together shall constitute a single instrument.

11.     This Agreement and all rights and obligations under this Agreement, including matters of construction, validity and performance, shall be governed by the laws of the state in which the Land is located, without giving effect to conflicts of law principles.

12.     The following Exhibit is attached to this Agreement:

Exhibit A     Legal Description of the Land

**[SEE ATTACHED SIGNATURE PAGES]**

4

5976164

**IN WITNESS WHEREOF**, the undersigned have executed this instrument as of the day and year first above written.

**LESSOR:**

WHITE PLAINS HEALTHCARE PROPERTIES I, LLC, a Massachusetts limited liability company

By:

Name: _WILLIAM A. NICHOLSON_

Title: _A MANAGER_

**LESSEE:**

HBL SNF, LLC, a New York limited liability company

By:

Name: _Vicad Jozefovic_

Title:

**AGENT:**

SECURITY BENEFIT CORPORATION, a Kansas corporation

By:

Name:

Title:

5

5976164
2292041 v1/17057-6

**IN WITNESS WHEREOF**, the undersigned have executed this instrument as of the day and year first above written.

**LESSOR:**

WHITE PLAINS HEALTHCARE PROPERTIES I, LLC, a Massachusetts limited liability company

By:_____
      William A. Nicholson, a Manager

**LESSEE:**

HBL SNF, LLC, a New York limited liability company

By:_____
Name:_____
Title:_____

**AGENT:**

SECURITY BENEFIT CORPORATION, a Kansas corporation

By: _Joseph W. Wittrock_____
Name: _Joseph W. Wittrock_____
Title: _Vice President, Investments_____

## EXHIBIT A

Real property in the City of White Plains, County of Westchester, State of New York, described as follows:

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE CITY OF WHITE PLAINS, COUNTY OF WESTCHESTER AND STATE OF NEW YORK, SAID PARCEL BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE EASTERLY LINE OF CHURCH STREET WHERE THE SAME IS INTERSECTED BY THE SOUTHERLY LINE OF BARKER AVENUE;

RUNNING THENCE FROM SAID POINT NORTH 70° 40' 10" EAST A DISTANCE OF 173.57 FEET ALONG THE SOUTHERLY LINE OF BARKER AVENUE TO A POINT WHERE THE SAME IS INTERSECTED BY THE DIVISION LINE HEREIN DESCRIBED PARCEL ON THE WEST AND LANDS NOW OR FORMERLY OF KOEPPEL & MOHR EQUITIES ON THE EAST;

THENCE FROM SAID POINT AND ALONG SAID DIVISION LINE SOUTH 17° 59' 50" EAST A DISTANCE OF 200.51 FEET TO A POINT IN THE DIVISION LINE BETWEEN THE HEREIN DESCRIBED PARCEL ON THE NORTH AND LANDS NOW OR FORMERLY OF HAMILTON PLAZA COMPANY, INC. ON THE SOUTH;

THENCE FROM SAID POINT AND ALONG SAID LINE SOUTH 71° 01' 50" WEST A DISTANCE OF 173.24 FEET TO THE EASTERLY LINE OF CHURCH STREET;

THENCE FROM SAID POINT AND ALONG SAID LINE NORTH 18° 05' 04" WEST A DISTANCE OF 199.41 FEET TO THE POINT AND PLACE OF BEGINNING.

6

5976164