Hearing Date: January 27, 2022 at 3:00 p.m. (EST)

Gregory M. Juell
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Email: gregory.juell@us.dlapiper.com

Rachel Nanes (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8500
Email: rachel.nanes@us.dlapiper.com

*Counsel to Security Benefit Corporation and
Garfield Park, LLC, as assignee and successor
to Security Benefit Life Insurance Company*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| HBL SNF, LLC, d/b/a EPIC REHABILITATION AND NURSING AT WHITE PLAINS, | Case No. 21-22623 (SHL) |
| Debtor. | |

**REPLY IN SUPPORT OF AGREED PROTECTIVE MOTION OF
SECURITY BENEFIT CORPORATION AND GARFIELD PARK, LLC
FOR EITHER (I) A DETERMINATION THAT THE AUTOMATIC STAY
DOES NOT APPLY OR (II) RELIEF FROM THE AUTOMATIC STAY**

Security Benefit Corporation, as agent under the Loan Documents,[1] and Garfield Park, LLC, as assignee and successor to Security Benefit Life Insurance Company under the Loan Documents[2] (collectively, "Security Benefit"), by and through their undersigned counsel, hereby submit this reply (the "Reply") in support of the *Agreed Protective Motion of Security Benefit Corporation and Garfield Park, LLC for Either (I) A Determination that the Automatic Stay Does Not Apply or (II) Relief from the Automatic Stay* [Docket No. 92] (the "Motion") and in reply to

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Objection (as defined below).

[2] On December 27, 2021, Security Benefit Life Insurance Company, as lender under the Loan Documents, assigned its interests under the Loan Documents to one of its affiliates, Garfield Park, LLC.

the *Objection of White Plains Healthcare Properties I, LLC to Motion of Security Benefit Corporation and Garfield Park, LLC for Either (I) A Determination that the Automatic Stay Does Not Apply or (II) Relief from the Automatic Stay* [Docket No. 102] (the "Objection") filed by White Plains Healthcare Properties I, LLC ("WPHP"), the Debtor's landlord.  In support of this Reply, Security Benefit respectfully states as follows:

## PRELIMINARY STATEMENT

For over two years, WPHP has been in default with respect to its obligations to Security Benefit under the Loan Documents.  For most of this time, New York's moratorium on foreclosures and evictions forestalled Security Benefit's attempts to exercise its contractual rights and remedies against WPHP under state law.  With the moratorium now having expired, Security Benefit seeks confirmation that the automatic stay does not apply or, alternatively, relief from the stay out of an abundance of caution for the limited and narrow purpose of commencing foreclosure proceedings against WPHP only.  Indeed, as Security Benefit has made clear, these foreclosure proceedings will not name the Debtor, the contractual terms of the SNDA will be respected in the process, and, most importantly, the Debtor's right to exercise the Purchase Option will not be impacted by this non-debtor, state court dispute.

Yet, in a thinly veiled attempt to further evade its contractual obligations to Security Benefit and stall foreclosure proceedings, WPHP has filed the Objection under the guise of protecting the Debtor's rights under the very Operating Lease that WPHP has sought to terminate for over two years.  In fact, WPHP has represented to this Court that the "Lease was terminated before the bankruptcy case was commenced" and, as a result, "the Debtor no longer has an

2

exercisable purchase right under the Lease."[3] Furthermore, WPHP has made its intentions clear – "[i]f it were to be determined that the Lease was terminated, then the Debtor would ultimately be replaced as operator of the Facility . . . and the Debtor's $65 million Purchase Option would be extinguished."[4] Given these representations to the Court, WPHP's Objection is not about protecting the Debtor or its interests under the Operating Lease. Rather, the Objection is merely an attempt by WPHP to twist the automatic stay for its own benefit so that it can continue to disregard its obligations to Security Benefit under the Loan Documents while pursuing its litigation against the Debtor. WPHP, however, is not entitled to the protection of the automatic stay as it is not a debtor in these proceedings. Rather, given WPHP's myriad defaults under the Loan Documents and the recent expiration of the COVID-related moratorium on evictions and foreclosures, Security Benefit is entitled to pursue its contractual remedies because, as WPHP has stated, the dispute between WPHP and Security Benefit involves "state law contract disputes between . . . two non-debtor parties."[5]

Even if WPHP's Objection reflected a genuine effort to protect the Debtor's interest, the Objection should be overruled. As discussed in the Motion, Security Benefit does not intend to name the Debtor or seek to terminate the Operating Lease (or any of the Debtor's rights thereunder, including the Debtor's right to exercise the Purchase Option) in its foreclosure action. Therefore, the foreclosure process will have no impact on the Debtor's leasehold interest or its ability to exercise the Purchase Option. If the lease litigation is resolved in favor of the Debtor, the Debtor

---

[3] *Limited Objection and Reservation of Rights of White Plains Healthcare Properties I, LLC to Debtor's Motion for Entry of a Final Order Authorizing the Debtor to Borrow Pursuant to A Post-Petition Senior Secured Financing Facility* [Docket No. 54], ¶ 21.

[4] Objection, ¶ 18.

[5] *See Reply in Further Support of Objection of White Plains Healthcare Properties I, LLC to Entry of the Proposed Final Order Authorizing the Debtor to Borrow Pursuant to a Post-Petition Senior Secured Financing Facility* [Docket No. 75], at 3.

3

will be left with the choice to either assume or reject the Operating Lease.  If the Debtor assumes the Operating Lease, it will be able to exercise the Purchase Option at a price of $65,055,000, and any subsequent purchaser of the Property will take the Property subject to the SDNA and the Debtor's rights thereunder.  If the lease litigation is resolved in favor of WPHP, the Operating Lease, along with the Purchase Option thereunder, will be terminated.  In either scenario, however, it will be the underlying litigation between the Debtor and WPHP that will determine whether the Debtor is entitled to exercise the Purchase Option, not the foreclosure proceedings that Security Benefit intends to initiate against WPHP.  As such, there is no reason to further delay Security Benefit's exercise of its rights and remedies against WPHP, particularly where, as here, the relief sought in the Motion will have no impact on the Debtor, the Operating Lease, the Purchase Option or the lease litigation.

Based upon the foregoing, the issue before the Court is simple: whether a foreclosure action *against a non-debtor* that will *not name the Debtor* as a defendant (and thus cannot affect its leasehold interest) is subject to the automatic stay.  Under applicable law, the automatic stay does not stay such an action.  Accordingly, Security Benefit respectfully submits that the Objection should be overruled and the Motion granted.

**REPLY**

**I.    A Foreclosure Action Against WPHP Will Not Impact the Debtor's Leasehold Interest in the Property, Including the Purchase Option.**

1.    The Objection makes a strained argument that the automatic stay applies to a foreclosure action by Security Benefit against WPHP, a non-debtor, because a foreclosure could impact the Purchase Option contained in the very Operating Lease that WPHP contends has been terminated.  This argument is meritless, without support in the caselaw, and is merely WPHP's

4

latest attempt to further delay the enforcement of Security Benefit's rights and remedies under the Loan Documents and should, therefore, be rejected.

2.   As noted in the Motion, Security Benefit seeks to commence a foreclosure action against WPHP without naming the Debtor as a party to the action or seeking to terminate the Operating Lease. *See* Motion, ¶ 24. Therefore, there will be no impact on the Purchase Option or any other interest of the Debtor under the Operating Lease, which remain protected by the automatic stay during the Debtor's bankruptcy case.[6] *See Polish Nat'l Alliance of Brooklyn v. White Eagle Hall Co.*, 98 A.D.2d 400, 406 (2d Dep't 1983) ("The absence of a necessary party in a foreclosure action simply leaves the party's rights unaffected by the judgment of foreclosure and sale."). Based on these terms, the Debtor consented to the relief sought by Security Benefit in the Motion.

3.   As the Court is aware, absent a settlement between the Debtor and WPHP, the lease litigation is likely to result in one of two outcomes. First, as previously noted, if the Court rules in WPHP's favor and finds that the Operating Lease was terminated, the Debtor will be unable to exercise the Purchase Option. In that scenario, Security Benefit's foreclosure action will proceed without any impact on the Debtor.

4.   On the other hand, if the Court were to rule in the Debtor's favor and find that the Operating Lease was not terminated, the Debtor will have the opportunity to assume the Operating Lease and exercise the Purchase Option thereunder as part of its plan of reorganization. If the Debtor exercises this option, WPHP may use those proceeds to redeem its rights under the Loan

---

[6]   WPHP cites an 80-year-old case, *Condon v Murphy*, in support of its argument that the Debtor is a necessary party to any foreclosure, apparently failing to recognize the distinction between a "necessary" party and an "indispensable" one. Objection, ¶ 29 (*citing* 34 N.Y.S.2d 390 (N.Y. Sup. Ct. 1942)). In any event, *Condon* is inapposite as it does not involve a non-disturbance agreement or the automatic stay, which are critical distinctions in this case. The *Condon* court found that the purchaser was a necessary party because its rights could be extinguished by the foreclosure, which is not the case here. *See Condon*, 34 N.Y.S.2d at 393.

5

Documents. *See* RPAPL § 1341 (a court will dismiss or stay a foreclosure action where the defendant pays into the court the amount due, including principal, interest and fees).

5. Under either contingency, Security Benefit's foreclosure proceedings will proceed until WPHP's obligations under the Loan Documents are satisfied through the proceeds of a foreclosure auction or otherwise. Stated differently, the foreclosure proceeding and the underlying litigation between the Debtor and WPHP (which will itself decide the issue of the enforceability of the Purchase Option) can proceed in tandem, and contrary to WPHP's assertions in the Objection, there is no reason to delay the foreclosure proceeding pending resolution of the lease litigation.

6. In the event the Operating Lease remains in effect at the time of a foreclosure sale, the Property will be sold subject to the Operating Lease in accordance with and subject to the terms and conditions of the SNDA. As noted in the Motion, the SNDA provides that if Security Benefit or another purchaser succeeds to WPHP's interest in the Operating Lease at a foreclosure sale, the Debtor's leasehold interest will not be disturbed, subject to the Debtor's performance of its obligations under the Operating Lease. *See* Motion, ¶ 7 (*citing* SNDA, ¶ 3(b)).

7. In short, the Debtor and WPHP will be able to proceed with the lease litigation and the Debtor will be able to exercise the Purchase Option notwithstanding Security Benefit's

commencement of foreclosure proceedings against WPHP. For these reasons, the Objection should be overruled.

## II. Security Benefit Would Suffer Prejudice from an Additional Delay in Exercising Its Remedies Against WPHP in State Court.

8.  The Objection further asserts, incorrectly, that Security Benefit would not be prejudiced by a further delay[7] in pursuing its remedies against WPHP in state court. *See* Objection, ¶ 46. The harm that Security Benefit has suffered and will continue to suffer is indisputable. As the Court is aware, WPHP owes Security Benefit more than $43 million under the Loan Documents, with the Loan having matured on August 1, 2020 (the "Maturity Date"). In addition to the unpaid principal and interest amounts due as of the Maturity Date, a significant amount of default interest has accrued and remains unpaid to date and will continue to accrue and increase with further delays. Additionally, Security Benefit has incurred, and continues to incur, fees and expenses as a direct result of WPHP's defaults. In particular, Security Benefit has incurred legal fees and expenses related to, among other things, commencing two foreclosure actions and protecting its interests in these bankruptcy proceedings. Security Benefit would not have otherwise incurred such fees and expenses had WPHP honored its repayment obligations in accordance with the Loan Documents.

9.  Furthermore, WPHP has collected $506,097 in rent from the Debtor since commencement of the Operating Lease and has failed to deposit such funds into a Cash Management Account or turn over such funds to Security Benefit in accordance with the Loan Documents. In fact, as the Court is aware, WPHP objected to Security Benefit's efforts to seek

---

[7] The Objection notes that the Debtor and WPHP have now agreed to a supplemental briefing schedule on the Operating Lease termination issue with a hearing on WPHP's motion for summary judgment set for March 24, 2022. Objection, ¶ 12. Security Benefit was not involved in nor was it informed of such discussions. Security Benefit reserves all rights and remedies with respect to the foregoing and the lease litigation generally.

turnover of rents paid by the Debtor and argued that it was a "contract issue under state law between two non-debtor parties, not a matter of bankruptcy law"[8] and that additional affirmative steps were needed to exercise such right.  Now that the moratorium has expired and Security Benefit is prepared to commence a foreclosure proceeding, WPHP argues that the contract dispute between non-debtor parties negatively impacts the Debtor's estate and should be delayed pending a resolution of its litigation with the Debtor.  WPHP cannot have it both ways.

10.    The COVID-related moratorium provided WPHP with an extended reprieve under the Loan Documents.  Now that the moratorium has expired, WPHP should not be permitted to use these proceedings as a means to further evade its repayment obligations and impede Security Benefit's rights and remedies as to WPHP.

11.    In sum, for the reasons set forth in the Motion and this Reply, the Motion should be granted, and Security Benefit should be permitted to exercise its rights and remedies against WPHP.

*[Remainder of page intentionally blank.]*

---

[8] *See Objection of White Plains Healthcare Properties I, LLC to Entry of the Proposed Final Order Authorizing the Debtor to Borrow Pursuant to a Post-Petition Senior Secured Financing Facility* [Docket No. 61], ¶ 49.

## **CONCLUSION**

**WHEREFORE**, for the reasons stated above, Security Benefit respectfully requests that the Court (i) overrule the Objection and (ii) grant the relief sought in the Motion.

Dated: January 24, 2022  
       New York, New York

Respectfully submitted,

Gregory M. Juell  
**DLA PIPER LLP (US)**  
1251 Avenue of the Americas  
New York, New York 10020-1104  
Telephone: (212) 335-4500  
Email: gregory.juell@dlapiper.com

- and -

  */s/ Rachel Nanes*  
Rachel Nanes (admitted *pro hac vice*)  
**DLA PIPER LLP (US)**  
200 South Biscayne Boulevard, Suite 2500  
Miami, Florida 33131  
Telephone: (305) 423-8500  
Email: rachel.nanes@us.dlapiper.com

*Counsel to Security Benefit Corporation and Garfield Park, LLC, as assignee and successor to Security Benefit Life Insurance Company*