| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** | **FOR PUBLICATION** |
| ------------------------------------------------------------------x | |
| In re:<br><br>HBL SNF, LLC, d/b/a EPIC REHABILITATION AND<br>NURSING AT WHITE PLAINS<br><br>                    Debtor. | <br><br>Chapter 11<br>Case No. 21-22623 (SHL) |
| ------------------------------------------------------------------x | |

# MEMORANDUM OF DECISION

**A P P E A R A N C E S:**

**KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**
*Counsel for the Debtor*
200 West 41st Street, 17th Floor
New York, NY 10036
Phone: 212.972.3000
By:    Tracy L. Klestadt, Esq.
       Christopher J. Reilly, Esq.
       Stephanie R. Sweeney, Esq.

**BINDER & SCHWARTZ LLP**
*Counsel for the Landlord*
366 Madison Avenue, 6th Floor
New York, NY 10017
Phone: 212.510.7272
By:    Eric B. Fisher, Esq.
       Lindsay A. Bush, Esq.

**DLA PIPER LLP (US)**
*Counsel to Security Benefit*
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131
Phone: 305.423.8500
By:    Rachel Nanes, Esq. (admitted *pro hac vice*)

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court are two motions. The first is the motion of the Debtor HBL SNF, LLC, d/b/a Epic Rehabilitation and Nursing at White Plains (the "Debtor") seeking to extend the time to file a Subchapter V plan of reorganization (the "Extension Motion") [ECF No. 84].[1] The second is the motion of Security Benefit Corporation for either a determination that the automatic stay does not apply to litigation it wants to file or in the alternative, for relief from the automatic stay to pursue such litigation (the "Motion for Stay Relief") [ECF No. 92]. The Debtor's landlord, White Plains Healthcare Properties I, LLC (the "Landlord") has objected to both of these motions. For the reasons explained below, the Court grants each motion.[2]

## BACKGROUND

The Debtor is a 160-bedroom skilled nursing and rehabilitation facility located at 120 Church Street, White Plains, New York which opened in late 2019. *See* Declaration of Lizer Jozefovic Pursuant to Local Bankruptcy Rule 1007-2 and in Support of the Chapter 11 Subchapter V Petition and First Day Motions ¶ 7 (the "First Day Declaration") [ECF No. 3]. In and around 2015, the Debtor entered into agreements with the Landlord for the construction and financing of the Debtor's care facility. *Id.* at ¶ 9. The Debtor and the Landlord entered into the Amended and Restated Operating Lease in November 2015. *See* Amended and Restated Operating Lease [ECF No. 58-6]. In furtherance of the Landlord's obligation to secure financing, the Landlord entered into a number of agreements with Security Benefit in August 2017, including a Construction Loan Agreement [ECF No. 72-1], a Mortgage, Assignment of

---

[1] References to the Case Management/Electronic Case Filing ("ECF") docket are to Case No. 21-22623 (SHL) unless otherwise specified.

[2] This written decision explains in more detail the Court's bench ruling on these motions on January 27, 2022.

2

Leases and Rents, Security Agreement and Fixture Filing [ECF No. 72-2], and an Assignments of Leases and Rents [ECF No. 72-3]. Also in the summer of 2017, the Debtor, the Landlord, and Security Benefit entered into the Security Agreement, Assignment of Leases and Rents and Fixture Filing [ECF No. 72-4].

Prior to the bankruptcy, the Landlord filed litigation against the Debtor claiming that the Debtor's lease with the Landlord had already been terminated. After this bankruptcy filing, the lease litigation was removed to this Court. *See* Adv. Pro. No. 21-07096. Additionally, Security Benefit initiated two foreclosure proceedings in 2021 against the Landlord in New York State Supreme Court, Westchester County, both alleging the Landlord had defaulted on its loan obligations to Security Benefit. *See* Motion for Stay Relief ¶ 15. Both of those foreclosure cases were dismissed because of the foreclosure moratorium in New York State due to the COVID-19 pandemic. *See id.*

On November 1, 2021, the Debtor filed its petition under Chapter 11, Subchapter V of the Bankruptcy Code [ECF No. 1]. That same day, the Debtor filed the motion to approve debtor-in-possession ("DIP") financing and authorize the Debtor's use of cash collateral [ECF No. 11]. After a first day hearing, the Court granted interim approval of the DIP financing motion and authorized the Debtor to: (1) obtain post-petition financing and grant security interests and super-priority administrative expense status with respect to the DIP collateral; (2) make use of cash collateral to the extent that it is necessary; (3) modify the automatic stay; and (4) schedule a final hearing on the DIP financing motion. *See* Order, dated Nov. 8, 2021 [ECF No. 34]. In advance of the final hearing on the DIP financing motion, the Debtor filed the proposed final DIP financing order that provided that all of the Debtor's lease obligations—i.e., the rent—would be paid going forward to Security Benefit based on the Assignment of Leases and Rents Agreement.

3

As the Landlord had understood that it would continue to receive the rent, the Landlord objected to the proposed final DIP financing order, arguing that it was still entitled to the rent. Pending a decision on the rent issue, the Debtor deposited the December rent into an escrow account. Given the Landlord's objection, the Court approved a second interim DIP financing order with the financing necessary for the Debtor's operation through the end of December, while directing the parties to brief the rent issue. *See* Landlord's Objection to the Proposed Final DIP Order [ECF No. 61], Security Benefit's Response [ECF No. 72], and the Landlord's Reply [ECF No. 75]. The Landlord's objection was the only objection to the Debtor's request for final approval of DIP financing. The Court held a hearing on the Landlord's objection. *See* Hr'g Tr., dated Dec. 21, 2021 [ECF No. 80]. The Court ruled in favor of the Landlord. *See* Hr'g Tr., dated Dec. 23, 2021 [ECF No. 81]. Finding that Security Benefit had not taken sufficient affirmative steps to perfect an assignment of the rent, the Court directed the Debtor to pay the rent to the Landlord. *Id.* But the Court's decision was without prejudice to a future application by Security Benefit based on changed circumstances. *Id.*

## DISCUSSION

### A. Extension Motion

The Debtor here seeks an additional 90 days until May 2, 2022 to file its plan in the Subchapter V case. *See* Extension Motion ¶ 16. As explained in the Debtor's Extension Motion, the ongoing dispute between the Debtor and the Landlord concerning the Debtor's lease is one of the main reasons that the Debtor filed this bankruptcy. *See* Extension Motion ¶ 8 (citing the First Day Declaration). That litigation has now been removed to this Court, discovery has been conducted, and the Landlord's motion for summary judgment on the lease issue is scheduled to be heard on March 24, 2022. *See* Adv. Pro. No. 21-07096. The Debtor contends that resolution

4

of this litigation is critical to the Debtor's ability to successfully reorganize as the Debtor intends to assume the lease in this bankruptcy, if possible. *See* Extension Motion ¶ 9. Thus, the argument goes, that Debtor cannot file a meaningful plan of reorganization until a final determination is made with regards to the termination of the lease.

The Landlord opposes the Extension Motion [ECF No. 103]. The Landlord contends that: (1) the Debtor has delayed adjudication of the lease termination issue; (2) the Debtor has failed to show under Section 1189 of the Bankruptcy Code that the delay is warranted; and (3) delay in this instance is inconsistent with Subchapter V and harms the Landlord. *See* Objection, at 3, 4, 6. The Debtor filed a Reply, together with a supporting Declaration of Lizer Jozefovic [ECF Nos. 107 and 108].

1. Applicable Legal Standard

In a Subchapter V case, a debtor is required to file a plan within 90 days after the order for relief is entered when the case is first filed. 11 U.S.C. § 1189(b). However, the Court is permitted to extend that period if the need for more time "is attributable to circumstances for which the debtor should not justly be held accountable." *Id.* The burden of proof rests with the debtor to establish a basis for the extension. *In re Online King LLC*, 629 B.R. 340, 349 (Bankr. E.D.N.Y. 2021). The burden is stringent and a higher standard than the "for cause" standard in Section 1121(d)(1) that governs extensions of time to file a plan in a traditional Chapter 11 case —that is, a case not under Subchapter V. *Id.* (citing *In re Seven Stars on the Hudson Corp.*, 618 B.R. 333, 344 (Bankr. S.D. Fla. 2020)). The strict standard reflects the goals of Subchapter V to move a case forward expeditiously, to keep expenses down for the debtor, and to provide the debtor with an accelerated path to reorganize. *Id.* at 349–350 (noting that—unlike a traditional Chapter 11 case—only a debtor may file a plan in a Subchapter V case).

5

But notwithstanding this strict standard, an extension may nonetheless be permissible under appropriate circumstances.  In *In re Baker*, for example, the court granted a Subchapter V debtor a second extension of time to file a plan where: (1) certain government units had yet to file their proofs of claim because the Section 341 notice for government claims lacked a bar date; and (2) the debtor needed more time to determine his projected income due to the death of his brother.  *In re Baker*, 625 B.R. 27, 35 (Bankr. S.D. Tex. 2020).  While a plan technically could have been filed before the bar date passed, the court concluded that these missing claims would drastically alter the plan.  *Id.* at 36.  While the debtor could have brought this error to the attention of the court sooner, the court found that the misstep was not the fault of the debtor in the first instance.  *Id.* at 37–38.  The court granted a 45-day extension, even though 1.5 months had passed between the death of the debtor's brother and the deadline for filing the plan.  *Id.* at 39, 41; *see also In re Trepetin*, 617 B.R. 841, 847–48 (Bankr. D. Md. 2020) (granting an extension under Section 1189 where the debtor converted the case from Chapter 7 with the court recognizing a need to balance the goals of speed and access to a realistic reorganization scheme).

On the other hand, courts have denied the request for an extension to file a plan where a Subchapter V debtor is relying on "a generalized excuse applicable to any business bankruptcy case." *In re Online King LLC*, 629 B.R. at 351.  In *Online King*, the debtor sought an extension because of delay caused by: (1) the work involved in proposing a plan; (2) competing demands upon the debtor; (3) the intervening religious holidays; and 4) the COVID-19 pandemic. *Id.*  The court found these justifications unpersuasive.  *Id.* at 352–353; *see In re 5 Star Prop. Grp., Inc.*, 2021 WL 247782, at *1 (Bankr. M.D. Fla. Jan. 20, 2021) (setting the extension motion for a hearing but noting the debtor's request cited only the need for more time to complete certain calculations and finalize its plan, facts that did not appear to satisfy the conditions for an

6

extension under Section 1189(b)); *see also In re Trepetin*, 617 B.R. at 648–49 (noting that aspects of Subchapter V are based on Chapter 12 for family farmers and fisherman, which lacks the safeguards for creditors in Chapter 11, and that the time limitations to file a plan protect creditors from a debtor languishing in bankruptcy).

2. <u>An Extension Is Warranted</u>

Applying all these principals here, the Court finds that the Debtor has satisfied its burden to show that an extension is appropriate. All parties agree that the status of the Debtor's lease with the Landlord is a threshold issue that must be resolved before any reorganization can occur. The parties differed as to whether discovery would be needed before deciding the merits of the lease issue and about how long such discovery should take. After hearing the parties' views on these questions, the Court entered a schedule for prompt litigation of the complex questions about the lease, with a short period of time for discovery and a briefing schedule culminating in a hearing in March 2022. *See* Letter Setting Discovery Schedule, dated Dec. 7, 2021 [Adv. Pro. No. 21-07096, ECF No. 21]. Given that the Court determined the litigation schedule, it is hard to see how the Debtor could be blamed for unduly delaying adjudication of the lease issue. Like *In re Baker*, it does not appear practical, fair, or wise to require the Debtor to file a plan when the central issue of the lease remains unresolved. In sum, the facts justifying the extension are ones for which the Debtor should not be justly held accountable and are not the type of "generalized excuses" rejected by other courts as insufficient under Section 1189.

In reaching its decision, the Court notes that an extension here does not unduly prejudice any party, including the Landlord. The lease litigation was, in fact, filed by the Landlord and thus the Landlord can hardly complain that all parties are taking time in the bankruptcy case to resolve it. While the Landlord would like the schedule for the litigation to be different, the Court

has made its ruling as to what an appropriate schedule should be. And to the extent the Landlord's objection reflects a view that an inordinate amount of time has already elapsed in this case, the Court disagrees. This case was filed on November 1, 2021, and a first day hearing was held shortly thereafter. The issue requiring the most time and attention in the case thus far has been the litigation over the Debtor's motion for DIP financing. But the contested issue in that motion was who should receive the rents, a point of contention between Security Benefit and the Landlord. As Debtor's counsel explained at the final hearing on that motion, the Debtor simply needed to know who to pay as between Security Benefit and the Landlord. *See* Hr'g Tr., dated Dec. 21, 2021, at 48–49 [ECF No. 80]. As that litigation pit the Landlord against Security Benefit—rather than the Debtor—the Court cannot conclude that the Debtor unduly delayed the case to litigate an issue on which the Debtor was essentially agnostic.

While the Court overrules the Landlord's objection, the Court will grant the Debtor's Extension Motion only for a period of 60 days, rather than the requested 90 days. This result is consistent with the posture of the case. A 60-day extension will push the deadline past the summary judgment hearing on the lease issue, at which time the parties and the Court can assess the status of the case and rule on any further extension request, if necessary. Indeed, this incremental "wait and see" approach is sometimes used by bankruptcy courts when confronted with contested requests for an extension of a debtor's exclusivity period under Section 1121(d) in a tradition Chapter 11 case. *Cf. In re MSR Resort Golf Course, LLC*, Case No. 11-10372 (SHL) Hr'g Tr., dated June 29, 2011, at 236–248 [ECF No. 475] (discussing progress of the case in the context of future motions to extend exclusivity). This approach is also consistent with the Debtor's decision to opt to file its petition under Subchapter V—and its faster timetable—rather than proceeding as a traditional Chapter 11 debtor. But to be clear, the Court's ruling today

8

reflects these practical considerations, and is not a finding that the Debtor has unduly delayed proceedings. As such, the Court's ruling today is without prejudice to a further application by the Debtor for an additional extension, if appropriate.

### B. Motion for Stay Relief

The Court turns now to the Motion for Stay Relief filed by Security Benefit. As this Court explained above, Security Benefit and the Landlord entered into a number of agreements beginning in 2017 regarding the construction, financing, and lease of the facility where the Debtor operates. Security Benefit alleges that the Landlord has defaulted under these agreements. *See* Motion for Stay Relief ¶ 13. Based on that alleged default, Security Benefit now seeks permission to pursue its remedies against the Landlord in state court and requests a ruling from this Court that the automatic stay does not prevent Security Benefit from doing so. Security Benefit argues that the automatic stay does not apply to actions against the Landlord because it is not the Debtor and because Security Benefit does not intend to seek any relief against the Debtor in state court. *See* Motion for Stay Relief ¶ 25; *see also* Amended Reply of Security Benefit, at 5–6 [ECF No. 110]. To the extent that the Court concludes the automatic stay does apply to the legal proceedings contemplated by Security Benefit, Security Benefit seeks alternative relief in the form of lifting the stay so that Security Benefit can pursue its remedies against the Landlord. *See* Motion for Stay Relief ¶¶ 29–38; *see also Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280, 1286 (2d Cir. 1990) (setting forth the standard for stay relief).

Notably, the Debtor has not opposed Security Benefit's Motion for Stay Relief. But the Landlord has. *See* Objection to the Stay Relief Motion [ECF No. 103]. The Landlord argues that any action taken by Security Benefit against the Landlord will directly impact the Debtor's

9

property and ability to reorganize. *See* Objection ¶¶ 23–29. More specifically, the Landlord contends that lifting the stay will impact a purchase option that the Debtor has under its lease with the Landlord. *Id.* at ¶ 23. The Landlord also argues that Security Benefit is not entitled to stay relief under applicable law. *Id.* at ¶¶ 32–38. The Landlord argues that, at a minimum, the stay should not be lifted until the lease termination issue is determined in the adversary proceeding. *Id.* at ¶¶ 39–47.

The parties' arguments on the Stay Relief Motion must be understood in the context of their dispute about the rent. The Debtor planned to pay the rent to Security Benefit, based on language in the relevant agreements that provides for an assignment of rents to Security Benefit. The Landlord disagreed, arguing that it was still entitled to receive the rent because Security Benefit had not taken sufficient affirmative steps to make the assignment effective. Notably, the discussion of affirmative steps centered around whether or not there was a pending foreclosure proceeding in state court by Security Benefit against the Landlord and if Security Benefit had taken steps to appoint a receiver to collect the rents. Ultimately, the Court ruled that Security Benefit had not taken sufficient affirmative steps to affect a successful assignment of rent such that Security Benefit was entitled to the rent. *See* Hr'g Tr., dated Dec. 23, 2021, at 21 [ECF No. 81]. The Court noted, however, that the ruling was without prejudice to a further application by Security Benefit if there were changed circumstances. By filing this Motion for Stay Relief, Security Benefit is essentially asking for permission to take such affirmative steps now and change the circumstances for any future request.

1. <u>Applicable Legal Standard</u>

Section 362(a)(1) of the Bankruptcy Code provides that the filing of a bankruptcy petition:

> operates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation, including the issuance of employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1).

The automatic stay affords "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. N.J. Dep't of Env't Protection*, 474 U.S. 494, 503 (1986); Collier on Bankruptcy ¶ 362.03 (16th ed. rev. 2013). The automatic stay is intended to "allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *SEC v. Brennan*, 230 F.3d 65, 71 (2d Cir. 2000) (internal quotation omitted). Thus, the automatic stay "promot[es] equal creditor treatment and giv[es] the debtor a breathing spell." *In re Pioneer Commercial Funding Corp.*, 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990); *see Lawrence v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 2010 WL 4966018, at *5 (S.D.N.Y. Nov. 17, 2010). "[T]he automatic stay allows the bankruptcy court to centralize all disputes concerning property of the debtor's estate in the bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990). But it is well established that the automatic stay is generally "limited to debtors and do[es] not encompass non-bankrupt co-defendants." *Teachers Ins. & Annuity Assoc. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986); *Queenie, Ltd. V. Nygard Int'l*, 321 F.3d 282 (2d Cir. 2003).

If the automatic stay does apply, a party can request that the court lift it. Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that "[o]n request of a party in

11

interest and after notice and a hearing, the court shall grant relief from the stay . . . (1) for cause . . . . " 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not define "cause." In determining whether "cause" exists to lift the stay for prepetition litigation, courts in the Second Circuit consider the following factors (the "*Sonnax* Factors"):

> (1) whether relief would result in a partial or complete resolution of the issues,
> (2) the lack of any connection with or interference with the bankruptcy case,
> (3) whether the other proceeding involves the debtor as a fiduciary,
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action,
> (5) whether the debtor's insurer has assumed full responsibility for defending the action,
> (6) whether the action primarily involves third parties,
> (7) whether litigation in another forum would prejudice the interests of other creditors,
> (8) whether the judgment claim arising from the other action is subject to equitable subordination,
> (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor,
> (10) the interests of judicial economy and the expeditious and economical resolution of litigation,
> (11) whether the parties are ready for trial in the other proceeding, and
> (12) the impact of the stay on the parties and the balance of harms.

*In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990); *In re N.Y. Med. Grp., PC*, 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001). Not all of the *Sonnax* Factors are relevant in every case, and "cause" is a broad and flexible concept that must be determined on a case-by-case basis. *Spencer v. Bogdanovich (In re Bogdanovich),* 292 F.3d 104, 110 (2d Cir. 2002) (citing *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999)). The moving party bears the initial burden to demonstrate that "cause" exists to lift the stay. *See Sonnax*, 907 F.2d at 1285; *Capital Comm. Fed. Credit Union v. Boodrow (In re Boodrow)*, 126 F.3d 43, 48 (2d Cir. 1997). "If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *In re Sonnax*, 907 F.2d at 1285.

2. <u>Security Benefit Is Entitled to the Requested Relief</u>

The Court here looks first to whether the automatic stay bars the litigation contemplated by Security Benefit. Security Benefit seeks to pursue remedies against the Landlord for alleged breaches under the loan documents. The Landlord is not the debtor in this bankruptcy, and the automatic stay is generally "limited to debtors and do[es] not encompass non-bankrupt co-defendants." *Teachers Ins. & Annuity Assoc. v. Butler*, 803 F.2d at 65; *see In re Calpine Corp.*, 365 B.R. 401, 408 (S.D.N.Y. 2007). Neither the Debtor, nor the Landlord, has filed a motion asking the Court to extend the protection of the automatic stay to the Landlord. *See A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986).

While it is true that the Debtor is the tenant on the property in question, Security Benefit argues they are not a necessary party to the foreclosure in New York. *See* Motion for Stay Relief ¶ 23 (citing *KVR Realties, Inc. v. Treasure Star, Inc.*, 445 N.E.2d 641, 641–42 (N.Y. 1983)). In fact, Security Benefit has represented to the Court that it will not name the Debtor as a party to the foreclosure action against the Landlord. *See* Security Benefit's Amended Reply, at 5 ¶ 2.[3] The Landlord nonetheless argues that Security Benefit's proposed course of action will run afoul of the stay. More specifically, the Landlord argues that a foreclosure of the property and subsequent removal of the Landlord will infringe on the Debtor's purchase option under the lease, thus impacting property of the bankruptcy estate. *See* Objection ¶¶ 23, 26 (citing *Harsh Inv. Corp. v. Bialac (In re Bialac)*, 712 F.2d 426, 431 (9th Cir. 1983)). But Security Benefit has made it clear that this concern is a hypothetical rather than actual one. Security Benefit has specifically represented in writing and open court that it will not seek to terminate the Debtor's

---

[3] Security Benefit cites *Polish Nat'l Alliance v. White Eagle Hall Co.*, 98 A.D. 2d 400, 406 (N.Y. App. Div. 2d Dep't 1983) for the proposition that "[t]he absence of a necessary party in a foreclosure action simple leaves the party's rights unaffected by the judgment of foreclosure and sale."

13

lease with the Landlord, and the purchase option will remain intact. *See* Security Benefit's Amended Reply, at 5 ¶ 2.; *see also* Motion for Stay Relief, at 2, 4 (referencing the prepetition Subordination, Non-Disturbance and Attornment Agreement (the "SNDA") that protects the Debtor's leasehold even if another party succeeds to the Landlord's interest). Given these facts and the applicable law, Security Benefit agreed at the hearing on this motion that it would need to return to this Court and seek stay relief directly against the Debtor if it intended to terminate the Debtor's lease with the Landlord. So as of today, this motion simply seeks relief against a non-debtor party. It is not surprising, therefore, that the Debtor has not opposed the Stay Relief Motion. The Debtor clearly—and correctly—views this motion as not its fight but rather a dispute between these two non-debtors. Given the record, therefore, the Court agrees that the actions contemplated by Security Benefit would not run afoul of the stay.

Even if the automatic stay somehow would bar the foreclosure action contemplated by Security Benefit, this Court concludes that Security Benefit meets the standard for stay relief under Section 362(d)(1) and the applicable *Sonnax* Factors. As to the first factor, Security Benefit's contemplated litigation against the Landlord would allow Security Benefit to resolve its dispute with the Landlord. As to the second factor, this litigation will not interfere with the bankruptcy case as Security Benefit will not name the Debtor as a party in that litigation, nor will it seek to terminate the Debtor's lease. *See* Security Benefit's Amended Reply, at 5 ¶ 2. And as explained above, the SNDA entered between the three parties provides that the Debtor's lease would not be affected by the contemplated foreclosure action to be filed by Security Benefit against the Landlord. *See* Motion for Stay Relief ¶ 33. As to the fourth factor, the state courts have the expertise to handle this type of foreclosure proceeding and, in fact, are the courts that traditionally handle such disputes. As for the sixth factor, this litigation will primarily involve

third parties, namely Security Benefit and the Landlord. As to the tenth factor, judicial economy weighs in favor of granting stay relief because the state court is an appropriate forum for the foreclosure to be litigated. Indeed, the contemplated state court action is the most expeditious and economical way to resolve the dispute between these two non-debtors. As to the twelfth factor, a consideration of the harms and the benefits weighs in favor of lifting the stay because the Debtor will not be affected by the litigation, and Security Benefit is harmed by its current inability to exercise its remedies against the Landlord.[4]

## CONCLUSION

For the reasons set forth above, the Court grants the Debtor's Extension Motion and Security Benefit's Stay Relief Motion. The Court will enter separate orders on each motion consistent with this Decision.

Dated: February 1, 2022
      New York, New York

                                      */s/ Sean H. Lane*
                                      UNITED STATES BANKRUPTCY JUDGE

---

[4] The Court concludes that the other *Sonnax* Factors either do not apply or do not justify a different result.