Joseph J. Tomaino
Grassi Healthcare Advisors LLC
50 Jericho Quadrangle, 2nd Floor.
Jericho, NY 11753
(212) 223-5020
*Patient Care Ombudsman*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

**In re:**                                                              CHAPTER 11

**HBL SNF LLC d/b/a Epic**                              Case No. 21-22623 (SHL)
**Rehabilitation and Nursing at White Plains**

*Debtor*

_____


# SIXTH REPORT OF
# JOSEPH J. TOMAINO
# AS PATIENT CARE OMBUDSMAN


I, Joseph J. Tomaino, the duly appointed Patient Care Ombudsman ("PCO") appointed by the United States Trustee pursuant to an order of the Court entered in the above-captioned bankruptcy cases, file this sixth report pursuant to 11 U.S.C. § 333 (b)(2). This case involves HBL SNF LLC d/b/a Epic Rehabilitation and Nursing at White Plains ("Epic") a licensed 160 bed skilled nursing facility located at 120 Church St., White Plains, NY.

*Approach*

On February 10, 2023, and March 10, 2023, the PCO's staff made site visits and toured the facility, interviewing several patients, staff, and administration. The posting of PCO contact information and prior reports in a binder at the front desk was confirmed at the time of both visits.

*Findings*

On both visits, PCO staff toured the facility including the short-term resident care

units.  The facilities were clean and there were no odors.  Equipment appeared to be in working order.

Linen and supply carts were examined, and adequate supplies noted.  Medications were observed being administered and several nurses were interviewed and reported no issues with pharmacy deliveries.  A charge nurse on a long-term unit, the charge nurse of the subacute unit, and an aide were interviewed who reported that staffing was adequate to meet resident care needs. Staff were observed interreacting and engaging with residents.  The director of social work was interviewed who reported no significant complaints.  The only trending complaints are related to noise levels and that food is often just warm and not hot, and these are being addressed.

The facility administrator reported no issues meeting payroll or operating related financial obligations.  He said that the bankruptcy continues to have no effect at all on the facility and is related to a landlord / financing dispute.  The facility continues to have some vacant beds, like other facilities in the area.

*Complaints*

On February 14, 2023, the PCO received a call from a vendor and creditor, who received our ombudsman report, and had questions regarding the bankruptcy. The caller said that the Client is current and paying invoices, however the caller has past amounts due from prior to the bankruptcy filing.  The PCO advised the caller that he should refer to his attorney for issues on collectability of old debt, and to recontact the PCO should payment of current amounts becomes problematic and potentially interferes with his ability to provide services.

*Risk Assessment*

This PCO assesses each debtor he is appointed to monitor for level of risk. Based on this level of risk, he plans an appropriate level of monitoring.  The PCO assigns the debtor to one of three categories of risk-- low, medium, or high.  The level is based on data collected and interviews with management, patients, and staff.  This initial determination of level of risk may be adjusted as findings either improve or deteriorate. These three potential levels are outlined below:

- Low-level risk evidenced by transparent reporting, and no observable staffing, supply or quality of care issues that are not readily resolved.

- Mid-level risk evidenced by transparent reporting with some significant observable staffing, supply, or quality issues, or lack of transparent reporting.

- High-level risk evidenced by significant staffing, supply, or quality issues observed, or risk of partial or full closing of services.

Healthcare debtors can move between levels of risk over the course of the bankruptcy, and the risk level will continue to be reassessed with each encounter between the PCO and the facility.

In the case of this debtor, there appears to be no difficulty currently meeting payroll obligations, nor with obtaining supplies, medications, vendor services, etc. There are no reported or observable staffing, medical records, or quality of care issues. The debtor and management have been cooperative, and communication with the PCO appears to be transparent.

**Based on the above findings made during this monitoring period, the risk level at this time is determined to continue to be low.**

*Monitoring Plan*

Based on the low-level risk determination, the PCO will implement the following monitoring plan for the next 60-day period:

- Monthly on-site tour of the facility and interviews with key staff and residents
- Review of quality assurance reports from each facility
- Maintain phone and email hotline posted in facility and investigate any complaints from patients, families, or staff.
- Monitoring of operating reports and other filings in the case for potential red flags
- Monitor status conferences with attendance periodically as needed or requested by parties.
- Written report to court submitted at the end of the two months.

Consistent with requirements outlined in Federal Rule of Bankruptcy Procedure 2015.1-1, notice of this report will be served on each entity that issues licenses or regulates the debtor. In this case, that agency is the New York State Department of Health. A copy will also be sent to the New York State Long Term Care Ombudsman.

The PCO will make his next report in sixty (60) days or sooner, if circumstances warrant.

Dated: March 27, 2023
New York, New York

> JOSEPH J. TOMAINO, SOLELY IN HIS CAPACITY AS THE COURT APPOINTED PATIENT CARE OMBUDSMAN
>
> _/s/ *Joseph J. Tomaino*___
> JOSEPH J. TOMAINO