Presentment Date: **April 14, 2023 at 12:00 p.m. (EST)**
Objection Deadline: **April 13, 2023 at 4:00 p.m. (EST)**

**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
Tracy L. Klestadt
Stephanie R. Sweeney
Christopher Reilly
200 West 41st Street, 17th Floor
New York, NY 10036
Tel. (212) 972-3000
Fax. (212) 972-2245

*Attorneys for the Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| HBL SNF, LLC, d/b/a EPIC REHABILITATION AND NURSING AT WHITE PLAINS,[1] | : (Subchapter V) |
| | : |
| | : Case No. 21-22623 (SHL) |
| Debtor. | : |

---------------------------------------------------------------x

**MOTION OF DEBTOR FOR AUTHORITY TO ENTER INTO**
**SECOND INSURANCE PREMIUM FINANCE AGREEMENT**
**AND TO PROVIDE ADEQUATE PROTECTION**

HBL SNF, LLC d/b/a Epic Rehabilitation and Nursing White Plains (the "Debtor") debtor and debtor-in-possession herein, by and through its Attorneys, makes its Motion for Authority to Enter into Insurance Premium Finance Agreement and to Provide Adequate Protection, and in support thereof, states as follows:

**PRELIMINARY STATEMENT**

On December 31, 2021, this Court granted the relief sought by the Debtor in its *Motion for an Order Authorizing Debtor To (I) Continue Honoring Prepetition Insurance Agreements And Premium Finance Agreements; (II) To Continue Pre-Petition Insurance Policies And Programs;*

---

[1] The Debtor's principal office is located at 120 Church Street, White Plains, New York 10601. The last four digits of its taxpayer identification number are 6045.

*And (III) To Perform All Prepetition Obligations With Respect Thereto* [Dkt. No. 6] (the "Insurance Motion"). In its order approving the Insurance Motion, the Court specifically authorized the Debtor to "renew its Insurance Policies and Premium Financing Agreement or enter into new agreements with substantially similar terms...." See Order Approving Insurance Motion, ¶4 [Dkt. No. 63]. Additionally, on April 13, 2022, this Court entered an order authorizing the Debtor to enter into a premium financing agreement with FIRST Insurance Funding. *See* Order Authorizing Debtor to Enter into Insurance Premium Finance Agreement and to Provide Adequate Protection [ECF Dkt. No. 148]. Out of an abundance of caution, FIRST Insurance Funding has required that the Debtor seek the Court's further approval before renewing its Premium Financing Agreement for a second time. Based on this and in order to avoid a potential lapse in insurance coverage, it seeks the Court's authorization to enter into a new Premium Financing Agreement and related relief.

## BACKGROUND

1. On November 1, 2021, the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. The Debtor is a limited liability corporation that is operating its business and managing its financial affairs as Debtor-in-Possession. No Trustee, examiner or committee of unsecured creditors has been appointed to serve in this reorganization case, with the exception of the Subchapter V Trustee.

3. The Debtor is operating from its facilities in White Plains, New York. The Debtor provides skilled nursing and rehabilitation services.

4. The Debtor currently employs approximately 267 people while operating its business in the normal course.

5. To the extent Debtor provides skilled nursing and rehabilitation services, it is necessary to maintain adequate insurance coverage, among which, includes general lability, employment practice liability, and property, crime, and cyber liability insurance coverage.

### RELIEF REQUESTED

6. The Debtor is prepared to execute a second Premium Finance Agreement ("Premium Finance Agreement") with FIRST Insurance Funding, a Division of Lake Forest Bank & Trust Company, N.A ("FIRST") for the financing of the Debtor's general lability, employment practice liability, property, crime, and cyber liability commercial insurance policies (the "Policies") upon court approval. A true and correct copy of the Premium Finance Agreement is attached hereto as Exhibit A.

### PREMIUM FINANCING AGREEMENT

7. Pursuant to the Premium Finance Agreement, FIRST will provide financing to Debtor for the purchase of the Policies, which are essential for the operation of Debtor's business. Under the Premium Finance Agreement, the total premium amount is $424,620.21 and the total amount to be financed is $308,405.63. Under the Premium Finance Agreement, Debtor will become obligated to pay FIRST the sum of $321,004.17 in addition to a down payment that has already been paid in the amount of $116,214.58 and the balance in nine (9) monthly installments of $35,667.13 each. The installment payments are due on the first day of each month commencing on January 1, 2023. As collateral to secure the repayment of the total of payments, any late charges, attorney's fees and costs (the "Indebtedness") under the Premium Finance Agreement, Debtor is

3

granting FIRST a security interest in, among other things, the unearned premiums under the Policies, any credits generated by the Policies, dividend payments, and loss payments which reduce the unearned premium. The Premium Finance Agreement provides that the loan terms are governed by the applicable federal law and Illinois law (to the extent not preempted by federal law).

8. Pursuant to the terms of the Premium Finance Agreement, Debtor is appointing FIRST as its attorney-in-fact with the irrevocable power to cancel the Policies and collect the unearned premium in the event Debtor is in default of its obligations under the Premium Finance Agreement.

9. Debtor and FIRST have reached an agreement that the adequate protection appropriate for this situation would be as follows:

a) Debtor be authorized and directed to timely make all payments due under the Premium Finance Agreement and FIRST be authorized to receive and apply such payments to Indebtedness owed by Debtor to FIRST as provided in the Premium Finance Agreement.

b) If Debtor does not make any of the payments due under the Premium Finance Agreement as they become due, the automatic stay shall automatically lift to enable FIRST and/or third parties (without further order of the Court), including insurance companies providing the coverage under the Policies, to take all steps necessary and appropriate to cancel the Policies, collect the collateral and apply such collateral to Indebtedness owed to FIRST by Debtor. In exercising such rights,

FIRST and/or third parties shall comply with the notice and other relevant provisions of the Premium Finance Agreement.

## BASIS FOR RELIEF

10. Section 363(b)(l) authorizes a debtor-in-possession "after notice and a hearing" to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

11. Although section 363(b) does not set forth a standard for determining when it is appropriate to authorize transactions outside of the ordinary course, courts generally grant such relief if the debtors articulate a sound business purpose.  See, e.g., Committee of Equity Sec. Holders v. Lionel Corp., 722 F.2d 1063, 1070 (2d Cir. 1983); see also Fulton State Bank v. Schnipper, 933 F.2d 513, 515 (7th Cir. 1991); In re Global Crossing Ltd., 295 B.R. 726, 742 (Bankr. S.D.N.Y. 2003); In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

12. Debtor believes that the terms of the Premium Finance Agreement are commercially fair and reasonable, including the granting of a lien on the Polices to FIRST. Debtor is required to maintain adequate insurance coverage and, without it, Debtor would be forced to cease operations. Debtor has been unable to obtain unsecured credit to fund the Polices.

11. The relief requested by this Motion is warranted and appropriate under the circumstances. Debtor submits that authorization of the Premium Finance Agreement will ensure that Debtor can continue necessary operations, and will not prejudice the legitimate interests of creditors and other parties in interest, including Debtor's secured creditors.

**WHEREFORE**, Debtor respectfully requests that this Court enter an Order authorizing it to enter into the Premium Finance Agreement with FIRST, and the Debtor and FIRST be

authorized and directed to take all actions necessary or appropriate to affect said agreement and for such other and granting such other further relief as is just and proper.

Dated: New York, New York
April 4, 2023

          **KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**

By: */s/ Christopher Reilly*
Tracy L. Klestadt
Stephanie R. Sweeney
Christopher Reilly
200 West 41st Street, 17th Floor
New York, New York 10036-7203
Tel: (212) 972-3000
Fax: (212) 972-2245
Email: tklestadt@klestadt.com
    ssweeney@klestadt.com
    creilly@klestadt.com

*Attorneys for Debtor and Debtor in possession*

# Exhibit A

# PREMIUM FINANCE AGREEMENT

**LENDER:**
FIRST INSURANCE FUNDING
A WINTRUST COMPANY

450 Skokie Blvd, Ste 1000
Northbrook, IL 60062-7917
P:(800) 837-2511 F:(800) 837-3709
www.firstinsurancefunding.com

☐ Personal   ☑ Commercial   ☐ Additional Premium

**Quote #: 43424373**

| INSURED/BORROWER | Customer ID: EPICHEA-02 | AGENT or BROKER |
|---|---|---|
| (Name and Address as shown on Policy) DIP HBL SNF, LLC DBA EPIC REHABILITATIO& NURSING AT WHITE PLAINS 120 Church Street White Plains, NY 10601 | | (Name and Business Address) AssuredPartners of Florida, LLC - 702 - Senior living/Standard 300 COLONIAL CENTER PKWY. SUITE 270 LAKE MARY, FL 32746 |

## LOAN DISCLOSURE

| Total Premiums, Taxes, and Fees | Down Payment | Unpaid Balance | Documentary Stamp Tax (only applicable in Florida) | Amount Financed (amount of credit provided on your behalf) | FINANCE CHARGE (dollar amount the credit will cost you) | Total of Payments (amount paid after making all scheduled payments) | ANNUAL PERCENTAGE RATE (cost of credit as a yearly rate) |
|---|---|---|---|---|---|---|---|
| 424,620.21 | 116,214.58 | 308,405.63 | 0.00 | 308,405.63 | 12,598.54 | 321,004.17 | 9.700 % |

**YOUR PAYMENT SCHEDULE WILL BE:**   Mail Payments to: FIRST Insurance Funding, PO Box 7000, Carol Stream, IL 60197-7000

| Number of Payments | Amount of Each Payment | First Installment Due | 1/1/2023 |
|---|---|---|---|
| 9 | 35,667.13 | Installment Due Dates | 1st (Monthly) |

**INSURED'S AGREEMENT:**

**1. SECURITY INTEREST.** INSURED/BORROWER ("Insured") grants and assigns FIRST Insurance Funding, A Division of Lake Forest Bank & Trust Company, N.A. ("LENDER") a first priority lien on and security interest in the financed policies and any additional premium required under the financed policies listed in the Schedule of Policies, including (a) all returned or unearned premiums, (b) all additional cash contributions or collateral amounts assessed by the insurance companies in relation to the financed policies and financed by LENDER hereunder, (c) any credits generated by the financed policies, (d) dividend payments, and (e) loss payments which reduce unearned premiums (collectively, the "Financed Policies"). If any circumstances exist in which premiums related to any Financed Policy could become fully earned in the event of loss, LENDER shall be named a loss-payee with respect to such policy.

**2. FINANCE CHARGE.** The finance charge begins accruing on the earliest effective date of the Financed Polices. The finance charge is computed using a 365-day calendar year.

**3. LATE PAYMENT.** For commercial loans, a late charge will be assessed on any installment at least 5 days in default, and the late charge will equal 5% of the delinquent installment or the maximum late charge permitted by law, whichever is less. For personal loans, a late charge will be assessed on any installment 10 days in default, and the late charge will be the lesser of $10 or 5% of the delinquent installment.

**4. PREPAYMENT.** If Insured prepays the loan in full, Insured is entitled to a refund of the unearned finance charge computed according to the Rule of 78s.

## SCHEDULE OF POLICIES

| Policy Number | Full Name of Insurance Company and Name of General Agent or Company Office to Which Premium is Paid | Coverage | Policy Term | Effective Date | Premiums, Taxes and Fees |
|---|---|---|---|---|---|
| TBD | C00252-NATIONAL FIRE & MARINE INS CO G01385-CONNECTED RISK SOLUTIONS [ME:25.000 %, CX:0]   [90%PR] | GL | 12 | 12/1/2022 ERN TXS/FEES FIN TXS/FEES | 296,234.00 12,668.02 0.00 |
| TBD | C00089-SCOTTSDALE INSURANCE COMPANY G00490-AP SPECIALTY [ME:25.000 %, CX:0]   [90%PR] | EPLI | 12 | 12/1/2022 ERN TXS/FEES FIN TXS/FEES | 45,000.00 350.00 1,696.50 |
| (Policies continued on next page.) | | | | TOTAL | 424,620.21 |

Q# 43424373, PRN: 011223, CFG: 15/10-10 (04.2020), RT: 0Internal - Base, DD: N/A, BM: Invoice, Qtd For: A28829 Original, Memo 1

**5. PROMISE TO PAY.** In consideration of the premium payment by LENDER to the insurance companies listed in the Schedule of Policies (or their authorized representative) or the Agent or Broker listed above, Insured unconditionally promises to pay LENDER, the Amount Financed plus interest and other charges permitted under this Agreement, including the Down Payment if owed and payable directly to LENDER, subject to all the provisions of this Agreement.

**6. POWER OF ATTORNEY.** INSURED IRREVOCABLY APPOINTS LENDER AS ITS "ATTORNEY-IN-FACT" with full power of substitution and full authority, in the event of default under this Agreement, to (a) cancel the Financed Policies in accordance with the provisions contained herein, (b) receive all sums assigned to LENDER, and (c) execute and deliver on behalf of Insured all documents relating to the Financed Policies in furtherance of this Agreement. This right to cancel will terminate only after all of Insured's indebtedness under this Agreement is paid in full. Insured is responsible for repayment of the Amount Financed plus interest and other charges permitted under this Agreement, including the Down Payment if owed and payable directly to LENDER, irrespective of whether LENDER exercises this right to cancel the Financed Policies.

**7. SIGNATURE & ACKNOWLEDGEMENT.** Insured has received, reviewed, and signed a copy of this Agreement. By signing below, you certify that you have the requisite authority to (a) enter into this Agreement on behalf of Insured (if applicable, including as agent, trustee, executor, or otherwise in a representative capacity) and any other insureds named on the Financed Policies, and (b) jointly and severally agree on behalf of all insureds named on the Financed Policies to all provisions set forth in this Agreement. Insured acknowledges and understands that entry into this financing arrangement is not required as a condition for obtaining insurance coverage.

**NOTICE TO INSURED:** (1) Do not sign this Agreement before you read both pages of it, or if it contains any blank space. (2) You are entitled to a completely filled-in copy of this Agreement. (3) You have the right prepay the loan in full and receive a refund of any unearned finance charge. (4) Keep a copy of this Agreement to protect your legal rights. (5) See last page of Agreement for your consent to electronic statement and notice delivery.

| Signature of Insured or Authorized Agent | Date 3/31/2022 | Signature of Agent | Date 03/31/2023 |
|---|---|---|---|

FIF0521NBP

## ADDITIONAL PROVISIONS OF PREMIUM FINANCE AGREEMENT

**8. APPLICATION OF PAYMENTS.** (a) Payments received by LENDER from Insured shall be applied first to installments, then to any unpaid fees. The payment of installments is prioritized over the payment of fees, which means when LENDER receives partial payments or overpayments of any installment(s), amounts previously applied to fees may be reallocated to enable a full installment(s) to be paid. This payment application method may cause fees to reappear as unpaid and owing after the payment period in which the fees were originally assessed and paid, but does not increase or otherwise change the amount of fees that Insured may be required to pay under this Agreement. (b) Any returned premium received by LENDER from the Financed Policies will be applied to reduce the total unpaid balance under this Agreement, which shall not relieve Insured of its obligation to pay any remaining installments due but may reduce the amount of such installments.

**9. EFFECTIVE DATE.** This Agreement will not become effective until it is accepted in writing by LENDER. LENDER will send a Notice of Acceptance to Insured to confirm this Agreement is effective.

**10. DEFAULT/CANCELLATION.** Insured is in default under this Agreement if (a) the Down Payment, if to be collected by LENDER, or any payment is not received by LENDER when it is due, (b) a proceeding in bankruptcy, receivership, insolvency or similar proceeding is instituted by or against Insured, or (c) Insured fails to comply with any of the terms of this Agreement. If Insured is in default, LENDER has no further obligation under this Agreement to pay premiums on Insured's behalf, and LENDER may pursue any of the remedies provided in this Agreement or by law. If a default by Insured results in a cancellation of the Financed Policies, Insured agrees to pay a cancellation charge for commercial loans, which will be the maximum permitted by law. No cancellation charge shall apply to personal loans. If cancellation or default occurs, Insured agrees to pay interest on the unpaid balance due at the contract rate until the balance is paid in full.

**11. LIMITATION OF LIABILITY. Insured understands and agrees that LENDER or its assignee is not liable for any losses or damages to Insured or any person or entity upon the exercise of LENDER's right of cancellation, except in the event of willful or intentional misconduct by LENDER.**

**12. INSUFFICIENT FUNDS CHARGE.** If Insured's payment is dishonored for any reason and if permitted by law, Insured will pay LENDER an insufficient funds charge equal to the maximum fee permitted by law for commercial loans and $10 for personal loans.

**13. LENDER'S RIGHTS AFTER THE POLICIES ARE CANCELLED.** After any Financed Policy is cancelled by any party or if a credit is otherwise generated, LENDER has the right to receive all unearned premiums and other funds assigned to LENDER as security herein and to apply them to Insured's unpaid balance under this Agreement or any other agreement between Insured and LENDER. Receipt of unearned premiums does not constitute payment of installments to LENDER, in full or in part. Any amounts received by LENDER after cancellation of the Financed Policies will be credited to the balance due with any excess paid to the Insured; the minimum refund is $1.00. Any deficiency shall be immediately paid by Insured to LENDER. Insured agrees that insurance companies may rely exclusively on LENDER's representations about the Financed Policies.

**14. ASSIGNMENT.** Insured may not assign any Financed Policy or this Agreement without LENDER's prior written consent. LENDER may transfer its rights under this Agreement without the consent of Insured.

**15. AGENT OR BROKER.** Insured agrees that the Agent or Broker issuing the Financed Policies or through whom the Financed Policies were issued is not the agent of LENDER, except for any action taken on behalf of LENDER with the express authority of LENDER, and LENDER is not bound by anything the Agent or Broker represents to Insured, orally or in writing, that is not contained in this Agreement. Where permissible by law, LENDER may pay some portion of the finance charge or other form of compensation to the Agent or Broker executing this Agreement for aiding in the administration of this Agreement. In NY, the Agent or Broker may assess a fee to Insured for obtaining and servicing the Financed Policies pursuant to NY CLS Ins § 2119. Any questions regarding this payment should be directed to the Agent or Broker.

**16. COLLECTION COSTS.** Insured agrees to pay reasonable attorney fees, court costs, and other collection costs to LENDER to the extent permitted by law if this Agreement is referred to an attorney or collection agent who is not a salaried employee of LENDER to collect money that Insured owes.

**17. GOVERNING LAW.** The loan terms subject to this Agreement are governed by applicable federal law and Illinois law (to the extent not preempted by federal law), without regard to principles of conflicts of law or choice of law. If any court finds any term herein to be invalid, such finding will not affect the remaining provisions.

**18. WARRANTY OF ACCURACY.** Insured represents and warrants that to the best of its knowledge: (a) the Financed Policies are in full force and effect and that the Insured has not and will not assign any interest in the Financed Policies except for the interest of mortgagees and loss payees, (b) the Down Payment and any past due payments have been paid in full to the Agent or Broker or Lender in cash or other immediately available funds, (c) all information provided herein or in connection with the Agreement is true, correct, and not misleading, (d) Insured is not insolvent nor presently involved in any insolvency proceeding, (e) Insured has no indebtedness to the insurance companies issuing the Financed Policies, (f) there is no provision in the Financed Policies that would require LENDER to notify or obtain consent from any other party to effect cancellation of the Financed Policies, and (g) Insured has disclosed if he or she is a covered member of the armed forces or a dependent of a covered member as defined in the Military Lending Act.

**19. ADDITIONAL PREMIUMS.** (a) Insured expressly agrees to (i) fully and timely comply with all audits by the insurance companies issuing the Financed Policies, (ii) timely provide complete and accurate payroll information, if applicable, and (iii) pay to the insurance companies any additional amount due in connection with the Financed Policies. The Amount Financed shall be applied to the Financed Policies' premium amounts and Insured shall be responsible for any additional premiums or other sums. (b) Insured, or Agent or Broker, may request that LENDER finance additional policies and/or additional premiums (the "Additional Premiums") for Insured during the term of this Agreement. If LENDER agrees, LENDER will send a Notice of Acceptance to Insured to confirm its approval to finance the Additional Premiums. For commercial loans, this Agreement shall be deemed amended on the date of the Notice of Acceptance to consolidate the Additional Premiums with Financed Policies into a single and indivisible loan transaction subject to this Agreement (with applicable changes to the payment schedule), and the Additional Premiums shall be "Financed Policies" on the date of the Notice of Acceptance. For personal loans, LENDER (or Agent or Broker on LENDER's behalf) will provide a separate Premium Finance Agreement to Insured for any Additional Premiums.

**20. CORRECTIONS.** LENDER may insert the names of insurance companies or policy numbers in the Schedule of Policies, if this information is not known at the time Insured signs this Agreement. LENDER is authorized to correct patent errors or omissions in this Agreement.

**21. NON-WAIVER.** Not Applicable.

## AGENT OR BROKER REPRESENTATIONS AND WARRANTIES

Unless previously disclosed in writing to LENDER or specified in the Schedule of Policies, the Agent or Broker executing this Agreement expressly represents, warrants, and agrees as follows: (1) Insured has received a copy of this Agreement and has authorized this transaction, the signer of this Agreement (whether Insured or its agent) has valid authority to bind Insured and any other insureds named under the Financed Policies to the terms of this Agreement, including the Power of Attorney provision, Insured's signature is genuine, and the Down Payment has been received from Insured (unless the Down Payment was made to Lender), (2) the information contained in the Schedule of Policies including the premium amount is correct and accurately reflects the necessary coverage, (3) the Financed Policies (a) are in full force and effect, (b) are cancellable by Insured or LENDER (or its successors or assigns), (c) will generate unearned premiums which will be computed on the standard short rate or pro rata basis, and (d) do not contain any provisions which affect the standard short rate or pro rata premium computation, including but not limited to direct company bill, audit, reporting form, retrospective rating, or minimum or fully earned premium, (4) the Agent or Broker is either the insurer's authorized policy issuing agent or the broker placing the coverage directly with the insurer, except where the name of the Issuing Agent or General Agent is listed in the Schedule of Policies, (5) to the best of the Agent or Broker's knowledge, there are no bankruptcy, receivership, or insolvency proceedings affecting Insured, (6) Agent or Broker will hold harmless and indemnify LENDER and its successors and assigns against any loss or expense (including attorney's fees, court costs, and other costs) incurred by LENDER and resulting from Agent or Broker's violations of these Representations and Warranties or from Agent or Broker's errors, omissions, or inaccuracies in preparing this Agreement, and will promptly reimburse LENDER for any loss or expense incurred in connection with any incidence of fraud or lack of valid authority on behalf of Insured or any other named insureds with respect to the terms of this transaction, the Agreement, or the Financed Policies, (7) Agent or Broker will (a) hold in trust for LENDER any payments made or credited to Insured through or to Agent or Broker by the insurance companies or LENDER, and (b) pay these monies and the unearned commissions to LENDER upon demand to satisfy the outstanding indebtedness under this Agreement, and (8) to fully and timely assist with all payroll audits.

## SCHEDULE OF POLICIES

Insured: DIP HBL SNF, LLC DBA E
Quote #: 43424373

| Policy Number | Full Name of Insurance Company and Name of General Agent or Company Office to Which Premium is Paid | Coverage | Policy Term | Effective Date | Premiums, Taxes and Fees |
|---|---|---|---|---|---|
| TBD | C00993-FEDERAL INSURANCE COMPANY<br>G00901-CHUBB<br>[CX:0]  [90%PR] | PROP | 12 | 12/1/2022<br>ERN TXS/FEES<br>FIN TXS/FEES | 57,304.00<br>394.69<br>0.00 |
| TBD | C00280-TRAVELERS CASUALTY INS CO OF AMER<br>[CX:0]  [90%PR] | CRME | 12 | 12/1/2022<br>ERN TXS/FEES<br>FIN TXS/FEES | 1,733.00<br>0.00<br>0.00 |
| TBD | C00197-BEAZLEY INSURANCE CO<br>G00490-AP SPECIALTY<br>[ME:25.000 %, CX:0]      [90%PR] | CY LIAB | 12 | 12/1/2022<br>ERN TXS/FEES<br>FIN TXS/FEES | 9,240.00<br>0.00<br>0.00 |

FIF0214P-SCH

# **Exhibit B**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re                                                                      :    Chapter 11
                                                                                 :
HBL SNF, LLC, d/b/a EPIC REHABILITATION        :    (Subchapter V)
AND NURSING AT WHITE PLAINS,[1]                     :
                                                                                 :    Case No. 21-22623 (SHL)
                                      Debtor.                         :
------------------------------------------------------------x

## ORDER AUTHORIZING DEBTOR TO ENTER INTO INSURANCE PREMIUM FINANCE AGREEMENT AND TO PROVIDE ADEQUATE PROTECTION

Upon the Motion of HBL SNF LLC, d/b/a Epic Rehabilitation and Nursing at White Plains (the "Debtor") For Authority to Enter into Insurance Premium Finance Agreement and to Provide Adequate Protection ( the "Motion") through which Debtor seeks the Court's approval of the agreement and to provide adequate protection of the interests of FIRST Insurance Funding, a Division of Lake Forest Bank & Trust Company, N.A. ("FIRST") in the bankruptcy case and, it appearing to the Court that the operative facts as stipulated by the parties, are those appearing in Motion, it is hereby **ORDERED**:

1.   The Motion is granted.

2.   Debtor is authorized and directed to:

   a) enter into the Premium Finance Agreement attached to the Motion as Exhibit "A" (the "Premium Finance Agreement");

---

[1] The Debtor's principal office is located at 120 Church Street, White Plains, New York 10601. The last four digits of its taxpayer identification number are 6045.

      b) grant FIRST or its successor or assigns a first priority lien on and security interest in the Policies[2], including the in unearned premiums and other collateral (collectively, the "Collateral"), as described in the Premium Finance Agreement; and

      c) timely make all payments due under the Premium Finance Agreement. FIRST is authorized to receive and apply such payments to the Indebtedness owed by Debtor to FIRST as provided in the Premium Finance Agreement; and

      d) Renew the Premium Finance Agreement without further order of this Court pursuant to the terms and conditions of this Order.

    3. Without limitation, the liens, security interests and rights in the Collateral granted under the Premium Finance Agreement: (i) are senior to (a) the liens of any lender providing DIP or cash collateral financing in this Case and (b) to any claims under 11 U.S.C. §§ 503, 506(c) or 507(b); and (ii) shall not be subject to avoidance, priming or surcharge by any party in interest. Pursuant to the Premium Finance Agreement, the Debtor irrevocably appoints FIRST as its attorney-in-fact in the event of default to cancel any financed insurance Policies and collect the Collateral, as described infra.

    4. If additional premiums become due to insurance companies under the Policies financed under the Premium Finance Agreement, Debtor and FIRST or its successor or assigns are authorized to modify the Premium Finance Agreement as necessary to pay the additional premiums without the necessity of further hearing or order of this Court.

    5. In the event Debtor does not make any of the payments under this Agreement or the Premium Finance Agreement as they become due, the automatic stay shall automatically lift to enable FIRST and or/third parties (without further order of this Court), including insurance companies providing the protection under the Policies, to take all steps necessary and appropriate to cancel the Policies, collect the Collateral and apply such Collateral to the Indebtedness owed to FIRST by Debtor.

---

[2] Capitalized terms not defined herein shall have the meaning ascribed in the Motion or the Premium Finance Agreement, as applicable.

6. FIRST, or any third party, including insurance companies providing the coverage under the Policies, exercising such rights shall comply with the notice provisions and other provisions of the Premium Finance Agreement.

7. The Premium Finance Agreement and the liens and security interests in the unearned premiums granted pursuant hereto shall continue in full force and effect and Indebtedness due under the Premium Finance Agreement shall remain due and owing notwithstanding: (i) the dismissal or closure of this Case, (ii) the discharge of Debtor, or (iii) the confirmation of a plan of reorganization.

8. To the extent that any audits need to be performed by any carrier on any of the Policies, the Debtor or the trustee subsequently appointed under Chapters 7 or 11, shall reasonably cooperate.

9. The terms and conditions of this Order will be immediately effective and enforceable upon its entry.

Dated:   New York, New York
　　　　　_____, 2023

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　HONORABLE SEAN H. LANE
　　　　　　　　　　　　　　　　　　　　　UNITED STATES BANKRUPTCY JUDGE